# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

October 10, 2014

<u>Via ECF</u>

Honorable Valerie E. Caproni,
   United States District Court,
      Southern District of New York,
         Thurgood Marshall United States Courthouse,
           40 Foley Square, Room 240,
              New York, New York 10007.

        Re:   *In re: Cmty. Exch., Inc., Gold Futures & Options Trading Litig.*,
             No. 14-md-2548 (VEC) (All Actions)

Dear Judge Caproni:

      I write on behalf of all defendants as liaison counsel in this matter, pursuant to Court Order No. 2, dated October 2, 2014, to address whether discovery (beyond the service of preservation notices) should be stayed pending resolution of defendants' anticipated motions to dismiss. As more fully detailed below, Supreme Court precedent and the substantial weight of authority in recent analogous cases in this District support the continuation of the existing discovery stay in this action until motions to dismiss have been decided. There is no case efficiency rationale that justifies the premature discovery that plaintiffs seek. On the contrary, embarking on such discovery now would be singularly inefficient. Nor can plaintiffs identify any unfair prejudice they will suffer if discovery awaits the Court's decisions on motions to dismiss.[1]

      Plaintiffs request certain discovery as soon as their consolidated amended class action complaint ("CAC") is filed on December 15, 2014, presumably either to amend that operative complaint further or to bolster their opposition to the motions to dismiss. There is no assurance, however, that the CAC will survive the motions. And the

---

[1] For the Court's convenience, this letter responds to plaintiffs' contentions made during the October 2, 2014 hearing as well as restates defendants' arguments set forth in the September 26, 2014 letter under the subheading "Defendants' Position Regarding Discovery During Pendency of Motion to Dismiss."

Honorable Valerie E. Caproni                                                                                          -2-

Supreme Court has made clear that a plaintiff is "not entitled to discovery, cabined or otherwise," unless the plaintiff first makes factual allegations sufficient to state a claim for relief. *Ashcroft* v. *Iqbal*, 129 S. Ct. 1937, 1954 (2009); *accord Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 554, 564 n.8 (2007) (the "basic deficiency [of a complaint] should be exposed at the point of minimum expenditure of time and money by the parties and the court" and "before proceeding to discovery, a complaint must allege facts suggestive of illegal conduct"); *Associated Gen. Contractors of California* v. *California State Council of Carpenters*, 459 U.S. 519, 528 n.17 (1983) ("a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed"). As Judge Buchwald recently noted in an analogous context, "[i]t's black letter law that lawsuits are not to be filed in search of lawsuits." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 11 MD 2262 (NRB) (S.D.N.Y.), March 1, 2012 Hr'g Tr. at 4-5, ECF No. 282; s*ee also Hughes* v. *LaSalle Bank, N.A.*, No. 02 Civ. 6384 (MBM) (HBP), 2004 WL 414828, at *1 (S.D.N.Y. March 4, 2004) ("The purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists.").

Applying this standard, most courts in this District have ordered discovery stays in recent complex litigation alleging manipulation or anticompetitive conduct in financial markets, including in relation to benchmark prices or rates. These include Judge Buchwald in the U.S. Dollar Libor multidistrict litigation, Judge Gardephe in a U.S. Dollar Libor case, Judge Daniels in a separate case relating to Yen Libor and Euroyen Tibor, Judge Schofield in the foreign exchange benchmark rates multidistrict litigation, Judge Cote in the credit default swap antitrust multidistrict litigation, and Judge Carter in the North Sea Brent crude oil futures multidistrict litigation.[2]

These decisions recognize that discovery results in a considerable burden on defendants in a complex case. The process would be particularly complex and costly here given that all of the Defendants are foreign entities (or U.S. entities with foreign parent corporations), which raises foreign restrictions on discovery, including data protection and privacy, bank secrecy and banking supervisory privileges. This amounts to an enormous burden at this stage of the proceedings, and "[i]f defendants' dismissal

