UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>COMMODITY EXCHANGE, INC., GOLD FUTURES AND OPTIONS TRADING LITIGATION<br><br>*This Document Relates to All Actions* | 1:14-MD-2548 (VEC)<br>1:14-MC-2548 (VEC)<br><br>**ORAL ARGUMENT REQUESTED** |

**THE LONDON GOLD MARKET FIXING LIMITED'S MEMORANDUM
OF LAW IN SUPPORT OF ITS MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION**

PATTERSON BELKNAP WEBB & TYLER LLP
William F. Cavanaugh, Jr.
Saul B. Shapiro
James V. Masella, III
R. James Madigan III
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2000
Fax: (212) 336-2222

*Attorneys for Defendant The London Gold Market Fixing Limited*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ..............................................................................................1

STATEMENT OF FACTS ........................................................................................................1

ARGUMENT ..............................................................................................................................2

I.     STANDARD OF REVIEW ...........................................................................................2

II.    THE COURT LACKS GENERAL JURISDICTION OVER LGMF ................................2

       A.    There Is No Statutory Basis to Assert General Jurisdiction Over LGMF ...............2

       B.    Asserting General Jurisdiction Over LGMF Would Violate Due Process ..............4

       C.    The Member Banks' Alleged Contacts and Conduct Are Irrelevant .......................5

III.   THE COURT LACKS SPECIFIC JURISDICTION OVER LGMF ..................................8

IV.    THERE IS NO BASIS FOR JURISDICTIONAL DISCOVERY .....................................10

CONCLUSION ..........................................................................................................................10

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*7 W. 57th St. Realty Co. v. CitiGroup, Inc.*,
    2015 U.S. Dist. LEXIS 44031 (S.D.N.Y. Mar. 31, 2015) ...........................................................5

*Air Tropiques, SPRL v. N. & W. Ins. Co.*,
    2014 U.S. Dist. LEXIS 44255 (S.D. Tex. Mar. 31, 2014) ..........................................................5

*In re Aluminum Warehousing Antitrust Litig.*,
    2015 U.S. Dist. LEXIS 26413 (S.D.N.Y. Mar. 3, 2015) ........................................................6, 7

*In re Amaranth Natural Gas Commodities Litig.*,
    587 F. Supp. 2d 513 (S.D.N.Y. 2008).....................................................................................2, 3

*Animal Sci.Prods. v. Hebei Welcome Pharm. Co.*,
    2012 U.S. Dist. LEXIS 100075 (E.D.N.Y. July 18, 2012) ........................................................3

*Bankers Life & Casualty Co. v. Holland*,
    346 U.S. 379 (1953)...................................................................................................................6

*Beach v. Citigroup Alternative Invs. LLC*,
    2014 U.S. Dist. LEXIS 30032 (S.D.N.Y. Mar. 7, 2014) ...........................................................7

*Daimler AG v. Bauman*,
    134 S.Ct. 746 (2014)..............................................................................................................4, 5

*Daniel v. Am. Bd. of Emergency Med.*,
    428 F.3d 408 (2d Cir. 2005).......................................................................................................3

*Eastman Kodak Co. v. S. Photo Materials Co.*,
    273 U.S. 359 (1927)...................................................................................................................3

*Frontera Res. Azer. Corp. v. State Oil Co.*,
    479 F. Supp. 2d 376 (S.D.N.Y. 2007)......................................................................................10

*GE v. Bucyrus-Erie Co.*,
    550 F. Supp. 1037 (S.D.N.Y. 1982)...........................................................................................3

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    131 S. Ct. 2846 (2011)...............................................................................................................8

*J. McIntyre Mach., Ltd. v. Nicastro*,
    131 S. Ct. 2780 (2011)...........................................................................................................8, 9

*Jazini v. Nissan Motor Co.*,
   148 F.3d 181 (2d Cir. 1998)..................................................................................................10

*Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*,
   918 F.2d 1039, 1043 (2d Cir. 1991)..........................................................................................3

*Macaura v. N. Assurance Co. Ltd.*,
   [1925] AC 619 ..........................................................................................................................7

*Mayor & City Council of Balt. v. Citigroup, Inc.*,
   709 F.3d 129 (2d Cir. 2013)......................................................................................................8

*Melnick v. Adelson-Melnick*,
   346 F. Supp. 2d 499 (S.D.N.Y. 2004).......................................................................................4

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
   84 F.3d 560 (2d Cir. 1996)........................................................................................................9

