UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>COMMODITY EXCHANGE, INC., GOLD FUTURES AND OPTIONS TRADING LITIGATION<br><br><br>*This Document Relates To All Actions* | Case No.  14-MD-2548 (VEC)<br>          14-MC-2548 (VEC) |

**PLAINTIFFS' OPPOSITION TO THE LONDON GOLD MARKET FIXING LTD.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

## **TABLE OF CONTENTS**

LEGAL STANDARD ..................................................................................................................1

I.   THE COMPLAINT ADEQUATELY ALLEGES LGMF WAS THE ALTER
     EGO OF THE FIXING BANK DEFENDANTS .............................................................1

II.  ON THESE FACTS, THE COURT HAS JURISDICTION OVER LGMF .......................4

     A.   There is No Dispute LGMF Was Properly Served ...................................................5

     B.   Multiple Statutory Triggers for Jurisdiction Exist ....................................................5

          1.   LGMF is subject to specific jurisdiction under Rule 4(k)(2) both
               because it was an alter ego, and because it targeted the U.S. ........................5

          2.   Worldwide-service provisions also provide for specific jurisdiction ..........8

          3.   LGMF is subject to general jurisdiction under Rule 4(k)(1) because
               it was the dominated alter ego of Defendants properly before this
               Court ..............................................................................................................9

     C.   Extending Jurisdiction Over LGMF Would Not Offend Due Process ....................9

III. IF LGMF'S MOTION IS NOT DENIED OUTRIGHT THEN THE COURT
     SHOULD ALLOW JURISDICTIONAL DISCOVERY ..................................................10

CONCLUSION ............................................................................................................................10

**TABLE OF AUTHORITIES**

Page

**Cases**

*7 West 57th St. Realty Co. v. Citigroup, Inc.*,
   2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015) ................................................................. 6

*APWU v. Potter*,
   343 F.3d 619 (2d Cir. 2003) ........................................................................................... 2

*Air Tropiques, SPRL v. Northern & Western Ins. Co.*,
   2014 WL 1323046 (S.D. Tex. Mar. 31, 2014) ............................................................... 6

*In re Aluminum Warehousing Antitrust Litig.*,
   2015 WL 892255 (S.D.N.Y. Mar. 3, 2015) .................................................................... 4

*In re Amaranth Natural Gas Commodities Litig.*,
   587 F. Supp. 2d 513 (S.D.N.Y. 2008) ........................................................................... 8

*In re Angeln GmBH & Co. KG*,
   510 F. App'x 90 (2d Cir. 2013) ..................................................................................... 5

*Bankers Life & Casualty Co. v. Holland*,
   346 U.S. 379 (1953) ...................................................................................................... 6

*In re Bass*,
   2011 WL 560418 (Bankr. W.D. Tex. Feb 15, 2011) ..................................................... 3

*Beach v. Citigroup Alternative Inv.*,
   2014 WL 904650 (S.D.N.Y. Mar. 7, 2014) .................................................................... 4

*Bhd. of Locomotive Eng'rs v. Springfield Terminal Ry. Co.*,
   210 F.3d 18 (1st Cir. 2000) ........................................................................................... 2

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ................................................................................................. 7, 8

*Ca. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*,
   445 U.S. 97 (1980) ........................................................................................................ 2

*Calder v. Jones*,
   465 U.S. 783 (1984) ...................................................................................................... 7

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2014) ................................................................................................ 6, 9

*DiStefano v. Carozzi N. Am., Inc.*,
   286 F.3d 81 (2d Cir. 2001) ............................................................................................ 1

*Dolco Inv., Ltd. v. Moonriver Dev., Ltd.*,
   486 F. Supp. 2d 261 (S.D.N.Y. 2007) ........................................................................... 2

**TABLE OF AUTHORITIES**

Page

**Cases**

*7 West 57th St. Realty Co. v. Citigroup, Inc.*,
   2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015) ................................................................. 6

*APWU v. Potter*,
   343 F.3d 619 (2d Cir. 2003) ........................................................................................... 2

*Air Tropiques, SPRL v. Northern & Western Ins. Co.*,
   2014 WL 1323046 (S.D. Tex. Mar. 31, 2014) ............................................................... 6

*In re Aluminum Warehousing Antitrust Litig.*,
   2015 WL 892255 (S.D.N.Y. Mar. 3, 2015) .................................................................... 4

*In re Amaranth Natural Gas Commodities Litig.*,
   587 F. Supp. 2d 513 (S.D.N.Y. 2008) ........................................................................... 8

