## SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

July 24, 2015

Via ECF

Hon. Valerie E. Caproni,
   United States District Judge,
      Southern District of New York,
         Thurgood Marshall United States Courthouse,
           40 Foley Square, Room 240,
              New York, New York  10007.

           Re:    In re Commodity Exchange, Inc., Gold Futures and Options
                 Trading Litigation, No. 14-md-2548 (VEC); In re: London Silver
                 Fixing, Ltd., Antitrust Litig., No. 14-md-2573 (VEC)

Dear Judge Caproni:

         I write on behalf of the Bank of Nova Scotia, and in my capacity as Liaison Defense Counsel, on behalf of Barclays Bank PLC, Deutsche Bank AG, HSBC Bank PLC, Société Générale, and UBS (collectively, "defendants"), to provide defendants' position on contested topics for the tutorial that the parties are preparing for the Court.

         All of the disputed topics were proposed by defendants, and are opposed by plaintiffs.  Defendants respectfully submit that plaintiffs' objections are based on either a misunderstanding of the intended scope of each contested topic, or unwarranted suspicion that they are in fact Trojan horses designed to deliver merits argument.  In proposing each of these topics, defendants have been mindful of the Court's instruction that "the tutorial should be confined to factual background information and should not include the merits of the parties' arguments." (Joint Order No. 1 (June 10, 2015), ECF No. 81.)  Defendants anticipate that, on each topic, the parties will present basic background facts that may be helpful to the Court—without legal argument and without discussion of what inferences the Court might or should draw from those facts.  Defendants hope that most facts will be undisputed, and that this tutorial will give the Court appropriate factual context for understanding higher-order points or legal issues in these cases.

Hon. Valerie E. Caproni                                                                                                    -2-

Defendants' position on the individual disputed topics is as follows:

**Relationship Between Spot and Futures Markets.** Some futures contracts are "cash-settled," meaning that, at maturity, the value of the contract is determined on the basis of a benchmark. Gold and silver futures are not cash-settled; they are settled with delivery of physical metal on a specified date. Defendants would like to explain this dynamic. Defendants also would propose to discuss cross-market arbitrage and how the settlement mechanism for gold and silver futures tends to result in price convergence between the spot and futures market (a dynamic that the U.S. Commodity Futures Trading Commission has described in several public documents).

**Data Available to Market Participants.** There are a variety of computer-based services used by gold and silver traders, including Reuters and Bloomberg. Defendants would like to explain how these services work, what data is available to market participants, how it is derived, and how it may be used by participants. This information will assist the Court in understanding what data traders in the market consider, how the logistics of trading work, and what different kinds of price data mean.

**Volume and Nominal Value Traded on Each Venue.** Gold and silver can be traded on a variety of exchanges and over-the-counter markets all over the world. To the extent that data is available, defendants would like to provide statistics about the relative size of different trading venues to give the Court a sense of the major trading venues and how they relate to one another. Defendants would like to provide objective (and, hopefully, undisputed) statistical facts and market data about trading volumes at different times of the day, including at the time of the Fixing process. This will help the Court to get a sense of the rhythm of trading in these specialized markets and the effect of different market opening hours in different jurisdictions.

**Hedging.** Hedging makes up a significant percentage of the activity in the gold and silver futures markets. Market makers engage in hedging to reduce risk and manage their exposure to the price of gold across portfolios, and regulatory requirements or capital rules may affect hedging. Similarly, gold miners and refiners and industrial users of gold and silver may engage in hedging transactions in a variety of ways. Thus, hedging necessarily has a significant impact on the way the markets function. A basic factual explanation of how hedging works, and why and how different players may hedge would provide valuable background for the Court. This topic is intended to explain, in a purely factual manner, the different considerations that affect hedging and why it occurs.

**Information Available During the Fixing Process**. The parties have agreed that "the Fixing Call" is an appropriate topic, but plaintiffs object to any discussion of the types of information available to market participants during the call. Defendants believe that it would be misleading and incomplete to try to describe the

Hon. Valerie E. Caproni                                                                                                    -3-

Fixing Call solely in terms of trading among the Fixing members—that is, without explaining basic facts about the feedback loop between Fixing members and their clients, who may impact supply or demand levels during the Fixing. This feedback loop is an integral part of how the Fixing operates, it is not in dispute, and it is well-documented in a number of public sources, including papers and articles cited in plaintiffs' complaints. *See, e.g.*, Andrew Caminschi, *Any Silver Linings? London Silver Fixing Impact on Public Markets Before and After the Introduction of Contemporaneous Futures Trading* 7 (July 7, 2014) (cited in Silver SAC ¶ 3 n.1); Peter Fertig, *Has There Been a Decade of London PM Gold Fixing Manipulation?*, 73 Alchemist 14, 15 (Mar. 31, 2014); Gold Trust Prospectus 16 (Apr. 26, 2012) (cited in Gold SAC ¶¶ 96, 103, 310 n.97).

        For the foregoing reasons, defendants respectfully request that the Court approve a factual presentation on each of the contested topics—mindful that the parties are operating under the Court's directive to provide a non-argumentative factual presentation that will assist the Court in understanding background facts about the underlying markets before considering each party's legal arguments.

                                          Respectfully submitted,

                                          */s/ Stephen Ehrenberg*

                                          Stephen Ehrenberg

cc:     Counsel of Record
        (Via ECF)