---

[2]  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262 (NRB) (S.D.N.Y.), March 1, 2012 Hr'g Tr. at 4-5, ECF No. 282; Oct. 18, 2013 Order at 2, ECF No. 489; *7 West 57th Street Realty Co.* v. *Citigroup, Inc.*, No. 13 Civ. 0981 (PGG) (S.D.N.Y.), July 8, 2013 Order at 1, ECF No. 107; *Laydon* v. *Mizuho Bank, Ltd.*, No. 12 Civ. 3419 (GBD) (S.D.N.Y.), Aug. 18, 2014 Order, ECF No. 362; *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 13 Civ. 7789 (LGS) (S.D.N.Y.), March 3, 2014 Hr'g Tr. at 23, ECF No. 152; *In re Credit Default Swaps Antitrust Litig.*, No. 13 MD 2476 (DLC) (S.D.N.Y.), Dec. 5, 2014 Hr'g Tr. at 52-53, ECF No. 244; March 26, 2014 Order at 2, ECF No. 284;*In re North Sea Brent Crude Oil Futures Litig.*, No. 13 MD 2475 (ALC) (S.D.N.Y.), April 22, 2014 Order at 4, ECF No. 123.

motions prove meritorious, the burden of litigating the discovery issues will have been for nothing and defendants will have suffered the burden of unnecessary legal fees." *Picture Patents, LLC v. Terra Holdings LLC*, No. 07-cv-5465, 2008 WL 5099947, at *3 (S.D.N.Y. Dec. 3, 2008); *see also Niv v. Hilton Hotels Corp.*, No. 06-cv-7839, 2007 WL 510113, at *2 (S.D.N.Y. Feb. 15, 2007) ("[I]f the motion is granted, this burden [of responding to the discovery requests] will likely have served little purpose.").

On the other hand, Plaintiffs will suffer no prejudice from awaiting this Court's decision on defendants' motions to dismiss. Delaying the commencement of discovery during the pendency of the dismissal motions will not prejudice Plaintiffs to any degree. *Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*, No. 09-cv-5874, 2009 WL 2777076, at *1 (S.D.N.Y. Sept. 1, 2009). We note that plaintiffs themselves sought December 15 as the filing date for the CAC.

The fact that Defendants have substantial grounds for motions to dismiss also warrants a stay of discovery until the motions are decided. Defendants likely will seek dismissal of the CAC on several grounds, including: (i) the alleged theory of antitrust conspiracy does not state a Sherman Act claim under *In re LIBOR-Based Financial Instruments Antitrust Litigation*, 935 F. Supp. 2d 666 (S.D.N.Y. 2013); (ii) plaintiffs do not allege sufficient facts to plead a plausible theory of antitrust conspiracy as required by *Twombly*; (iii) plaintiffs fail to plead the essential elements of fraud-based manipulation under the Commodity Exchange Act ("CEA"), in particular those elements subject to the heightened pleading standard of FRCP 9(b); (iv) the claims are barred insofar as the alleged conduct and harm lacks a sufficiently direct U.S. nexus under the Foreign Trade Antitrust Improvements Act of 1982 ("FTAIA") and the CEA as informed by *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), and *Loginovskaya v. Batratchenko*, No. 13-1624-cv, 2014 WL 4358439 (2d Cir. Sept. 4, 2014); (v) plaintiffs lack standing to sue under the Sherman Act and CEA as well as under the limits in *Lexmark International, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014); and (vi) the alleged conduct falls outside the Clayton Act's four-year statute of limitations and the CEA's two-year statute of limitations.

Plaintiffs' suggestion at the October 2nd conference that defendants have mischaracterized the strength of the precedent in this District granting discovery stays pending resolution of motions to dismiss is without merit.[3] *See* Oct. 2, 2014 Conf. Tr. at 17. In each of the six rulings cited above, judges in this District granted discovery stays

---

[3] Defendants acknowledge that Judge Forrest permitted discovery to proceed in an antitrust action involving aluminum warehousing. That case, however, illustrates the risk of permitting costly discovery while motions to dismiss are pending: Seven months later, Judge Forrest dismissed the complaints based on threshold pleading issues. *See In re Aluminum Warehousing Antitrust Litig.*, No. 13 MD 2481 (KBF), 2014 WL 4277510 (S.D.N.Y. Aug. 29, 2014).

Honorable Valerie E. Caproni                                                                                                      -4-

notwithstanding pre-existing government investigations by U.S. and/or European regulators. Indeed, in one of the cases Plaintiffs cited in the September 26 letter, the court ordered a stay despite defendants' prior production of 90,000 pages of records to the U.S. Commodity Futures Trading Commission. *See In re Term Commodities Cotton Futures Litigation*, 12 Civ. 5126 (ALC), 2013 WL 1907738, at *7 (S.D.N.Y. May 8, 2011). As one district court held, granting a discovery stay of documents provided to government regulators pending a ruling on dismissal motions advances one of the rationales of *Twombly* because that approach placed the court "in a much better position to evaluate how much, if any, discovery to allow." *In re Graphics Processing Units Antitrust Litig.*, MDL No. 1826, 2007 WL 2127577, at *5 (N.D. Cal. July 24, 2007).