*NYKCool A.B. v. Pac. Int'l Servs.*,
   2014 U.S. Dist. LEXIS 96007 (S.D.N.Y. Jul. 15, 2015) ...........................................................7

*Prest v. Petrodel Res. Ltd.*,
   [2013] UKSC 34 .......................................................................................................................7

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
   750 F.3d 221 (2d Cir. 2014)..............................................................................................2, 4, 6

*Sunward Elecs., Inc. v. McDonald*,
   362 F.3d 17 (2d Cir. 2004)........................................................................................................2

*In re Terrorist Attacks on Sept. 11, 2001*,
   714 F.3d 659 (2d Cir. 2013)............................................................................................2, 9, 10

*Estate of Ungar v. Palestinian Auth.*,
   400 F. Supp. 2d 541 (S.D.N.Y. 2005).....................................................................................10

*United States v. Funds Held ex rel. Wetterer*,
   210 F.3d 96 (2d Cir. 2000)........................................................................................................7

*United States v. Scophony Corp. of Am.*,
   333 U.S. 795 (1948)..................................................................................................................3

*Walden v. Fiore*,
   134 S. Ct. 1115 (2014)........................................................................................................8, 10

*Wiwa v. Royal Dutch Petroleum Co.*,
   226 F.3d 88 (2d Cir. 2000)........................................................................................................3

*Woolfson v. Strathclyde Reg'l Council*,
 [1978] S.L.T. 159 (H.L.) ......................................................................................................... 7

**Statutes**

7 U.S.C. § 1 ................................................................................................................................. 2

7 U.S.C. § 25(c) .......................................................................................................................... 3

15 U.S.C. § 1 ............................................................................................................................... 2

15 U.S.C. § 22 ............................................................................................................................. 3

N.Y. C.P.L.R. § 301 .................................................................................................................... 3

N.Y. C.P.L.R. § 302 .................................................................................................................... 3

**Other Authorities**

Fed. R. Civ. P. 10(c) ................................................................................................................... 1

Fed. R. Civ. P. 12(b)(2) .............................................................................................................. 1

Defendant The London Gold Market Fixing Limited ("LGMF") respectfully submits this memorandum of law in support of its motion to dismiss the Second Consolidated Amended Class Action Complaint (the "SAC") for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). LGMF specially appears to challenge this Court's jurisdiction.[1]

## PRELIMINARY STATEMENT

Plaintiffs seek to subject LGMF—a company located in and organized under the laws of England—to this Court's jurisdiction on the basis of boilerplate jurisdictional allegations and claims concerning conduct alleged to have occurred outside of the United States. Due process demands, however, that Plaintiffs demonstrate that LGMF either is "at home" or "transacts business" in the U.S. (general jurisdiction), or engaged in conduct expressly aimed at the U.S. that gave rise to Plaintiffs' claims (specific jurisdiction). While it is not entirely clear what type of personal jurisdiction they assert, Plaintiffs have not alleged any facts—and none exist—that could establish general or specific personal jurisdiction over LGMF. The Court should dismiss the SAC against LGMF.

## STATEMENT OF FACTS[2]

LGMF is a private company organized under English law with its principal place of business in London, England. SAC ¶ 72. During the alleged relevant time period—January 1, 2004 to June 30, 2013—LGMF had five members: defendants Bank of Nova Scotia, Barclays Bank plc, HSBC Bank plc, Societe Generale SA, and Deutsche Bank AG (the "Member Banks").

---

[1] LGMF also joins the concurrently-filed joint motions to dismiss, but in doing so does not waive any arguments as to jurisdiction.

[2] The facts set forth are taken from the SAC. A more thorough summary of the allegations contained in the SAC is set forth in Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Second Consolidated Amended Class Action Complaint ("Defs. Mem."), which is incorporated by reference. Fed. R. Civ. P. 10(c).

*Id.* ¶¶ 72, 79, 341.  According to the SAC, LGMF administered the London Gold Fixing.  *Id.* ¶¶ 74, 79.  The SAC does not allege that LGMF conducts any affairs in or has any contacts with the U.S. or New York.

## ARGUMENT

### I.   STANDARD OF REVIEW

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff has the burden to make a *prima facie* showing that jurisdiction exists over the defendant.  *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013).  "This *prima facie* showing 'must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant.'"  *Id.* (citation omitted).

### II.  THE COURT LACKS GENERAL JURISDICTION OVER LGMF

General jurisdiction over LGMF can only exist if there is a statutory basis for personal jurisdiction *and* the exercise of jurisdiction comports with due process.  *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014).  Plaintiffs cannot clear either hurdle.