*In re Angeln GmBH & Co. KG*,
   510 F. App'x 90 (2d Cir. 2013) ..................................................................................... 5

*Bankers Life & Casualty Co. v. Holland*,
   346 U.S. 379 (1953) ...................................................................................................... 6

*In re Bass*,
   2011 WL 560418 (Bankr. W.D. Tex. Feb 15, 2011) ..................................................... 3

*Beach v. Citigroup Alternative Inv.*,
   2014 WL 904650 (S.D.N.Y. Mar. 7, 2014) .................................................................... 4

*Bhd. of Locomotive Eng'rs v. Springfield Terminal Ry. Co.*,
   210 F.3d 18 (1st Cir. 2000) ........................................................................................... 2

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ................................................................................................. 7, 8

*Ca. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*,
   445 U.S. 97 (1980) ........................................................................................................ 2

*Calder v. Jones*,
   465 U.S. 783 (1984) ...................................................................................................... 7

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2014) ................................................................................................ 6, 9

*DiStefano v. Carozzi N. Am., Inc.*,
   286 F.3d 81 (2d Cir. 2001) ............................................................................................ 1

*Dolco Inv., Ltd. v. Moonriver Dev., Ltd.*,
   486 F. Supp. 2d 261 (S.D.N.Y. 2007) ........................................................................... 2

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
  722 F.3d 81 (2d Cir. 2013)..................................................................................................1

*ESI, Inc. v. Coastal Corp.*,
  61 F. Supp. 2d 35 (S.D.N.Y. 1999) ....................................................................................4

*Ehrenfeld v. Mahfouz*,
  489 F.3d 542 (2d Cir. 2007)..............................................................................................10

*GTFM Inc. v. Int'l Basic Source, Inc.*,
  2002 WL 42884 (S.D.N.Y. Jan. 11, 2002) .......................................................................10

*Gorrill v. IcelandAir/Flugleidir*,
  761 F.2d 847 (2d Cir. 1985)................................................................................................3

*Gualandi v. Adams*,
  385 F.3d 236 (2d Cir. 2004)..............................................................................................10

*IUE AFL-CIO Pension Fund v. Herrmann*,
  9 F.3d 1049 (2d Cir. 1993).................................................................................................5

*Int'l Diamond Importers v. Oriental Gemco (N.Y.), Inc.*,
  2014 WL 6682622 (S.D.N.Y. Nov. 24, 2014) ..................................................................10

*Int'l Equity Invs. v. Opportunity Equity Partners*,
  475 F. Supp. 2d 456 (S.D.N.Y. 2007)....................................................................1, 2, 3, 4, 6

*Leist v. Simplot*,
  638 F.2d 283 (2d Cir. 1980)................................................................................................2

*Licci v. Lebanese Canadian Bank, SAL*,
  732 F.3d 161 (2d Cir. 2013)......................................................................................4, 7, 8

*MacDermid, Inc. v. Deiter*,
  702 F.3d 725 (2d Cir. 2012)................................................................................................8

*In re Magnetic Audiotape Antitrust Litig.*,
  334 F.3d 204 (2d Cir. 2003).........................................................................................2, 10

*Marine Midland Bank, N.A. v. Miller*,
  664 F.2d 899 (2d Cir. 1981).........................................................................................2, 10

*Miramax Film Corp. v. Abraham*,
  2003 WL 22832384 (S.D.N.Y. Nov. 25, 2003) ..............................................................1, 6

*Moviecolor Ltd. v. Eastman Kodak Co.*,
  288 F.2d 80 (2d Cir. 1961)..................................................................................................2

*NYKCool A.B. v. Pac. Int'l Servs.*,
  2013 WL 6799973 (S.D.N.Y. Dec. 20, 2013) ....................................................................2

*NYKCool A.B. v. Pac. Int'l Servs.*,
  2014 WL 3605632 (S.D.N.Y. Jul 15, 2014) ...................................................................4, 9

*Peterson v. Iran*,
    2013 WL 1155576 (S.D.N.Y. Mar. 13, 2013) ................................................................. 5

*Porina v. Marward Shipping Co.*,
    521 F.3d 122 (2d Cir. 2008) ........................................................................................... 5

*Rual Trade Ltd. v. Viva Trade LLC*,
    549 F. Supp. 2d 1067 (E.D. Wis. 2008) ......................................................................... 1

*S.C. Chimexim S.A. v. Velco Interprises, Ltd.*,
    2004 WL 330233 (S.D.N.Y. Feb. 23, 2004) ................................................................ 10