        Moreover, plaintiffs are incorrect in asserting that defendants are subject to "parallel" and "ongoing" government investigations related to the gold-trading markets. *See* Sept. 26, 2014 Letter to Hon. Valerie E. Caproni at 2, ECF No. 7. To defendants' knowledge there is no industry-wide investigation of the gold-trading markets by any United States government agency. And to the extent there have been government inquiries outside the United States involving certain (but not all) defendants, as reported in the press and elsewhere, production of such materials submitted to non-U.S. regulators would necessarily implicate the "complicated" issues noted by the Court during the October 2nd conference, *see* Oct. 2, 2014 Conf. Tr. at 14, including banking supervisory privileges, data protection and privacy laws and the application and recognition of other non-U.S. restrictions on discovery.[4] As a result, commencing discovery now would not be a simple mechanical exercise, and would instead engender time-consuming and costly motion practice about discovery, simultaneously with briefing of the motions to dismiss. That would be an inefficient use of both the Court's time and the parties' resources.

        Plaintiffs' contention that discovery is needed to address the extraterritorial limitations on civil damages claims under the FTAIA and the CEA is also incorrect. *See* Oct. 2, 2014 Conf. Tr. at 10. Although plaintiffs' counsel calls these issues "jurisdictional," (Oct. 2, 2014 Conf. Tr. at 10), the law is to the contrary. Both statutes are "substantive and nonjurisdictional in nature," and the Court does not consider extrinsic evidence when evaluating a Rule 12(b)(6) motion arguing that a complaint is

---

[4]    The only case Plaintiffs cited in the September 26 letter concerning production of documents previously produced to government regulators involved a production that had been made to U.S. regulators. *Compare Kassover v. UBS A.G.*, 08-CV-2753 (LMM), 2008 WL 5395942 (S.D.N.Y. Dec. 19, 2008) (ordering production of government investigation materials), with *Kassover v. UBS A.G.*, 08-CV-2753 (LMM), Dkt. No. 1, at 10 (alleging only U.S. investigation of conduct). Production of documents produced to foreign regulators is not analogous to the situation in *Kassover* and is no less burdensome, and may be more burdensome, than production of any other documents at this early stage of the litigation.

Honorable Valerie E. Caproni                                                                        -5-

precluded by these statutes. *Morrison*, 561 U.S. at 253-54 ("[T]o ask what conduct [a statute] reaches is to ask what conduct [it] prohibits, which is a merits question"); *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 398 (2d Cir. 2014).

Finally, plaintiffs' requests for third-party document subpoenas and Rule 30(b)(6) depositions are also unwarranted. There is no reason to impose on third parties obligations to respond to subpoenas when it is not yet clear which, if any, of plaintiffs' claims are viable. Judge Cote in *In re Credit Default Swaps Antitrust Litigation* rejected a request by the same plaintiffs' counsel for immediate third-party discovery, finding that document preservation notices were sufficient. *See In re Credit Default Swaps Antitrust Litig.*, No. 13 MD 2476 (DLC) (S.D.N.Y.), March 26, 2014 Order at 2, ECF No. 284. Judge Cote's analysis and conclusion apply with equal force here.[5] Likewise, Rule 30(b)(6) depositions could be wasted effort if the motions resolve this matter. Nor can such depositions be justified by a desire to preserve relevant materials; the Court's Order No. 1 already adequately protects such materials.[6]

For these reasons, defendants respectfully request that the Court continue the existing stay of discovery pending resolution of motions to dismiss.

Respectfully submitted,

Stephen Ehrenberg

cc:   Counsel of Record
      (Via ECF)

---

[5] In Order No. 2, this Court authorized plaintiffs to serve such notices "at any time."

[6] Plaintiffs' suggestion that defendants, because they are not "American-domiciled," may not treat their preservation obligations with the requisite "seriousness" (Oct. 2 Conf Tr. at 16) is as unfounded as it is unwarranted.