#### A.   There Is No Statutory Basis to Assert General Jurisdiction Over LGMF

Plaintiffs must establish this Court's jurisdiction with respect to each claim asserted.  *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004).  Here, Plaintiffs assert claims under the Sherman Act, 15 U.S.C. § 1, *et seq.*; Commodity Exchange Act, 7 U.S.C. § 1, *et seq.* ("CEA"); and New York common law for unjust enrichment.

In a federal question case where, as here, the defendant resides outside of the U.S. and the federal statute provides for national or worldwide service of process, courts traditionally extend personal jurisdiction to the limits permitted by due process rather than apply the forum state's personal jurisdictions rules.  *In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513, 526 (S.D.N.Y. 2008), *aff'd*, 730 F.3d 170 (2d Cir. 2013).  Both the Sherman Act (through

the Clayton Act) and the CEA allow for personal jurisdiction over a defendant "where[ver] it may be found."  15 U.S.C. § 22; 7 U.S.C. § 25(c); *see also In re Amaranth*, 587 F. Supp. 2d at 526; *Daniel v. Am. Bd. of Emergency Med.,* 428 F.3d 408, 422-23 (2d Cir. 2005); *Animal Sci. Prods. v. Hebei Welcome Pharm. Co.*, 2012 U.S. Dist. LEXIS 100075, at *20 (E.D.N.Y. July 18, 2012).  Personal jurisdiction, however, is established through national or worldwide service of process *only* if venue is proper, that is, if LGMF is "an inhabitant," "may be found," or "transacts business" in the Southern District of New York.  *Daniel*, 428 F.3d at 424; *Animal Sci. Prods.*, 2012 U.S. Dist. LEXIS 100075, at *20-21.

It is undisputed that LGMF is not an inhabitant of New York.  *See* SAC ¶ 72.  Thus, venue—and consequently statutory jurisdiction—fails on that basis alone.

There also is no basis to find that LGMF "transacts business," "does business," or is "found" in New York as those terms are used or incorporated by the Clayton Act, the CEA, or N.Y. C.P.L.R. §§ 301-302.  The Supreme Court has construed the term "transacts business" to mean "[t]he practical, everyday business or commercial concept of doing business or carrying on business 'of any *substantial* character.'"  *United States v. Scophony Corp. of Am.*, 333 U.S. 795, 807 (1948) (emphasis added); *see also Daniel*, 428 F.3d at 428.  Similarly, under New York law, "doing business" requires a showing that a company "engaged in 'continuous, permanent, and *substantial* activity in New York.'"  *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000) (emphasis added) (quoting *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.,* 918 F.2d 1039, 1043 (2d Cir. 1991)).  And being "found" is equated with "doing business," which requires "greater contacts" than "transacting business."  *See GE v. Bucyrus-Erie Co.*, 550 F. Supp. 1037, 1041 n.5 (S.D.N.Y. 1982); *see also Eastman Kodak Co. v. S. Photo Materials Co.*, 273 U.S. 359, 371-73 (1927) (same).

The SAC contains no factual allegations establishing that LGMF transacts or does business in New York.  Instead, Plaintiffs baldly assert that "each Defendant … transacted business throughout the United States, including in this District."  SAC ¶ 27.  Beyond these boilerplate pleadings, Plaintiffs do not (and cannot) offer any non-conclusory factual allegations that LGMF transacts any business in New York or the U.S.  *See Melnick v. Adelson-Melnick,* 346 F. Supp. 2d 499, 501 (S.D.N.Y. 2004) ("The plaintiff cannot rely merely on conclusory statements or allegations; rather, the *prima facie* showing must be 'factually supported.'") (citation omitted)).  In their previous complaint, LGMF was only mentioned in *three* out of 287 paragraphs.  *See* Dkt. No. 27, ¶¶ 68, 73, 194.  While Plaintiffs have added references to LGMF, *see*, *e.g.*, SAC ¶¶ 4, 72- 74, 79, 84, 96, 201, 236, 274, 321, not one of these paragraphs contains any allegation that LGMF does business in New York or the U.S.

The SAC also fails to allege any facts establishing that LGMF has engaged in substantial, continuous, permanent business in New York or the U.S.  There are no allegations (nor could there be) that, within the U.S., LGMF has ever registered to do business; has ever commenced any suit; has ever had a telephone listing; has ever paid or been required to pay taxes; has ever had any offices, employees, subsidiaries, affiliates, or bank accounts; or has ever engaged in any other activity reasonably expected of a business venture under the protection and permission of U.S. laws.