*S. New England Tel. Co. v. Global NAPs Inc.*,
    624 F.3d 123 (2d Cir. 2010) ....................................................................................... 2, 9

*Simon v. Philip Morris, Inc.*,
    86 F. Supp. 2d 95 (E.D.N.Y. 2000) ................................................................................ 7

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
    750 F.3d 221 (2d Cir. 2014) ........................................................................................... 9

*Sunward Electronics, Inc. v. McDonald*,
    362 F.3d 17 (2d Cir. 2004) ............................................................................................. 5

*Telenor Mobile Commc'ns AS v. Storm LLC*,
    587 F. Supp. 2d 594 (S.D.N.Y. 2008) ............................................................................ 2

*In re Terrorist Attacks on Sept. 11, 2001*,
    718 F. Supp. 2d 456 (S.D.N.Y. 2010) ............................................................................ 7

*Transfield ER Cape Ltd. v. Indus Carriers, Inc.*,
    571 F.3d 221 (2d Cir. 2009) ........................................................................................... 6

*U.S. v. Peters*,
    732 F.3d 93 (2d Cir. 2013) ......................................................................................... 1, 2

*Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*,
    933 F.2d 131 (2d Cir. 1991) ....................................................................................... 4, 6

*Zazzali v. Swenson*,
    852 F. Supp. 2d 438 (D. Del. 2012) ............................................................................... 8

## **Statutes**

7 U.S.C. § 25 ............................................................................................................................. 8

Fed. R. Civ. P. 4(k)(1) ............................................................................................................... 9

Fed. R. Civ. P. 4(k)(2) ............................................................................................................... 5

Plaintiffs respectfully submit this memorandum in opposition to the motion to dismiss filed by The London Gold Market Fixing Ltd. ("LGMF") (Dkt. Nos. 75-76) ("LGMF Br.").

## LEGAL STANDARD

"Prior to discovery, a plaintiff challenged by a jurisdiction-testing motion may defeat the motion by pleading in good faith legally sufficient allegations of jurisdiction." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84-85 (2d Cir. 2013).  Alleged facts are taken as true unless a "full-blown evidentiary hearing" has been provided.  *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001); *see also Miramax Film Corp. v. Abraham*, 2003 WL 22832384, at *6 (S.D.N.Y. Nov. 25, 2003).  Where, as here, "a defendant seeks dismissal based on lack of personal jurisdiction but does not present any evidence, the court simply asks whether the complaint alleges facts that arguably provide a basis for jurisdiction." *Rual Trade Ltd. v. Viva Trade LLC*, 549 F. Supp. 2d 1067, 1073 (E.D. Wis. 2008).

### I.  THE COMPLAINT ADEQUATELY ALLEGES LGMF WAS THE ALTER EGO OF THE FIXING BANK DEFENDANTS

Jurisdiction is not being asserted on the theory LGMF is a resident, LGMF Br. at 3-4, on the theory that it was a mere affiliate of a Defendant, *id.* at 5, or on the theory that the Fixing Bank Defendants were agents of LGMF, *id.* at 6.  Rather, jurisdiction is proper because LGMF was the dominated instrumentality through which a conspiracy to impact prices in the U.S. was conducted (*i.e.*, LGMF was the alter ego of the Fixing Bank Defendants).[1]  As discussed in Section II.B.1.a below, LGMF does not seriously contend that this is an improper theory.  Thus, the question for the Court is whether it has been adequately pled.

Federal common law applies to whether LGMF's veil should be pierced to allow the exercise of jurisdiction based on an alter ego theory.  *See, e.g.*, *U.S. v. Peters*, 732 F.3d 93, 103

---

[1] Exercising jurisdiction over a "dominated entit[y] on the basis of . . . alleged dominators" is referred to as "reverse piercing."  *Int'l Equity Invs. v. Opportunity Equity Partners*, 475 F. Supp. 2d 456, 458 (S.D.N.Y. 2007).

1

n.4 (2d Cir. 2013) (where a "case arises under federal question jurisdiction and involves a federal statute that 'demands national uniformity,' federal common law . . . presumably controls the question of whether the corporate veil should be pierced.'" (quoting *Bhd. of Locomotive Eng'rs v. Springfield Terminal Ry. Co.*, 210 F.3d 18, 25 (1st Cir. 2000)); *see also S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010). The Second Circuit has long recognized that in the area of antitrust enforcement, "federal interests transcend those of the states." *Moviecolor Ltd. v. Eastman Kodak Co.*, 288 F.2d 80, 84 (2d Cir. 1961). So, too, with the Commodity Exchange Act ("CEA"). *Leist v. Simplot*, 638 F.2d 283, 349 n.20 (2d Cir. 1980).