### B.     Asserting General Jurisdiction Over LGMF Would Violate Due Process

Even if there were some statutory basis for general jurisdiction (and there is none), an exercise by this Court of jurisdiction over LGMF would run afoul of due process.  *Sonera,* 750 F.3d at 224.  Under *Daimler AG v. Bauman,* this Court can have general jurisdiction over LGMF only if its "affiliations with [New York] are so 'continuous and systematic' as to render [LGMF] essentially at home in [New York]."  134 S.Ct. 746, 761 (2014) (citation omitted).  The

4

"paradigmatic bases" for determining where LGMF is "at home" are its "place of incorporation and principal place of business." *Id.* at 760 (noting that these affiliations are unique, easily ascertainable, and usually "indicate[] only one place").  Only in "exceptional case[s]" are a corporation's operations in a forum other than these two affiliations "so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 761 n.19.

Plaintiffs concede that LGMF is incorporated under English law and has its principal place of business in London, England.  SAC ¶ 72.  Therefore, because LGMF is clearly "at home" in England—and there are no grounds alleged to treat this as an "exceptional case"—due process requires dismissal of the SAC against LGMF.

    C.  **The Member Banks' Alleged Contacts and Conduct Are Irrelevant**

Plaintiffs cannot avoid this outcome by alleging that LGMF is "owned and controlled" by the Member Banks to thereby impute their alleged contacts or conduct onto LGMF.  *Id.*  The alleged contacts and conduct of the other defendants are irrelevant because the personal jurisdiction inquiry focuses on whether the "corporation itself," and "not its managing agent or subsidiary or affiliate," is at home in the forum state.  *Air Tropiques, SPRL v. N. & W. Ins. Co.*, 2014 U.S. Dist. LEXIS 44255, at *27-28 (S.D. Tex. Mar. 31, 2014) (citing *Daimler*, 134 S. Ct. at 761); *see also 7 W. 57th St. Realty Co. v. CitiGroup, Inc.*, 2015 U.S. Dist. LEXIS 44031, at *30-32 (S.D.N.Y. Mar. 31, 2015) (specific jurisdiction).  *Daimler* expressly disavowed "subject[ing] foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate."  134 S. Ct. at 759-60.  Any sort of imputation is inappropriate because corporations must be able to "'structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'"  *Id.* at 761-62 (citation omitted).

Even if imputation were an available means to establish jurisdiction, the SAC is devoid of *any* allegations supporting an agency or alter ego theory under New York, federal, or English

5

law.  There is no allegation (nor could there be) that a Member Bank acted as LGMF's agent in the U.S.  Instead, the SAC baldly alleges that LGMF acted as an agent of the Member Banks.  *See, e.g.*, SAC ¶¶ 4, 74.  Plaintiffs do not offer any facts supporting an agency relationship, and equally important, fail to explain how serving as the Member Banks' agent in London would be a basis for imputing their alleged U.S. contacts onto LGMF.  Moreover, the law does not recognize personal jurisdiction based on an agency theory.  *See Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 384 (1953) (noting that, under the Clayton Act, venue cannot be established by allegations that an in-state actor was an "agent" of an alleged co-conspirator who is a non-resident of the forum—describing the argument as "a frivolous albeit ingenious attempt to expand the statute"); *Sonera,* 750 F.3d at 225-26 (noting that *Daimler* "expressed doubts" about an agency analysis).

Plaintiffs' conclusory allegations that LGMF is "completely controlled" and "so dominated" by the Member Banks as to render it indistinguishable for jurisdictional purposes (SAC ¶¶ 73-74, 321) is neither accurate nor adequate.  While Plaintiffs allege that from 2004 to 2013, the Member Banks were the only members of LGMF and that LGMF "was financially dependent" on them, Plaintiffs also admit that LGMF performs separate, independent functions, generates revenue beyond membership fees, had directors who were not employees of the Member Banks, and existed well before the alleged conspiracy.  *Id.* ¶¶ 73-74, 79, 274.   This is not evidence of undue domination; rather, it supports the existence of a genuine arm's length relationship between LGMF and its members, and shows that corporate formalities were observed.  *See, e.g.*, *In re Aluminum Warehousing Antitrust Litig.*, 2015 U.S. Dist. LEXIS 26413, at *48-60 (S.D.N.Y. Mar. 3, 2015) (rejecting similarly conclusory allegations of "control," "domination," and "indistinguishable" as insufficient) ("[T]he mere fact that some employees of