The standard for veil-piercing and alter ego under federal common law only requires the party seeking to attach alter ego jurisdiction to show "it would be unfair under the circumstances not to disregard the corporate form." *S. New England*, 624 F.3d at 138; *Dolco Inv., Ltd. v. Moonriver Dev., Ltd.*, 486 F. Supp. 2d 261, 271-72 (S.D.N.Y. 2007) (federal common law "requires that plaintiff allege only domination"). The alter ego standard is "relaxed where the alter ego theory is used . . . to establish jurisdiction." *Int'l Equity Invs. v. Opportunity Equity Partners*, 475 F. Supp. 2d 456, 459 (S.D.N.Y. 2007). "In such an instance, the question is only whether the allegedly controlled entity 'was a shell' for the allegedly controlling party[.]" *Id.* (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)).[2] This is a fact-intensive analysis that is inappropriate to resolve at the pleading stage. *See generally, e.g., In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 208 (2d Cir. 2003).

This standard is more than satisfied here.[3] As discussed in the Joint Opposition being filed concurrently herewith, the Complaint persuasively establishes that the PM Fixing process

---

[2] *See also S. New England*, 624 F.3d at 138 (analyzing alter ego liability under federal common law); *NYKCool A.B. v. Pac. Int'l Servs.*, 2013 WL 6799973, at *10 (S.D.N.Y. Dec. 20, 2013) (collecting cases).

[3] The same conclusion is required under all other potentially applicable laws. For instance, New York law is similar to federal common law. It "permits veil-piercing where (1) the owner exercised complete domination over

(which gave cover for *daily* meetings) was a central tool used by the Fixing Bank Defendants to rig prices of gold, including to specifically profit from "short" futures positions held and traded in the U.S.  LGMF is a shell corporation that exists solely to aid the Fixing Bank Defendants in setting prices.  Dkt. No. 44 ("SAC" or "Complaint") ¶ 74.  LGMF's only purpose is to serve as the vehicle for the Fixing that is at the center of the case.  *Id.* ¶¶ 73, 74, 79, 84, 96, 201, 236, 321.  LGMF was established in 1994 by the five banks that then conducted the Fixing at the offices of Rothschild.  *Id.* ¶ 73.  From 1994 to 2004, LGMF's registered address was the site of the Fixing.  After Rothschild left the Fixing, LGMF's registered address was changed to Hackwood Secretaries Ltd., which is an entity that was created by the English law firm Linklaters LLP to provide "services to [Linklaters'] clients or to other Linklaters' entities."  Thus, LGMF has never had an independent address and appears to have no employees.[4]

During the relevant time period[5] LGMF's only members were the Fixing Bank Defendants, *id.* ¶¶ 72, 79, 341, and LGMF was owned and controlled by them, *id.* ¶¶ 4, 72, 73, 201, 321.  Throughout the period, LGMF's current and former directors were all senior precious metals and commodities traders employed by the Fixing Bank Defendants.  *Id.* ¶ 73.  LGMF's

---

the corporation with respect to the transaction at issue, and (2) such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil."  *Telenor Mobile Commc'ns AS v. Storm LLC*, 587 F. Supp. 2d 594, 619 (S.D.N.Y. 2008) *aff'd* 351 F. App'x 467 (2d Cir. 2009).  "Some decisions of the Second Circuit seem to regard the second prong as unnecessary if the first prong is satisfied."  *Id.* at 620 n.28.  Domination of the alter ego "need not be complete as to every detail."  *Gorrill v. IcelandAir/Flugleidir*, 761 F.2d 847, 853 (2d Cir. 1985).  Applying English alter ego law would negatively impact the federal interest in enforcing national antitrust and CEA policies.  *See generally Ca. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 110 (1980).  In any event, LGMF does not actually demonstrate any relevant difference.  *See Int'l Equity*, 475 F. Supp. at 458-59 (declining to apply English law where "defendants [] failed to establish a true conflict of laws"); *In re Bass*, 2011 WL 560418, at *9 (Bankr. W.D. Tex. Feb 15, 2011) ("The United Kingdom has recognized piercing the corporate veil for well over 100 years.").  Rather, it cites English law for the mere proposition that ownership alone is an insufficient basis to pierce the veil.  LGMF Br. at 7.  But the Complaint alleges far more, as discussed below.