a parent are also officers of a subsidiary does not imply that the subsidiary is an agent of the parent."); *Beach v. Citigroup Alternative Invs. LLC*, 2014 U.S. Dist. LEXIS 30032, at *20 (S.D.N.Y. Mar. 7, 2014) (rejecting plaintiffs' attempt to impute Citigroup's New York contacts to its subsidiary in the U.K. because the "facts alleged" were "not sufficient to give rise to an inference that Citigroup abused the corporate form"); *see also NYKCool A.B. v. Pac. Int'l Servs. Inc.,* 2014 U.S. Dist. LEXIS 96007, at *18-19  (S.D.N.Y. Jul. 15, 2014) (noting that the alter ego theory applies in a narrow set of circumstances in which one entity truly dominates the other so the two are indistinguishable for practical purposes).  Nor do Plaintiffs' allegations provide a basis to pierce LGMF's corporate veil under English law.[3]  English law makes clear that "ownership and control of a company [are] not enough to justify piercing the corporate veil." *Prest v. Petrodel Res. Ltd.*, [2013] UKSC 34, [25]; *see also Macaura v. N. Assurance Co. Ltd.*, [1925] AC 619 ("[T]he corporator, even if he holds all the shares, is not the corporation …."); *see, e.g.*, *Woolfson v. Strathclyde Reg'l Council*, [1978] S.L.T. 159 (H.L.) 161 (rejecting attempt to pierce company's veil despite the fact that owner held 999 out of 1,000 company issued shares and was the company's sole director and manager).  Plaintiffs' allegation that the Member Banks control or dominate LGMF simply is insufficient on its face to support piercing LGMF's corporate veil.

Finally, while "there really is no separate doctrine supporting 'conspiracy jurisdiction,'" *In re Aluminum*, 2015 U.S. Dist. LEXIS 26413, at *40, the SAC is devoid of *any* allegations that the defendants participated in a conspiracy.  As Defendants' Joint Brief makes clear, Plaintiffs allege neither direct evidence of an illegal agreement nor circumstantial evidence from which an

---

[3] Piercing the corporate veil "requires an examination of the internal affairs of a corporation." *Beach*, 2014 U.S. Dist. LEXIS 30032, at *19.  "Questions relating to the internal affairs of corporations … are generally decided in accordance with the law of the place of incorporation …."  *United States v. Funds Held ex rel. Wetterer*, 210 F.3d 96, 106 (2d Cir. 2000).

illegal agreement can be inferred. *See* Defs. Mem. at 20-28; *see also Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 136 (2d Cir. 2013). Plaintiffs therefore fail to make a *prima facie* showing why this Court should disregard LGMF's status as a discrete entity and consider all defendants as a single enterprise for jurisdictional purposes. *See Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S. Ct. 2846, 2857 (2011). It should not.

**III.    THE COURT LACKS SPECIFIC JURISDICTION OVER LGMF**

Plaintiffs also fail to allege facts that would establish specific personal jurisdiction over LGMF. Specific or "conduct-linked" jurisdiction is more limited than general jurisdiction and "depends on an affiliatio[n] between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 131 S. Ct. at 2851 (internal quotation marks and citation omitted). For a court to have specific jurisdiction over a nonresident defendant, the plaintiff must allege facts establishing that (i) the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," and (ii) the plaintiff's claims "aris[e] out of or relate[] to the defendant's contacts with the forum." *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787-88 (2011) (internal quotation marks omitted); *see also Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) ("[T]he defendant's suit-related conduct must create a substantial connection with the forum state.").

Here, the SAC contains *no* allegations that LGMF has ever conducted activities within or took any actions in relation to New York or the U.S. generally to establish purposeful availment of New York or U.S. law. Indeed, the only suit-related allegation concerning LGMF is that it "administered" the Fixing, SAC ¶¶ 74, 79, *which Plaintiffs admit took place in London, England*. In other words, the actions by LGMF that purportedly gave rise to Plaintiffs' claims occurred in London, not the U.S. As such, it would be unreasonable for this Court to exercise specific

8

jurisdiction over LGMF.  *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996).