[4] The facts regarding LGMF's address are drawn from LGMF's Certificate of Incorporation, its Change of Registered Address, and its 2014 Directors' Report and Financial Statements (at 17).  *See* Decl. of Daniel L. Brockett in Supp. of Pls.' Opp'ns to Defs.' Mots. to Dismiss, Exs. 12-14.  Facts regarding directors not taken from the Complaint are supported by other publically available documents, attached as Exhibits 15 to 25 to the Brockett declaration.

[5] LGMF tries to distract by claiming that at some point in time it "had" directors that were not tied to the Fixing Bank Defendants.  LGMF Br. at 6.  This unsupported, outside-the-record assertion should not be accepted, but even if it is, the issue is whether LGMF was the alter ego during the class period, not at some other time.

directors (*i.e.*, employees of the Fixing Bank Defendants) managed the day-to-day business of LGMF. *Id.* ¶¶ 73-74. Nearly all of its revenue came from membership fees paid by the Fixing Bank Defendants. *Id.* ¶ 73. Up until last year, LGMF had no independent oversight, no conflict of interest policy, no code of conduct, and no independent directors. *Id.* ¶¶ 84, 274.

In sum, it would be grossly "unfair under the circumstances" to allow LGMF—a shell entity used to carry out the Bank Defendants' conspiracy—to be placed outside the reach of this Court. *See, e.g.*, *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 138-40 (2d Cir. 1991); *ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 52-57 (S.D.N.Y. 1999) (alter ego jurisdiction proper where there was overlap in ownership, financial dependence, and a massive overlap in corporate officers and directors); *Int'l Equity*, 475 F. Supp. 2d at 459-60. That LGMF was a *shell* whose "sole function is to 'take on and continue the promotion, administration, and conduct of the Fixing Process,'" SAC ¶ 74—*i.e.*, *the* central tool used in the conspiracy at issue—distinguishes this from any of the cases cited by LGMF that found alter ego or other jurisdictional allegations insufficient. For instance, the plaintiffs in *In re Aluminum Warehousing Antitrust Litigation*, 2015 WL 892255, at *12 (S.D.N.Y. Mar. 3, 2015), were trying to go *up* the chain—*i.e.*, to reach a foreign parent company. That parent company was nowhere alleged to exist solely to "administer" a central tool used in the conspiracy at issue.[6]

## II.   ON THESE FACTS, THE COURT HAS JURISDICTION OVER LGMF

To establish jurisdiction over LGMF, three requirements must be met: (a) service must have been procedurally proper; (b) there must be statutory authority to exercise jurisdiction; and

---

[6] *See also NYKCool A.B. v. Pac. Int'l Servs.*, 2014 WL 3605632, at *5-6 (S.D.N.Y. Jul 15, 2014) (cited by LGMF; *upholding* allegations of alter ego theory of jurisdiction, based on allegations of common ownership, control, and funneling of money); *Beach v. Citigroup Alternative Inv.*, 2014 WL 904650, at *8 (S.D.N.Y. Mar. 7, 2014) (cited by LGMF; no personal jurisdiction over foreign investment advisor merely because domestic parent "exercised oversight" and had some common officers).

(c) the exercise of jurisdiction must comport with the requirements of due process. *See, e.g.*, *Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013).

### A.  There is No Dispute LGMF Was Properly Served

LGMF has not argued that service was improper, and thus the argument is now waived.

### B.  Multiple Statutory Triggers for Jurisdiction Exist

#### 1.  LGMF is subject to specific jurisdiction under Rule 4(k)(2) both because it was an alter ego, and because it targeted the U.S.

Federal Rule of Civil Procedure 4(k)(2) provides jurisdiction over a defendant "in any case (1) 'aris[ing] under federal law,' (2) where a defendant is not subject to the general jurisdiction of any one state, and (3) where 'exercising jurisdiction [would be] consistent with the United States Constitution and laws.'" *In re Angeln GmBH & Co. KG*, 510 F. App'x 90, 91-92 (2d Cir. 2013); *see also Porina v. Marward Shipping Co.*, 521 F.3d 122, 127 (2d Cir. 2008). "[P]laintiff need only make a *prima facie* case that 4(k)(2) jurisdiction is proper[.]" *Peterson v. Iran*, 2013 WL 1155576, at *14 (S.D.N.Y. Mar. 13, 2013) *aff'd*, 758 F.3d 185 (2d Cir. 2014).