In an apparent attempt to overcome the obvious jurisdictional difficulties they face, Plaintiffs suggest that LGMF's actions were "directed" or "targeted" at New York, or that it was foreseeable that those actions would cause harm there.  *See* SAC ¶¶ 27, 74.  Neither theory has merit.  The SAC alleges, at most, the "Fixing occurs shortly after trading begins on the COMEX in New York," SAC ¶ 107; the PM Fixing and COMEX gold futures "have effectively moved in lockstep since 1975," SAC ¶ 309; the PM Fixing chair would "announc[e] … a figure that was the then-prevailing US Dollar spot price for gold," SAC ¶ 315; "[t]he COMEX … is located in the [S.D.N.Y.]," SAC ¶ 26; and LGMF "knew" that the Fixing "had a substantial effect on Gold Investments traded in the U.S. including gold derivatives traded on the COMEX," SAC ¶ 74.  But the SAC fails to explain how these allegations create a substantial connection between LGMF and New York or the U.S.  Plaintiffs offer nothing beyond the general allegation of knowledge, and the SAC as a whole suggests that any alleged conduct was never directed at a specific person, place, or time.[4]  It is plainly insufficient to merely allege that LGMF should have foreseen its alleged conduct might have an impact on the U.S.-based COMEX market.  Specific jurisdiction cannot exist where it was merely "foreseeable" that LGMF's alleged actions outside the forum would have an effect in the forum.  "[T]he fact that harm in the forum is foreseeable … is insufficient for purpose of establishing specific personal jurisdiction over a defendant." *In re Terrorist Attacks*, 714 F.3d at 674; *see also J. McIntyre*, 131 S. Ct. at 2788-89 (rejecting notion that the foreseeable effects of a defendant's actions can be used to establish specific

---

[4] For instance, Plaintiffs state that the Fixing is "integral" to the global gold markets, and is a "globally accepted" benchmark used around the world, not simply the U.S.  SAC ¶ 96.  Plaintiffs also concede that "the Fix occurred at different times during the New York trading day," and spikes occurred "no matter when in the New York trading day it fell."  SAC ¶10 n.3, ¶ 193.

9

jurisdiction).

Plaintiffs must (but have failed to) allege *facts* showing that LGMF took "intentional" actions "expressly aimed" at the forum. *In re Terrorist Attacks*, 714 F.3d at 674 (internal quotation marks and citations omitted). The SAC does not set forth a single factual allegation that LGMF did anything other than administer the Fixing, much less that it intended its alleged conduct to have an impact in New York or the U.S. And to the extent certain Plaintiffs are connected to or sustained purported injuries while in New York or the U.S., *see* SAC ¶ 27, such fortuitous connections are jurisdictionally irrelevant. *See Walden*, 134 S. Ct. at 1123, 1125-26.

## IV.  THERE IS NO BASIS FOR JURISDICTIONAL DISCOVERY

Jurisdictional discovery is not appropriate where a plaintiff fails "to make a *prima facie* showing of jurisdiction over a foreign corporation that they seek to sue in federal courts in New York." *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185-86 (2d Cir. 1998) (affirming denial of jurisdictional discovery on defendant foreign corporation where plaintiffs merely offered "conclusory non-fact-specific jurisdictional allegations"). Absent this showing, a plaintiff "cannot take any discovery—even jurisdictional discovery—from a foreign corporation." *Estate of Ungar v. Palestinian Auth.*, 400 F. Supp. 2d 541, 549 (S.D.N.Y. 2005). Because Plaintiffs have failed to make a *prima facie* showing that this Court has personal jurisdiction over LGMF, and discovery could not cure that failure, any request for jurisdictional discovery should be rejected. *Frontera Res. Azer. Corp. v. State Oil Co.*, 479 F. Supp. 2d 376, 379 (S.D.N.Y. 2007) (jurisdictional discovery is not appropriate unless "the pleadings indicate that limited discovery is likely to uncover additional facts supporting jurisdiction").

## CONCLUSION

For the reasons set forth above, LGMF respectfully requests that the Court dismiss Plaintiffs' claims against it for lack of personal jurisdiction.

Dated:  April 30, 2015                                      Respectfully submitted,

                                                   PATTERSON BELKNAP WEBB & TYLER LLP

By:     */s/ James V. Masella, III*
       William F. Cavanaugh, Jr.
       Saul B. Shapiro
       James V. Masella, III
       R. James Madigan III
       1133 Avenue of the Americas
       New York, New York  10036
       Telephone No.:  (212) 336-2000
       Facsimile No.:  (212) 336-2222
       wfcavanaugh@pbwt.com
       sbshapiro@pbwt.com
       jmasella@pbwt.com
       jmadigan@pbwt.com

       *Attorneys for Defendant The London Gold Market Fixing Limited*