The first element is satisfied because Plaintiffs' claims primarily arise under federal law.[7] SAC ¶¶ 349-75.  The second element is satisfied, according to LGMF, because LGMF contends that it is only "home" in England. *See* LGMF Br. at 5, 10; *Peterson*, 2013 WL 1155576, at *17 ("By arguing that it has no presence in the United States . . . UBAE has in fact established the necessary predicate for personal jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2)."). To satisfy the third requirement, plaintiffs are only required to show that LGMF has sufficient contacts with the

---

[7] The unjust enrichment claim would also be properly before the Court pursuant to the doctrine of pendent jurisdiction. *See, e.g.*, *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir. 1993) ("[U]nder the doctrine of pendent personal jurisdiction, where a federal statute authorizes nationwide service of process, and the federal and state claims derive from a common nucleus of operative fact . . . the district court may assert personal jurisdiction over the parties to the related state law claims[.]").  The issue of pendent jurisdiction was not even addressed by *Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004), generically referenced by LGMF (at 2).  That soundbite thus cannot be fairly read to overturn a longstanding and widely accepted body of law.

U.S. to justify the court's exercise of personal jurisdiction. *See Angeln GmBH*, 510 F. App'x at 92. As shown below, Plaintiffs do so here in two ways.

*(a)     Sufficient contacts by way of reverse veil-piercing*

LGMF argues its relationship with the Fixing Bank Defendants is "irrelevant." LGMF Br. at 5. But, as discussed above, personal jurisdiction may be exercised over an entity that may not otherwise be subject to personal jurisdiction if that entity (LGMF) is the "alter ego" of an entity that *is* subject to personal jurisdiction (the Fixing Bank Defendants). *See, e.g.*, *Transfield ER Cape Ltd. v. Indus Carriers, Inc.*, 571 F.3d 221, 224 (2d Cir. 2009); *Wm. Passalacqua*, 933 F.2d at 142-43; *Miramax*, 2003 WL 22832384, at *6; *Int'l Equity*, 475 F. Supp. 2d at 458.

Defendants cite to no case rejecting this well-established theory. Instead, LGMF cites cases like *7 West 57th St. Realty Co. v. Citigroup, Inc.*, 2015 WL 1514539, at *10-11 (S.D.N.Y. Mar. 31, 2015), a case that had nothing to do with an alter ego analysis but instead one that analyzed whether foreign conduct by a foreign entity was sufficiently directed into New York. And LGMF cites cases like *Air Tropiques, SPRL v. Northern & Western Insurance Co.*, 2014 WL 1323046 (S.D. Tex. Mar. 31, 2014), where the issue was resolved based on the insufficiency of the alleged facts. *See id.* at *11 ("[t]he only facts alleged . . . about NWIC are that individuals acting on its behalf sent letters or emails").[8]

Thus, because the Complaint adequately pleads that LGMF was the dominated alter ego, *see* SAC ¶¶ 4, 72-74, 79, 84, 96, 201, 236, 274, 321, and because this is a statutory trigger for jurisdiction, the Court has personal jurisdiction over LGMF under Rule 4(k)(2).

---

[8] Defendants also cite to *Daimler*, but, as discussed in Section I.C below, the Second Circuit has recognized that case is irrelevant to the alter ego/reverse veil-piercing question. And in *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 384 (1953), the allegation that the commissioner of Georgia had "agents" in Florida was found to be insufficient to subject the commissioner to jurisdiction there. It thus, like most all of LGMF's citations, involved the assertion of jurisdiction over a foreign principal based on the acts of its domestic agent—not, as here, the other way around. *Bankers*' short refusal to extend jurisdiction on the facts before it thus says nothing of the propriety of calling a foreign alter ego into the same court where its principals are already (properly) standing.

*(b)     Sufficient contacts due to targeting the U.S.*

Even if LGMF's veil could not be reverse-pierced on the facts here, the "effects" test is also met because LGMF was at the center of a conspiracy targeting the U.S. market for gold. "The 'effects test' . . . provides for specific personal jurisdiction over a foreign defendant based on alleged: (1) intentional, tortious actions; (2) which were expressly aimed at the United States; (3) that causes harm, the brunt of which is suffered—and which the defendant knows is likely to be suffered—in the United States; and [where] (4) the injuries that are the subject of the litigation arise from or relate to defendant's subject conduct." *In re Terrorist Attacks on Sept. 11, 2001*, 718 F. Supp. 2d 456, 478-79 (S.D.N.Y. 2010) *aff'd*, 714 F.3d 109 (2d Cir. 2013).

As in *Licci*, where the "effects" test was satisfied by the defendant's "repeated use of [a] correspondent account—and hence New York's banking system," *Licci*, 732 F.3d at 168, Plaintiffs here have alleged that LGMF was the vehicle for a conspiracy to repeatedly manipulate prices for gold, a conspiracy that was aimed at Gold Investments traded in the United States. *See, e.g.*, SAC ¶¶ 14, 17, 26, 74. This is not just "foreseeability"—the Complaint explains that benefitting from COMEX short positions (*i.e.*, U.S.-based investments, traded on a New York-based exchange) was a primary motivator behind the entire conspiracy. *See* Joint Opp. Section I.D.1. Thus, minimum contacts exist because LGMF had "fair warning" it could be haled into court in the U.S., where the profits from the scheme were being generated.[9]

The final consideration of the "effects" test is reasonableness. But when minimum contacts exist—as they do here—considerations of reasonableness and fairness will rarely defeat jurisdiction. *See Simon v. Philip Morris, Inc.*, 86 F. Supp. 2d 95, 133 (E.D.N.Y. 2000).

---

[9] The "fair warning" requirement of due process is satisfied where "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation resulted from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471 (1985); *see also Calder v. Jones*, 465 U.S. 783, 788-89 (1984) (minimum contacts exist when the "effects" of conduct are felt in the forum state).

"[W]here a defendant has purposefully directed its activities at the forum state" seeks to defeat jurisdiction, "it must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Licci*, 732 F.3d at 173.[10] Indeed, in almost every case such consideration "may be accommodated through means short of finding jurisdiction unconstitutional." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). LGMF has not presented—nor can it belatedly present—any evidence of considerations that would render jurisdiction unreasonable. The "effects" test, and the constitutionality of the Court's exercise of 4(k)(2) jurisdiction over LGMF in this case, is thus established.

### 2. Worldwide-service provisions also provide for specific jurisdiction

The CEA provides for service of process "wherever the defendant may be found."[11] 7 U.S.C. § 25. LGMF concedes, as it must, that such language (and similar language in the Sherman Act) indicates extension of jurisdiction "to the limits permitted by due process." LGMF Br. at 2; *see also In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513, 526 (S.D.N.Y. 2008). As discussed throughout this brief, jurisdiction over LGMF comports with due process both because of its "alter ego" status and the direction of its activities to the U.S. gold market, and thus this provides a second statutory basis to exercise jurisdiction.[12]

---

[10] Courts consider five factors in determining whether jurisdiction is reasonable: "[1] the burden on the defendant; [2] the interests of the forum State; [3] the plaintiff's interest in obtaining relief . . .; [4] the interstate judicial system's interest in . . . efficient resolution of controversies; and [5] the shared interest of the several States in furthering fundamental substantive social policies." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 730 (2d Cir. 2012).

[11] LGMF argues that worldwide service of process does not negate the need for venue to be proper. LGMF at 3. But LGMF has not actually challenged venue—nor has any other Defendant. LGMF's assertion that the mere fact that LGMF *itself* is not *personally* "an inhabitant of New York" ends the jurisdictional inquiry is thus absurd. Indeed, to hold as LGMF suggests would completely gut many bodies of jurisdictional law. As the Court no doubt knows, in multi-party cases, venue is proper even if one defendant or another is not an "inhabitant" in the district. Venue is appropriate for all claims brought to "remedy the same wrongs" as claims where venue exists for the action generally. *See, e.g.*, *Zazzali v. Swenson*, 852 F. Supp. 2d 438, 445 (D. Del. 2012). Because venue of this case is proper, the jurisdictional analysis is in no way a prisoner to the fact that LGMF is not an "inhabitant" here.

[12] Even if the Court were to rely on the statute of one Act rather than the Rules, the Court would have jurisdiction over all claims pursuant to the doctrine of pendent jurisdiction. *See* note 7 above.

### 3. LGMF is subject to general jurisdiction under Rule 4(k)(1) because it was the dominated alter ego of Defendants properly before this Court

A third statutory basis for jurisdiction is Federal Rule of Civil Procedure Rule 4(k)(1), which provides that jurisdiction is appropriate over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." As seen in Sections I and II.B.1.a above, alter ego jurisdiction is a well-recognized doctrine. Whether courts decide to treat it as falling under the auspices of specific jurisdiction (Rule 4(k)(2)) or general jurisdiction (Rule 4(k)(1)) is of no moment on the facts here.

### C. Extending Jurisdiction Over LGMF Would Not Offend Due Process

"It is well established that the exercise of personal jurisdiction over an alter ego corporation does not offend due process." *S. New England*, 624 F.3d at 138. Whatever *Daimler AG v. Bauman*, 134 S.Ct. 746, 761 (2014) did to the law of jurisdiction generally, it did not overturn this rule. The Second Circuit recognized that *Daimler* only "expressed doubts" about a vanilla "agency analysis," as expressly contrasted with the theory, at issue here, whereby "the affiliate is so dominated by the defendant as to be its alter ego." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225-26 (2d Cir. 2014); *see also NYKCool A.B. v. Pac. Int'l Servs., Inc.*, 2014 WL 3605632, at *5 (S.D.N.Y. July 15, 2014) *adhered to on recon.*, 2015 WL 998455 (Mar. 5, 2015) ("[*Daimler*] did not express any doubt as to the soundness of an alter ego theory of jurisdiction, which is present only in the rather different circumstance in which one person or entity truly dominates another."). Thus, finding alter-ego jurisdiction under any of the statutory triggers discussed in Sections II.B.1-3 above would not offend the Constitution.

As discussed in Section II.B.1.b above, part of the Rule 4(k)(2) analysis is reasonableness, and so extending jurisdiction based on LGMF's targeting of the U.S. (either under that Rule or the worldwide-service provisions) would also comport with due process.

9

### III.   IF LGMF'S MOTION IS NOT DENIED OUTRIGHT THEN THE COURT SHOULD ALLOW JURISDICTIONAL DISCOVERY

Even if required,[13] Plaintiffs have made out more than a *prima facie* case for jurisdiction, and thus are entitled *at least* to discovery into whether there are facts sufficient to submit LGMF to the jurisdiction of this Court. *See Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004); *Marine Midland Bank*, 664 F.2d at 904; *S.C. Chimexim S.A. v. Velco Interprises, Ltd.*, 2004 WL 330233, at *3 (S.D.N.Y. Feb. 23, 2004) (party entitled to alter ego discovery where factual issues exist); *Magnetic Audiotape*, 334 F.3 at 208 (district court "improperly denied [plaintiffs] the opportunity to conduct jurisdictional discovery"); *see also APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) ("a court should take care to give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction"). Such discovery would, if necessary, allow the Court to better assess the relationship between the Fixing Bank Defendants and LGMF, and so will lead to a "more accurate judgment." *GTFM Inc. v. Int'l Basic Source, Inc.*, 2002 WL 42884, at *2 (S.D.N.Y. Jan. 11, 2002).

### CONCLUSION

For the foregoing reasons, LGMF's motion to dismiss should be denied, and if it is not denied, Plaintiffs should be granted jurisdictional discovery.[14]

DATED:  June 15, 2015

| **BERGER & MONTAGUE, P.C.** | **QUINN EMANUEL URQUHART & SULLIVAN, LLP** |
|---|---|
| By: */s/ Merrill G. Davidoff* | By: */s/ Daniel L. Brockett* |

---

[13]   The Second Circuit has held that plaintiff need not even make a *prima facie* showing of jurisdiction to obtain jurisdictional discovery.  *See Ehrenfeld v. Mahfouz*, 489 F.3d 542, 550 n.6 (2d Cir. 2007) (finding that it would be "legal error" to "forbid [ ] jurisdictional discovery any time a plaintiff does not make a *prima facie* showing of jurisdiction"); *Int'l Diamond Importers v. Oriental Gemco (N.Y.), Inc.*, 2014 WL 6682622, at *4 (S.D.N.Y. Nov. 24, 2014).

[14]   In the Court's discretion, if any other clarification is required for the Complaint, Plaintiffs request leave further to amend.

| | |
|---|---|
| Merrill G. Davidoff<br>Michael C. Dell'Angelo<br>Zachary D. Caplan<br>1622 Locust Street<br>Philadelphia, Pennsylvania 19103<br>Telephone:  (215) 875-3000<br>Fax:  (215) 875-4604<br>mdavidoff@bm.net<br>mdellangelo@bm.net<br>zcaplan@bm.net | Daniel L. Brockett<br>Daniel P. Cunningham<br>Steig D. Olson<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br>Telephone:  (212) 849-7000<br>Fax:  (212) 849-7100<br>danbrockett@quinnemanuel.com<br>danielcunningham@quinnemanuel.com<br>steigolson@quinnemanuel.com<br><br>Dale H. Oliver (*pro hac vice*)<br>Jeremy D. Andersen (*pro hac vice*)<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, California 90017<br>Telephone:  (213) 443-3000<br>Fax:  (213) 443-3100<br>daleoliver@quinnemanuel.com<br>jeremyandersen@quinnemanuel.com |

*Counsel for Plaintiffs and the Proposed Class*