# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>COMMODITY EXCHANGE, INC., GOLD FUTURES AND OPTIONS TRADING LITIGATION<br><br><br>*This Document Relates To All Actions* | Case No.    14-MD-2548 (VEC)<br>            14-MC-2548 (VEC)<br><br>Hon. Valerie E. Caproni |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT WITH DEUTSCHE BANK AG

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ...................................................................1

II.    REQUESTED TWO-STEP PRELIMINARY APPROVAL
PROCEDURE...........................................................................................1

III.    SUMMARY OF THE SETTLEMENT .......................................................2

    A.    Stipulation as to Certification of the Settlement Class ............................3

    B.    Monetary Component .............................................................................3

    C.    Cooperation Obligations ........................................................................4

    D.    Release of Claims .................................................................................4

    E.    Termination Provisions .........................................................................5

    F.    Attorneys' Fees, Expenses, and Service Awards .....................................6

IV.    ARGUMENT .........................................................................................6

    A.    The Settlement Meets the Standard for Preliminary Approval................6

        i.    The Settlement is Procedurally Fair.................................................7

        ii.    The Settlement is Substantively Fair ...............................................8

            1.    Complexity, Expense, and Likely Duration of the Litigation..........9

            2.    Reaction of the Class to the Settlement ........................................10

            3.    Stage of the Proceedings................................................................10

            4.    Risks of Establishing Liability and Damages ................................12

            5.    Risks of Maintaining a Class Action Through Trial.....................14

            6.    Ability of Settling Defendant to Withstand a Greater Judgment...14

            7.    Reasonableness of the Settlement in Light of the Best Possible
Recovery and Attendant Litigation Risks .......................................15

i

iii.     The Settlement Properly Includes Claims by Foreign Claimants to the Extent They Transacted in the United States .......................................17

iv.     The Settlement Properly Includes Claims Relating to Transactions Entered Before 2006 and After 2012 ...........................................................18

B.     THE SETTLEMENT CLASS SHOULD BE CERTIFIED....................................19

i.     The Requirements of Rule 23(a) are Satisfied............................................19

1.     Numerosity.......................................................................................19

2.     Common Questions of Law or Fact.................................................20

3.     Typicality.........................................................................................21

4.     Adequacy.........................................................................................21

ii.     The Requirements of Rule 23(b)(3) are Satisfied .....................................23

C.     Appointment of Claims Administrator, Escrow Agent, and Related Relief..........24

V.     CONCLUSION.........................................................................................................25

## TABLE OF AUTHORITIES

**Cases**                                                                                     **Page**

*Allen v. Dairy Farmers of Am., Inc.*,
   No. 09-cv-230, 2011 WL 1706778 (D. Vt. May 4, 2011) ........................................ 6

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................................ 23

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ............................................................................. 10

*Brown v. Pro Football, Inc.*,
   146 F.R.D. 1 (D.D.C. 1992) ..................................................................................... 23

*Campbell v. Purdue Pharma, L.P.*,
   No. 02-cv-163, 2004 WL 5840206 (E.D. Mo. June 25, 2004) ................................. 20

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ....................................................................................... 9

*Cohen v. J.P. Morgan Chase & Co.*,
   262 F.R.D. 153 (E.D.N.Y. 2009) ............................................................................. 19

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995) ....................................................................................... 19

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007) ....................................................................................... 20

*Denney v. Jenkens & Gilchrist*,
   230 F.R.D. 317 (S.D.N.Y. 2005) ............................................................................. 11

*Dial Corp. v. News Corp.*,
   No. 13 Civ. 6802, 2015 WL 4104624 (S.D.N.Y. June 18, 2015) ............................ 23

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
   104 F. Supp. 3d 290 (E.D.N.Y. 2015) ..................................................................... 12

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005) ............................................................................ 14

*Henry v. Little Mint, Inc.*,
   No. 12 Civ. 3996, 2014 WL 2199427 (S.D.N.Y. May 23, 2014) ........................ 8, 10

*In re Agent Orange Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984) ........................................................................ 15

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  No. 06-md-1175, 2009 WL 3077396, at *11 (E.D.N.Y. Sep. 25, 2009) ................................. 19

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  No. 06-md-1175, 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014) ............................................. 21

*In re AIG Sec. Litig.*,
  689 F.3d 229 (2d Cir. 2012)................................................................................... 18, 19

*In re AOL Time Warner, Inc.*,
  No. 02 Civ. 5575, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)........................................... 10, 16

*In re Austrian and German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000).......................................................................... 7

*In re Carbon Black Antitrust Litig.*,
  MDL 1543, 2005 WL 102966 (D. Mass. Jan. 18, 2005) ................................................. 20

*In re Commodity Exch., Inc. Gold Futures and Options Trading Litig.*,
  --- F. Supp. 3d ---, 2016 WL 5794776 (S.D.N.Y. Oct. 3, 2016).......................................... 1, 18

*In re Corrugated Container Antitrust Litig.*,
  643 F.2d 195 (5th Cir. 1981) ................................................................................ 11

*In re Corrugated Container Antitrust Litig.*,
  MDL 310, 1981 WL 2093 (S.D. Tex. June 4, 1981) ..................................................... 17

*In re Currency Conversion Fee Antitrust Litig.*,
  224 F.R.D. 555 (S.D.N.Y. 2004) ............................................................................ 24

*In re Currency Conversion Fee Antitrust Litig.*,
  264 F.R.D. 100 (S.D.N.Y. 2010) ............................................................................ 21

*In re Currency Conversion Fee Antitrust Litig.*,
  MDL 1409, 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) ............................................... 6

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009)................................................................................... 21

*In re High-Tech Employee Antitrust Litig.*,
  No. 11-cv-2509-LHK, 2013 WL 6328811 (N.D. Cal. Oct. 30, 2013)..................................... 11

*In re High-Tech Employee Antitrust Litig.*,
  No. 11-cv-2509-LHK, 2014 WL 10520477 (N.D. Cal. May 16, 2014) ................................. 17

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000) ........................................................................................... 11

*In re Ins. Brokerage Antitrust Litig.*,
  282 F.R.D. 92 (D.N.J. 2012) ................................................................................................. 23

*In re Linerboard Antitrust Litig.*,
  292 F. Supp. 2d 631 (E.D. Pa. 2003) ............................................................................... 8, 11

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
  No. 02 Civ. 1484, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ........................................ 18, 19

*In re Michael Milken and Assocs. Sec. Litig.*,
  150 F.R.D. 57 (S.D.N.Y. 1993) ............................................................................................... 8

*In re Nasdaq Market-Makers Antitrust Litig.*,
  169 F.R.D. 493 (S.D.N.Y. 1996) ..................................................................................... 20, 22

*In re Nasdaq Market-Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997) ............................................................................................... 7

*In re Nasdaq Market-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................................... *passim*

*In re Nat. Gas Commodities Litig.*,
  231 F.R.D. 171 (S.D.N.Y. 2005) ........................................................................................... 24

*In re Nissan Radiator/Transmission Cooler Litig.*,
  No. 10 Civ. 7493, 2013 WL 4080946 (S.D.N.Y. May 30, 2013) ........................................... 11

*In re Packaged Ice Antitrust Litig.*,
  No. 08-md-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) ........................................ 11

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y.) .................................................................................................... 16

*In re Platinum and Palladium Commodities Litig.*,
  No. 10 Civ. 3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) ....................................... 7, 18

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
  584 F. Supp. 2d 697 (M.D. Pa. 2008) ................................................................................... 14

v

*In re Processed Egg Prod. Antitrust Litig.*,
 284 F.R.D. 249 (E.D. Pa. 2012) ........................................................................ 11

*In re Sinus Buster Prods. Consumer Litig.*,
 No. 12-cv-2429, 2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014) ............................ 11

*In re Stock Exchanges Options Trading Antitrust Litig.*,
 No. 99 Civ. 962, 2005 WL 1635158 (S.D.N.Y. July 8, 2005) ............................ 6, 7

*In re Sumitomo Copper Litig.*,
 189 F.R.D. 274 (S.D.N.Y. 1999) ........................................................................ 24

*In re Vitamin C Antitrust Litig.*,
 279 F.R.D. 90 (E.D.N.Y. 2012) ................................................................... 20, 23

*In re Vitamins Antitrust Litig.*,
 MDL 1285, 2004 WL 6080000 (D.D.C. Oct. 22, 2004) ...................................... 11

*In re Warner Commc'ns Sec. Litig.*,
 618 F. Supp. 735 (S.D.N.Y. 1985) ...................................................................... 13

*Martens v. Smith Barney, Inc.*,
 181 F.R.D. 243 (S.D.N.Y. 1998) ........................................................................ 21

*McReynolds v. Richards-Cantave*,
 588 F.3d 790 (2d Cir. 2009) ................................................................................. 7

*Menkes v. Stolt-Nielsen S.A.*,
 270 F.R.D. 80 (D. Conn. 2010) ............................................................................. 7

*Meredith Corp. v. SESAC, LLC*,
 87 F. Supp. 3d 650 (S.D.N.Y. 2015) ..................................................................... 9

*Morris v. Affinity Health Plan, Inc.*,
 859 F. Supp. 2d 611 (S.D.N.Y. 2012) ................................................................... 7

*Newman v. Stein*,
 464 F.2d 689 (2d Cir. 1972) ............................................................................... 15

*Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*,
 No. 08-CV-42, 2013 WL 4525323 (E.D.N.Y. Aug. 27, 2013) ........................ 2, 17

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
 237 F.R.D. 26 (E.D.N.Y. 2006) ............................................................... 8, 9, 10

*Richardson v. L'Oreal USA, Inc.*,
  951 F. Supp. 2d 104 (D.D.C. 2013) ....................................................................... 16

*Richburg v. Palisades Collection LLC*,
  247 F.R.D. 457 (E.D. Pa. 2008) ............................................................................. 20

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015) ................................................................................... 23

*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011) ..................................................................... 16

*Shapiro v. JPMorgan Chase & Co.*,
  No. 11 Civ. 7961 CM, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ..................... 15

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011) ................................................................................... 23

*Texas Indus., Inc. v. Radcliff Materials, Inc.*,
  451 U.S. 630 (1981) ................................................................................................. 17

*Trombley v. Nat'l City Bank*,
  759 F. Supp. 2d 20 (D.D.C. 2011) .......................................................................... 16

*Tsereteli v. Residential Asset Securitization Trust 2006-A8*,
  283 F.R.D. 199 (S.D.N.Y. 2012) ............................................................................. 21

*Viafara v. MCIZ Corp.*,
  No. 12 Civ. 7452, 2014 WL 1777438 (S.D.N.Y. May 1, 2014) ............................... 12

*Virgin Atl. Airways Ltd. v. British Airways PLC*,
  257 F.3d 256 (2d Cir. 2001) ..................................................................................... 9

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ................................................................................................. 20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ................................................................................. 6, 18

*Wallace v. IntraLinks*,
  302 F.R.D. 310 (S.D.N.Y. 2014) ............................................................................. 19

*Weber v. Gov't Emps. Ins. Co.*,
  262 F.R.D. 431 (D.N.J. 2009) ................................................................................. 14

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) ................................................................................... 16

*Yim v. Carey Limousine NY*,
    No. 14-cv-5883, 2016 WL 1389598 (E.D.N.Y. Apr. 7, 2016) ............................................ 9, 15

## I.      PRELIMINARY STATEMENT

Plaintiffs[1] respectfully submit this memorandum in support of their motion for preliminary approval of the settlement ("Settlement") reached between Plaintiffs, on behalf of themselves and the settlement class, and defendant Deutsche Bank AG ("Settling Defendant"). The proposed Settlement consists of a $60,000,000 cash payment and an agreement to provide significant cooperation to Plaintiffs in pursuing their case against the Non-Settling Defendants.[2] *See* Stipulation and Agreement of Settlement with Deutsche Bank AG ("Settlement Agreement" or "SA") attached as Exhibit A to the Declaration of Merrill G. Davidoff.  The Settlement Agreement was reached after extended arm's-length negotiations between experienced counsel for Plaintiffs and for Settling Defendant.  As demonstrated below, the Settlement is an excellent result at an early stage of the litigation and is fair, reasonable, and adequate under the governing standards in this Circuit.  Accordingly, pursuant to Federal Rule of Civil Procedure 23(e), Plaintiffs seek entry of the accompanying Preliminary Approval Order submitted herewith.

## II.     REQUESTED TWO-STEP PRELIMINARY APPROVAL PROCEDURE

Plaintiffs propose to file a separate Motion for Approval of the Form and Manner of Notice to the Settlement Class and the Plan of Distribution ("Notice Motion").  The Notice

---

[1] "Plaintiffs" are American Precious Metals, Ltd.; Norman Bailey; Patricia Benvenuto; Michel de Chabert-Ostland; Edward R. Derksen; Frank Flanagan; Quitman D. Fulmer; Thomas Galligher; KPFF Investment, Inc.; Duane Lewis; Larry Dean Lewis; Kevin Maher; Robert Marechal; David Markun; Trieste Matte; Blanche McKennon; Kelly McKennon; Thomas Moran; Eric Nalven; Nando, Inc.; J. Scott Nicholson; Ken Peters; Santiago Gold Fund LP; Albert Semrau; Steven E. Summer; Richard White; White Oak Fund LP; and David Windmiller.

[2] "Non-Settling Defendants" are The Bank of Nova Scotia, Barclays Bank plc, HSBC Bank plc, Société Générale SA, and The London Gold Market Fixing Limited ("LGMF").  The Non-Settling Defendants and the Settling Defendant are referred to collectively as the "Defendants," and, without defendant LGMF, the "Fixing Bank Defendants."  The Second Amended Complaint ("SAC"), ECF 44, also named UBS AG and UBS Securities LLC ("UBS") as defendants, but the Court granted UBS's motion to dismiss.  *See* MTD Op., ECF 158, 2016 WL 5794776, at *34 (S.D.N.Y. Oct. 3, 2016).  Plaintiffs have since sought leave to amend.

Motion would not be filed until, at the earliest, after Settling Defendant produces transaction data and Plaintiffs develop a proposed Plan of Distribution based on transaction data analysis. Court approval of the relief set out in the Notice Motion would trigger notice to the Settlement Class.[3]

Interim Co-Lead Counsel recommend this two-step preliminary approval process for several reasons. First, Settling Defendant's data is necessary for Plaintiffs to begin developing a plan of distribution. Second, deferring notice will result in a more efficient notice process. Deferring notice until a plan of distribution is developed will allow the notice to describe how claims will be treated in the distribution, giving members of the Settlement Class the information necessary to evaluate their options with respect to the Settlement in a single communication. Time is also needed to select a settlement administrator. And finally, deferring notice also has the advantage of potentially reducing the number of notices sent to the Settlement Class should Plaintiffs enter into additional settlements or the Action reach a merits conclusion.

For the foregoing reasons, Plaintiffs request that the Court approve this two-step preliminary approval process. Plaintiffs' motion for final approval would follow in due course.

## III.   SUMMARY OF THE SETTLEMENT

The Settlement provides for $60,000,000 in monetary relief as well as obliges the Settling Defendant to provide transaction data and discovery, which will assist Plaintiffs both in

---

[3] Similar two-step preliminary approval processes have been adopted in several recent class action settlements. *See*, *e.g.*, *In re London Silver Fixing, Ltd. Antitrust Litig.*, No. 14-md-2573, ECF 166, ¶¶ 2, 10 (S.D.N.Y. Oct. 23, 2016); *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14 Civ. 7126, ECF 228, ¶¶ 8, 9 (S.D.N.Y. May 11, 2016) (preliminary approval of $324 million settlements and ordering notice plan and plan of distribution to be submitted later); *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13 Civ. 7789, ECF 536, ¶¶ 8, 9 (S.D.N.Y. Dec. 15, 2015) (preliminary approval of $2 billion settlements and ordering notice plan and plan of distribution to be submitted later); *Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-cv-42, 2013 WL 4525323, at *6 (E.D.N.Y. Aug. 27, 2013); *see also In re Nasdaq Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 480 (S.D.N.Y. 1998) ("*Nasdaq III*") (noting "it is appropriate, and often prudent" to defer plan of distribution).

developing an efficient plan of distribution and in the prosecution of the Action against the Non-

Settling Defendants.  *See* SA §§ 5, 13.  In exchange for this monetary relief and cooperation,

Plaintiffs and members of the proposed Settlement Class that do not exclude themselves will

give up their rights to sue the Settling Defendant and Released Parties for Released Claims.  *See*

*infra* Section III.D; *see also* SA §§ 2(x) (defining Released Claims); 2(y) (defining Released

Parties); 4 (describing releases).[4]

### A.      Stipulation as to Certification of the Settlement Class

The Settlement is made on behalf of a proposed Settlement Class defined as:

> All persons or entities who during the period from January 1, 2004 through June
> 30, 2013, either (A) sold any physical gold or financial or derivative instrument in
> which gold is the underlying reference asset, including, but not limited to, those
> who sold (i) gold bullion, gold bullion coins, gold bars, gold ingots or any form of
> physical gold, (ii) gold futures contracts in transactions conducted in whole or in
> part on COMEX or any other exchange operated in the United States, (iii) shares in
> gold exchange-traded funds ("ETFs"), (iv) gold call options in transactions
> conducted over-the-counter or in whole or in part on COMEX or any other
> exchange operated in the United States; (v) gold spot, gold forwards or gold swaps
> over-the-counter; or (B) bought gold put options in transactions conducted over-
> the-counter or in whole or in part on COMEX or on any other exchange operated
> in the United States.[5]

### B.      Monetary Component

The monetary component of the Settlement is $60,000,000 (the "Settlement Fund").  *See*

SA § 2(cc).  In accordance with the Settlement Agreement, the Settlement Fund was wired into

---

[4] The Settling Defendant has denied and continues to deny each and all of the claims and
allegations of wrongdoing made by Class Plaintiffs in the Action and all charges of wrongdoing
or liability against it arising out of any of the conduct, statements, acts, or omissions alleged, or
that could have been alleged, in the Action.

[5] Excluded from the Settlement Class are Defendants, their officers, directors,
management, employees, affiliates, parents, subsidiaries, and co-conspirators, whether or not
named in the Action (as defined in the Settlement Agreement), and the United States
Government, and other governments.  Also excluded is the Judge presiding over this action, her
law clerks, spouse, and any person within the third degree of relationship living in the Judge's
household and the spouse of such a person.

an Escrow Account on September 2, 2016 and has been invested in interest-bearing United States Treasuries.  *See* SA § 5(a).  As provided in the Settlement Agreement, the Settlement Fund (less any taxes due and administrative costs paid) will only be returned to the Settling Defendant in the unlikely event that the Settlement Agreement is terminated due to certain circumstances.  *See infra* Section III.E and SA § 10.

### C.  Cooperation Obligations

The Settlement Agreement obligates the Settling Defendant to cooperate with Plaintiffs and to provide certain discovery, including, subject to Court orders and any applicable laws, privileges, and other protections:  (a) an attorney proffer; (b) interviews with knowledgeable current and, to the extent practicable, former employees of the Settling Defendant; (c) document production consisting of materials that the Settling Defendant has produced to government regulators (including any future government productions); (d) declarations and certifications to establish that these materials are authentic; and (e) transactional and other data to assist in the administration of the notice and claims process.  *See* SA § 13.  The Settling Defendant has made productions and is in the process of producing additional documents and transactional data.

### D.  Release of Claims

In consideration for the benefits of the Settlement described above, and upon the Court's approval, the Action, all claims asserted in the Action, and all Released Claims belonging to Plaintiffs will be dismissed with prejudice as against the Settling Defendant, and Plaintiffs and each of the Settlement Class members (and anyone claiming through or on behalf of them) will be permanently barred and enjoined from asserting any of the Released Claims against the Settling Defendant and Released Parties in any action or proceeding.  *See* SA § 4.  The release covers those claims "arising from or relating in any way to conduct alleged in the Action or that could have

4

been alleged in the Action, in any event arising from the same factual predicate of the Action, and concerning, relating to or arising out of any Gold Investment Transaction from January 1, 2004 through March 20, 2015." SA § 4(d).  The release date extends to March 20, 2015, which is the date that a new gold price setting mechanism was launched to replace the Gold Fix.

A Gold Investment Transaction is defined as:

(A) the sale of any physical gold or financial or derivative instrument in which gold is the underlying reference asset including, but not limited to, sales of (i) gold bullion, gold bullion coins, gold ingots, gold bars, or any form of physical gold, (ii) gold futures contracts in transactions conducted in whole or in part on COMEX or any other exchange operated in the United States, (iii) shares in gold ETFs, (iv) gold call options in transactions conducted over-the-counter or in whole or in part on COMEX or any other exchange operated in the United States, (v) gold put options, which were later exercised, in transactions conducted over-the-counter or in whole or in part on COMEX or any other exchange operated in the United States, or (vi) gold spot, gold forwards or gold swaps traded over-the-counter; or (B) the purchase of (i) gold call options, which were later exercised, sold, or held to expiration, in transactions conducted over-the-counter or in whole or in part on COMEX or on any other exchange operated in the United States, or (ii) gold put options in transactions conducted over-the-counter or in whole or in part on COMEX or on any other exchange operated in the United States.

*See* SA § 2(q).

**E.   Termination Provisions**

Termination is only permitted within thirty days of any of the following events:  (i) the Court denies, in whole or in part, the motion to certify the Settlement Class; (ii) the Court enters an order declining to enter the Preliminary Approval Order in any material respect; (iii) the Court enters an order refusing to approve the Settlement Agreement or any material part of it; or (iv) the Court, a court of appeal or any higher court enters an order declining to enter, reversing, vacating, materially modifying or dismissing, in whole or in part and in any material respect, the Final Judgment and Order of Dismissal.  *See* SA § 10(a).

Plaintiffs and Settling Defendant have also agreed to a provision that is activated if opt-outs to the Settlement reach an amount that represents a "material portion" of the transactions that would be eligible for compensation under the Settlement Agreement.  *See* SA § 10(b).  If the provision is activated then the Settling Defendant, in its discretion, shall have the right to seek relief as set forth in Exhibit C to the Settlement Agreement.  *Id.*

F.     **Attorneys' Fees, Expenses, and Service Awards**

The Settlement Agreement reserves Plaintiffs' right to request interim attorneys' fees, reimbursement of expenses or charges in connection with prosecuting the Action, and/or class representative service awards.  *See* SA § 7.  The Settlement Class would be given notice of any such application or applications, which, of course, also would be subject to Court approval.

IV.    **ARGUMENT**

A.     **The Settlement Meets the Standard for Preliminary Approval**

"Rule 23(e) requires court approval of a class action settlement."  *In re Currency Conversion Fee Antitrust Litig.*, MDL 1409, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006).  "In determining whether to grant preliminary approval, the court starts with the proposition that 'there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.'"  *Allen v. Dairy Farmers of Am., Inc.*, 2011 WL 1706778, at *2 (D. Vt. May 4, 2011); *see also Wal-Mart Stores v. Visa*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("'The compromise of complex litigation is encouraged by the courts and favored by public policy.'").[6]

"Preliminary approval is generally the first step in a two-step process before a class-action settlement is approved."  *In re Stock Exchanges Options Trading Antitrust Litig.*, No. 99-Civ. 962, 2005 WL 1635158, at *4 (S.D.N.Y. July 8, 2005).  "In considering preliminary

_____

[6] Unless otherwise noted, citations are omitted and emphasis is added.

approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice."
*In re Nasdaq Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*Nasdaq II*").
"The second step is to give notice to class members and to hold a hearing to determine whether
final approval of the settlement should be given." *Stock Exchanges*, 2005 WL 1635158, at *5.
In conducting a preliminary approval inquiry, a court considers both the "'negotiating process
leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive
terms, *i.e.*, substantive fairness.'" *In re Platinum and Palladium Commodities Litig.*, No. 10 Civ.
3617, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014) (quoting *McReynolds v. Richards-
Cantave*, 588 F.3d 790, 803-04 (2d Cir. 2009)). Preliminary approval is appropriate where the
settlement 'is the result of serious, informed, and non-collusive negotiations, where there are no
grounds to doubt its fairness and no other obvious deficiencies . . . and where the settlement
appears to fall within the range of possible approval." *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D.
80, 101 (D. Conn. 2010). As demonstrated below, the Settlement Agreement warrants
preliminary approval because it is procedurally and substantively fair.

### i.     The Settlement is Procedurally Fair

"To determine procedural fairness, courts examine the negotiating process leading to the
settlement." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012).
Where a settlement is the "product of arm's length negotiations conducted by experienced
counsel knowledgeable in complex class litigation," the settlement enjoys a "presumption of
fairness." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74
(S.D.N.Y. 2000), *aff'd sub nom.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).

The Settlement Agreement is the product of intensive settlement negotiations. In
December 2015, counsel for Settling Defendant approached interim Co-Lead Counsel

concerning the prospect of settlement.  Following a series of telephone meetings among

experienced counsel extending over many months and after extensive discussions concerning the

language contained in the Settlement Agreement, Plaintiffs and Settling Defendant entered into

the Settlement Agreement on August 24, 2016.  The negotiations with the Settling Defendant

were hard-fought, at times contentious, and always at arm's-length.

  Interim Co-Lead Counsel believe Plaintiffs' claims have substantial merit but

acknowledge the expense and uncertainty of continued litigation against the Settling Defendant.

In recommending that the Court approve the Settlement, interim Co-Lead Counsel have taken

into account the uncertain outcome and risks of further litigation and believe the Settlement

confers significant benefits on the Settlement Class in light of the circumstances here.  This first

"ice-breaker" Settlement provides Plaintiffs and the Settlement Class both significant cash

compensation and immediate and substantial cooperation.  *See In re Linerboard Antitrust Litig.*,

292 F. Supp. 2d 631, 643 (E.D. Pa. 2003) (noting that an early first settlement in a litigation (*i.e.*,

an ice-breaker settlement) has "significant value").  Based on these considerations, there is "a

strong initial presumption that the compromise is fair and reasonable."  *In re Michael Milken and

Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993); *Henry v. Little Mint, Inc.*, No. 12 Civ.

3996, 2014 WL 2199427, at *6 (S.D.N.Y. May 23, 2014) ("If the settlement was achieved

through experienced counsel's arm's-length negotiations, absent fraud or collusion, courts should

be hesitant to substitute their judgment for that of the parties who negotiated the settlement.").

  **ii.**  **The Settlement is Substantively Fair**

  "In terms of the overall fairness, adequacy, and reasonableness of the settlement, a full

fairness analysis is unnecessary at this stage; preliminary approval is appropriate where a

proposed settlement is merely within the range of possible approval."  *Reade-Alvarez*, 237

F.R.D. 26, 34 (E.D.N.Y. 2006); *see also Yim v. Carey Limousine NY*, No. 14-cv-5883, 2016 WL 1389598, at *3 (E.D.N.Y. Apr. 7, 2016) ("In the context of a motion for preliminary approval of a class action settlement, the standards are not so stringent as those applied when the parties seek final approval.").  Nevertheless, some courts have analyzed the "*Grinnell* factors" in assessing whether a proposed settlement falls within the range of possible approval.  *See*, *e.g.*, *Reade-Alvarez*, 237 F.R.D. at 34; *see also City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (listing factors).  Each of the *Grinnell* factors supports preliminary approval.

### 1.        Complexity, Expense, and Likely Duration of the Litigation

"Antitrust class actions 'are notoriously complex, protracted, and bitterly fought.'" *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 661 (S.D.N.Y. 2015); *see also Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2001) (noting the "factual complexities of antitrust cases").  This case is no different.

The initial complaints in this litigation were filed over two and a half years ago and Defendants' motions to dismiss were extensively briefed and argued.  On October 6, 2016, the Court granted in part and denied in part the remaining Fixing Bank Defendants' and LGMF's motions to dismiss.  As the Court noted in its Order appointing interim Co-Lead Counsel, "given that the putative class is challenging the conduct of five major banking institutions over a period of at least ten years, successful prosecution of this litigation will require a massive commitment of resources[.]"  *Moran v. The Bank of Nova Scotia*, 14 Civ. 2213, ECF 23, at 3 (S.D.N.Y. July 22, 2014).  Each stage of this litigation is likely to be just as bitterly fought as the motions to dismiss, including discovery, class certification, summary judgment, and trial.  In sum, "[t]here can be no doubt that this class action would be enormously expensive to continue,

extraordinarily complex to try, and ultimately uncertain of result." *Nasdaq III*, 187 F.R.D. at

477.  This factor weighs in favor of preliminary approval.

### 2.        Reaction of the Class to the Settlement

Because notice has yet to be provided to potential members of the Settlement Class,

courts generally do not consider this *Grinnell* factor at the preliminary approval stage.  *See*

*Reade-Alvarez*, 237 F.R.D. at 34 ("Clearly, some of these [*Grinnell*] factors, particularly the

reaction of the class to the settlement, are impossible to weigh prior to notice and a hearing.").

In any event, all of the Plaintiffs approve of this Settlement, and should any objections from class

members be received prior to the Fairness Hearing, interim Co-Lead Counsel will address those

concerns in the final approval papers.

### 3.        Stage of the Proceedings

"[C]ourts encourage early settlement of class actions, when warranted, because early

settlement allows class members to recover without unnecessary delay and allows the judicial

system to focus resources elsewhere."  *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474-75

(S.D.N.Y. 2013).  The relevant inquiry for this factor, therefore, is "whether the plaintiffs have

obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their

claims and the adequacy of the settlement."  *In re AOL Time Warner, Inc.*, No. 02 Civ. 5575,

2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006); *Little Mint*, 2014 WL 2199427, at *8 ("The

proper question is whether counsel had an adequate appreciation of the merits of the case before

negotiating.").  This factor does not require extensive discovery, or indeed any discovery at all,

"as long as '[class counsel] have engaged in sufficient investigation of the facts to enable the

Court to 'intelligently make . . . an appraisal' of the settlement.'"  *AOL Time Warner*, 2006 WL

903236, at *10.[7]  If extensive discovery was required for settlement approval, class action plaintiffs would be deprived of the "ice breaker" settlement strategy, which is often used in multi-party cases, as it was here, to "'break the ice' and bring other defendants to the point of serious negotiations." *Linerboard Antitrust Litig.*, 292 F. Supp. 2d at 643; *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 324, 339 (S.D.N.Y. 2005) (noting that value of cooperation as part of settlement "is hard to determine, but is not negligible").[8]

Interim Co-Lead Counsel conducted an extensive pre-suit investigation and have engaged in sufficient preparation for settlement negotiations, briefing, and trial preparation to inform their views on the strength of Plaintiffs' claims and the defenses to liability.  Prior to filing the original complaint, in addition to reviewing the relevant publicly available facts, interim Co-Lead

---

[7] *See also In re Nissan Radiator/Transmission Cooler Litig.*, No. 10 Civ. 7493, 2013 WL 4080946, at *7 (S.D.N.Y. May 30, 2013) (stating that "[a]lthough the parties have not engaged in extensive discovery, . . . the plaintiffs conducted an investigation prior to commencing the action, retained experts, and engaged in confirmatory discovery in support of the proposed settlement"); *In re Sinus Buster Prods. Consumer Litig.*, No. 12-cv-2429, 2014 WL 5819921, at *9 (E.D.N.Y. Nov. 10, 2014) (finding that the litigants had "conducted meaningful pre-trial discovery," which included "an 'extensive' investigation" prior to filing the consolidated class complaint); *In re Packaged Ice Antitrust Litig.*, No. 08-md-01952, 2010 WL 3070161, at *6 (E.D. Mich. Aug. 2, 2010) (stating that "'[t]he overriding theme of our case law is that formal discovery is not necessary'" so long as the class is not prejudiced and there is a factual basis for the settlement); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981) (stating that "formal discovery was [not] a necessary ticket to the bargaining table").

[8] *See also In re High-Tech Employee Antitrust Litig.*, No. 11-cv-2509-LHK, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013) (stating that ice breaker settlements apply pressure on the non-settling defendants because they "remain jointly and severally liable for all damages caused by the conspiracy, including damages from [settling defendant's] conduct"); *In re Processed Egg Prod. Antitrust Litig.*, 284 F.R.D. 249, 275 (E.D. Pa. 2012) (noting that cooperation is "valuable consideration in light of the risks in proceeding with this suit against the remaining Defendants"); *In re Vitamins Antitrust Litig.*, MDL 1285, 2004 WL 6080000, at *4 (D.D.C. Oct. 22, 2004) (noting that component of settlement requiring defendant to provide interviews with knowledgeable witnesses was a "valuable result for Class Plaintiffs"); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 177 (E.D. Pa. 2000) (noting that "cooperation agreement with settling defendants . . . provides obvious, if non-quantifiable, benefits to the plaintiff class in the continuing litigation").

Counsel retained economists and industry experts who performed analyses of trading patterns, as well as obtained other evidence that could be used to advance Plaintiffs' claims.  The expert analysis has also informed interim Co-Lead Counsel's views on how often the PM Fixing was manipulated and what gold derivatives were affected.

As to defenses, interim Co-Lead Counsel opposed the remaining Fixing Bank Defendants' motion to dismiss, in which Defendants raised multiple defenses to liability.  Had the Settling Defendant not settled and the litigation proceeded against it, Plaintiffs would be likely to face these arguments again after development of the factual record.  The motion to dismiss briefing therefore supplemented interim Co-Lead Counsel's already considerable knowledge of the strengths of Plaintiffs' claims and the defenses they are likely to face at trial. Further, the fact that this settlement occurred early in the litigation, even before adjudication of motions to dismiss, adds value to the Settlement Agreement because it provides discovery and cooperation that could not have been obtained by any other means.

Accordingly, interim Co-Lead Counsel's reasonably-informed views of the strength of claims and likely defenses weigh in favor of preliminary approval.

### 4.    Risks of Establishing Liability and Damages

In assessing this factor, "'the Court should balance the benefits afforded the Class, including the *immediacy* and *certainty* of a recovery, against the continuing risks of litigation.'" *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 303 (E.D.N.Y. 2015) (emphasis in original) (quoting *Viafara v. MCIZ Corp.*, No. 12 Civ. 7452, 2014 WL 1777438, at *7 (S.D.N.Y. May 1, 2014)).  Because Plaintiffs continue to litigate against the Non-Settling Defendants, interim Co-Lead Counsel must be circumspect in discussing potential risks in

establishing liability, damages, and maintaining a class action through trial, but provide the following analysis for settlement purposes only.

As noted above, Defendants filed motions to dismiss, arguing, among other things, that the SAC: (i) failed to plausibly allege a violation of Section 1 of the Sherman Act; (ii) failed to adequately allege antitrust standing; and (iii) failed to adequately plead claims for violation of the Commodity Exchange Act. *See* ECF 71-77. Although, in interim Co-Lead Counsel's view, these arguments were (rightly) largely rejected, had Settling Defendant not agreed to settle, it was prepared to vigorously contest liability and damages on these and other grounds at class certification, summary judgment, and trial. There is no doubt that the Settling Defendant, represented by experienced counsel, would present sophisticated arguments to the Court at each step of the litigation and argue that it was not liable for *any* damages.

Even if liability was established at trial, Plaintiffs would face the complexities inherent in proving damages to the jury. There is no doubt that at trial the issue inevitably would involve a "battle of the experts." *Nasdaq III*, 187 F.R.D. at 476. "In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors[.]" *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985). Thus, there is a risk that a jury might accept one or more of Settling Defendant's damages arguments and award nothing at all or award less than the $60,000,000 that, if approved, would be available to the Settlement Class under this Settlement. "Indeed, the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal." *Nasdaq III*, 187 F.R.D. at 476.

The proposed settlement confers a significant, immediate, and certain benefit to the Settlement Class.  When weighed against the risks of continued litigation against the Settling Defendant, this factor weighs in favor of preliminary approval.

### 5.      Risks of Maintaining a Class Action Through Trial

While Plaintiffs believe that the Court will certify a litigation class, Settling Defendant would zealously oppose the motion.  Even if the Court were to certify a litigation class, certification can be reviewed and modified at any time.  And it can reasonably be expected that the losing party on class certification would appeal.  Thus, there is a risk that the Action, or particular claims, might not be maintained as a class action through trial.  *See Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (noting that "[w]hile plaintiffs might indeed prevail [on a motion for class certification], the risk that the case might be not certified is not illusory").  The risks associated with class certification weigh in favor of preliminary approval.

### 6.      Ability of Settling Defendant to Withstand a Greater Judgment

"[I]n any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement."  *Weber v. Gov't Emps. Ins. Co.*, 262 F.R.D. 431, 447 (D.N.J. 2009).  Moreover, "the benefit of obtaining the cooperation of the Settling Defendants tends to offset the fact that they would be able to withstand a larger judgment."  *In re Pressure Sensitive Labelstock Antitrust Litig*., 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008).  Here, both the financial and cooperation obligations the Settlement imposes on the Settling Defendant are substantial and, notably, recent news articles indicate that the Settling Defendant's financial condition is troubled.  At the time a settlement in

14

principle was reached in April 2016, Deutsche Bank stock was trading at 30 year lows.[9]

Immediate payment of the $60,000,000 settlement consideration moots any risk associated with

Deutsche Bank's financial condition.  This factor weighs in favor of preliminary approval.

> **7.    Reasonableness of the Settlement in Light of the Best Possible Recovery and Attendant Litigation Risks**

The range of reasonableness factor weighs the relief provided in the settlement against

the strength of the plaintiff's case, including the likelihood of obtaining a recovery at trial.  This

factor "recognizes the uncertainties of law and fact in any particular case and the concomitant

risks and costs necessarily inherent in taking any litigation to completion[.]"  *Newman v. Stein*,

464 F.2d 689, 693 (2d Cir. 1972).  In applying this factor "the Settlement must be judged 'not in

comparison with the possible recovery in the best of all possible worlds, but rather in light of the

strengths and weaknesses of plaintiffs' case.'"  *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ.

7961 CM, 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014) (quoting *In re Agent Orange*

*Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd* 818 F.2d 145 (2d Cir. 1987)).

At preliminary approval, the range of reasonableness factor is satisfied when, as here, there are

no obvious doubts as to the adequacy of the settlement amount.  *See, e.g.*, *Yim v. Carey*

*Limousine NY*, 2016 WL 1389598, at *4 (granting preliminary approval of settlement without

---

[9] *See, e.g.*, James B. Stewart, *Deutsche Bank as Next Lehman Brothers: Far-Fetched but Not Unthinkable*, THE NEW YORK TIMES (Oct. 6, 2016), *available at* http://www.nytimes.com/2016/10/07/business/deutsche-bank-as-next-lehman-brothers-far-fetched-but-not-unthinkable.html?_r=0; Friedrich Geiger and Ryan Tracy, *Deutsche Bank Shares Hit Over 30-Year Low After Fed, IMF Rebuke*, THE WALL STREET JOURNAL (June 30, 2016), *available at* http://www.wsj.com/articles/deutsche-bank-shares-tumbled-to-a-30-year-low-after-fed-imf-rebuke-1467278856.

submission of "a specific number as [plaintiffs'] best possible recovery, particularly at this stage of preliminary approval, where the level of inquiry is more lenient than at final approval").[10]

Although Plaintiffs have not yet completed a damages analysis, preliminary consultation with experts familiar with the gold market indicates that the potential damages could be in the hundreds of millions or billions of dollars.  However, considering the risks and costs of continued litigation and the substantial benefit of the Settling Defendant's cooperation, in interim Co-Lead Counsel's view, the $60,000,000 monetary component of the proposed Settlement is an excellent "ice breaker" result for the Settlement Class.  *See supra* n.9; *see also In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.) (stating "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation"), *aff'd*, 117 F.3d 721 (2d Cir. 1997).  Additionally, the Settlement Fund has already been paid into the Escrow Account and is already earning interest on behalf of the proposed Settlement Class.  *See AOL Time Warner*, 2006 WL 903236, at *13 (where settlement fund is in escrow earning interest, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").  As to the antitrust claims, Plaintiffs may recover the entire amount of damages against the Non-Settling Defendants (after an offset post-trebling for

---

[10] *See also Trombley v. Nat'l City Bank*, 759 F. Supp. 2d 20, 24-26 (D.D.C. 2011) (granting preliminary approval based on no obvious deficiency on adequacy of settlement amount but indicating additional information required for final approval); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 569 (N.D. Ill. 2011) (same); *Richardson v. L'Oreal USA, Inc.*, 951 F. Supp. 2d 104, 107-08 (D.D.C. 2013) (preliminarily approving settlement where valuing monetary damages would be challenging).  Even at final approval, in some cases, "the exact amount of damages need not be adjudicated[.]"  *Nasdaq III*, 187 F.R.D. at 478; *see also Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (affirming district court approval of a settlement without quantifying the expected value of continued litigation where quantifying damages "would have required testimony by a damages expert," and that testimony would have "resulted in a lengthy and expensive battle of the experts, with the costs of such a battle borne by the class − exactly the type of litigation the parties were hoping to avoid by settling").

16

the settlement amounts) under joint and several liability.  *See In re High-Tech Employee*
*Antitrust Litig.*, No. 11-cv-2509-LHK, 2014 WL 10520477, at *2 (N.D. Cal. May 16, 2014)
(noting that settlements with some defendants preserved plaintiffs' ability to seek the entire
amount of damages from non-settling defendants and weighed in favor of approval).[11]

As discussed above, when evaluating the Settlement, the Court should consider the value
of the Settling Defendant's cooperation obligations.  As Plaintiffs continue to litigate their claims
against the Non-Settling Defendants, access to Settling Defendant's discovery will inform
Plaintiffs' discovery efforts with respect to Non-Settling Defendants.  The provision of such
assistance is a substantial benefit to the Settlement Class and weighs in favor of approval of the
Settlement Agreement.  *See Precision Assocs.*, 2013 WL 4525323, at *9 (defendant's
"cooperation adds considerable value to the Settlement and must be factored into an analysis of
the overall reasonableness of the agreement").

### iii.     The Settlement Properly Includes Claims By Foreign Claimants, to the Extent They Transacted in the United States

To be clear, Plaintiffs do not assert, and do not seek to settle, claims for foreign claimants
that arise exclusively under foreign laws, or are based on wholly foreign transactions in physical
gold or gold derivatives.  Rather, the Settlement Class includes claims by foreign claimants only
to the extent that they transacted in physical gold or gold derivatives in whole or in part in the
United States or its territories.  To the extent a foreign claimant transacted in physical gold or
gold derivatives exclusively outside the United States, or the extent a foreign claimant's claims
arise exclusively under foreign law, such foreign-based transactions or claims are excluded from

---

[11] *See also In re Corrugated Container Antitrust Litig.*, MDL 310, 1981 WL 2093, at *17
(S.D. Tex. June 4, 1981), *aff'd*, 659 F.2d 1322 (5th Cir. 1981) (same); *Texas Indus., Inc. v.
Radcliff Materials, Inc.*, 451 U.S. 630, 646 (1981) ("joint and several liability [] ensures that the
plaintiffs will be able to recover the full amount of damages from some, if not all, participants").

the Settlement Class.  Furthermore, any Notice approved by the Court will make clear that the

Settlement includes only "U.S.-Related Transactions."

  iv.  **The Settlement Properly Includes Claims Relating to Transactions Entered Before 2006 and After 2012**

  Despite the Court's Order finding that Plaintiffs did not plausibly plead an antitrust

conspiracy prior to 2006 or after 2012, MTD Op., 2016 WL 5794776, at *34, the Settlement Class

Period properly releases claims relating to gold transactions entered before 2006 and after 2012.

  First, Plaintiffs and Settling Defendant negotiated the Settlement and entered into a binding

term sheet, which includes pre-2006 and post-2012 transactions, months prior to the Court's Order.

Second, courts in the Second Circuit routinely approve class action settlements that include claims

that have been dismissed, or that the court believes are lacking on the merits.  *See, e.g.*, *In re AIG

Sec. Litig.*, 689 F.3d 299, 243 (2d Cir. 2012) (holding that "Defendants in class action suits are

entitled to settle claims pending against them on a class-wide basis even if a court believe that

those claims may be meritless").[12]  Similarly, courts regularly allow settlements that are braoder

in scope than the claims that have been alleged.  *See, e.g., Wal-Mart Stores v. Visa*, 396 F.3d at

107 ("The law is well established in this Circuit and others that class action releases may include

claims not presented and even those which could not have been presented as long as the released

conduct arises out of the 'identical factual predicate' as the settled conduct."); *In re Lehman Bros.

Sec. Litig.,* 2012 WL 2478483, at *6 (S.D.N.Y. June 29, 2012) (same).  This common practice

allows the parties to achieve complete peace, by settling all claims that were or could have been

---

[12] *See also, e.g.*, *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 2007 WL 313474, at *2-3, 25 (S.D.N.Y. Feb. 1, 2007) (granting approval to class action settlement that included dismissed claims); *In re Platinum and Palladium Commodities Litig.*, 2014 WL 3500655, at *2 (S.D.N.Y. July 15, 2014) (approving settlement classes that included claims that the court viewed as potentially meritless).

asserted, including dismissed claims that could be appealed.  *See, e.g.*, *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2009 WL 3077396, at *11 (E.D.N.Y. Sep. 25, 2009); *In re Merrill Lynch & Co., Inc.*, 2007 WL 313474, at *2-3, 25.  In fact, this Court recently granted preliminary approval to a similar settlement in the *Silver* antitrust class action, which also included years that were dismissed by the Court.  *See Silver*, No. 14-md-2573, ECF 166 (S.D.N.Y. Oct. 23, 2016).

### B.     THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Certification of a settlement class must satisfy the requirements of Rule 23(a), as well as at least one of the provisions of 23(b).  *See In re AIG Sec. Litig.*, 689 F.3d at 242.  When certification of a settlement class is sought, "courts must take a liberal rather than a restrictive approach."  *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157-58 (E.D.N.Y. 2009).  As demonstrated below, the proposed Settlement Class meets these requirements.

### i.     The Requirements of Rule 23(a) are Satisfied

Rule 23(a) permits an action to be maintained as a class action if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

### 1.     Numerosity

In cases like this one involving widely traded financial instruments, numerosity is readily satisfied.  *See Wallace v. IntraLinks*, 302 F.R.D. 310, 315 (S.D.N.Y. 2014) ("common sense assumptions . . . suffice to demonstrate numerosity"); *see also Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (numerosity presumed if a class has over 40 members).  The size of the precious metals markets alone is sufficient to satisfy the numerosity

requirement.  *See Campbell v. Purdue Pharma, L.P.*, No. 02-cv-163, 2004 WL 5840206, at *4 (E.D. Mo. June 25, 2004) (noting that the volume of commerce made it "reasonable to assume that the class defined by Plaintiffs would have such numbers that their joinder would be both impractical and inconvenient").  Interim Co-Lead Counsel estimate that there are potentially many thousands of members of the proposed Settlement Class.

### 2.    Common Questions of Law or Fact

The commonality requirement is likewise easily met because it is satisfied by a single common question of law or fact.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011); *see also Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 105 (2d Cir. 2007) ("allegations of the existence of . . . conspiracy are susceptible to common proof").  The nature of antitrust claims brought under Section 1 of the Sherman Act has led courts to routinely, and almost uniformly, find that commonality exists.  *See also Richburg v. Palisades Collection LLC*, 247 F.R.D. 457, 462 (E.D. Pa. 2008) ("'Antitrust, price-fixing conspiracy cases, by their nature, deal with common legal and factual questions about the existence, scope and effect of the alleged conspiracy.'").[13]  This case is no different.  Proof of Defendants' conspiracy to rig the gold market will be the heart of this case at trial and is crucial to the claims of all members of the Settlement Class.  Each member of the Settlement Class has a common interest in proving the existence, scope, effectiveness, and impact of the alleged conspiracy.

---

[13] *See also In re Carbon Black Antitrust Litig.*, MDL 1543, 2005 WL 102966, at *11 (D. Mass. Jan. 18, 2005) (collecting antitrust cases satisfying commonality requirement based on the existence and scope of conspiracies); *see, e.g.*, *In re Nasdaq Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 510 (S.D.N.Y. 1996) ("*Nasdaq I*") (commonality satisfied based on common questions as to the existence, scope, effectiveness, and impact of conspiracy and the appropriate injunctive and monetary relief); *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 99 (E.D.N.Y. 2012) (commonality satisfied based on common question of whether defendants' price-fixing agreement caused an artificial increase in the market price of vitamin C).

### 3.    Typicality

The typicality standard is satisfied when "'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'"  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009); *Tsereteli v. Residential Asset Securitization Trust 2006-A8*, 283 F.R.D. 199, 208 (S.D.N.Y. 2012) (typicality requirement "'not demanding'").

Here, Plaintiffs' claims are typical because they arise from the same events or course of conduct that gives rise to the claims of the Settlement Class − namely, Defendants' alleged participation in an unlawful conspiracy to rig the gold market.  *See In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1175, 2014 WL 7882100, at *31 (E.D.N.Y. Oct. 15, 2014) ("Because the representative plaintiffs will seek to prove that they were harmed by the same overall course of conduct and in the same way as the remainder of the class, their claims are by all appearances typical of the class.").  All members of the Settlement Class seek redress for the impact the PM Fixing's manipulation had on their Gold Investment Transactions.[14]  Because these are the same elements that both Plaintiffs and other members of the Settlement Class would have to prove separately if they brought individual actions, the typicality requirement is satisfied.

### 4.    Adequacy

Adequacy is met if the class representatives do not have interests that are antagonistic to those of the class and their chosen counsel is qualified, experienced, and able to conduct the litigation.  *See In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 111-12 (S.D.N.Y. 2010).  Importantly, "[o]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status."  *Martens v. Smith Barney, Inc.*, 181

---

[14] *See* also SAC ¶ 23 & n.13 (defining Gold Investments).

F.R.D. 243, 259 (S.D.N.Y. 1998); *see also Nasdaq I*, 169 F.R.D. at 514-15 (to deny class certification on adequacy grounds, "it must be shown that any asserted 'conflict' is so palpable as to outweigh the substantial interest of every class member in proceeding with the litigation").

Plaintiffs American Precious Metals, Ltd.; Norman Bailey; Patricia Benvenuto; Michel de Chabert-Ostland; Edward R. Derksen; Frank Flanagan; Quitman D. Fulmer; Thomas Galligher; KPFF Investment, Inc.; Duane Lewis; Larry Dean Lewis; Kevin Maher; Robert Marechal; David Markun; Trieste Matte; Blanche McKennon; Kelly McKennon; Thomas Moran; Eric Nalven; Nando, Inc.; J. Scott Nicholson; Ken Peters; Santiago Gold Fund LP; Albert Semrau; Steven E. Summer; Richard White; White Oak Fund LP; and David Windmiller are adequate representatives of the Settlement Class and should be appointed as class representatives, solely for settlement purposes. There are no conflicts between Plaintiffs and members of the Settlement Class concerning the subject matter of this litigation. All Plaintiffs engaged in Gold Investment Transactions affected by Defendants' conduct. The same is true of the other members of the Settlement Class. Thus, Plaintiffs' interest in proving liability and damages is entirely aligned with that of the Settlement Class.

Interim Co-Lead Counsel appointed by the Court are experienced in class and antitrust litigation and have served in leadership roles in numerous major antitrust and other class actions in courts throughout the United States. *See also Moran v. The Bank of Nova Scotia*, No. 14 Civ. 2213, ECF 17-20, 23 (S.D.N.Y. July 22, 2014) (discussing interim Co-Lead Counsel's qualifications). Interim Co-Lead Counsel have diligently represented the interests of the Settlement Class in this litigation and will continue to do so.

Accordingly, the requirements of Rule 23(a)(4), as well as the requirements of Rule 23(g) relating to the qualifications of interim Co-Lead Counsel, are satisfied.

### ii.    The Requirements of Rule 23(b)(3) are Satisfied

If the proposed class satisfies Rule 23(a), a class should be certified under Rule 23(b)(3)

if "the court finds that the questions of law or fact common to class members predominate over

any questions affecting only individual members, and that a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy."  Here, questions of law

or fact common to the Settlement Class predominate over any individualized questions, and a

class action is manifestly the superior method of adjudicating the controversy.

Predominance exists where the questions that are capable of common proof are "'more

substantial than the issues subject only to individualized proof.'"  *Roach v. T.L. Cannon Corp.*,

778 F.3d 401, 405 (2d Cir. 2015).  Predominance is a "test readily met in certain cases alleging

consumer or securities fraud or violations of the antitrust laws."  *Amchem Prods. v. Windsor*, 521

U.S. 591, 625 (1997).[15]  Here, proof of an unlawful agreement will consist of class-wide,

common evidence that will "focus on [Defendants'] conduct, not on the actions of putative class

members."  *Dial Corp. v. News Corp.*, No. 13 Civ. 6802, 2015 WL 4104624, at *5 (S.D.N.Y.

June 18, 2015).  In addition, predominance is demonstrated, as in this case, where the impact of

the asserted antitrust violation, as well as the damages arising out of the misconduct, can be

shown on a class-wide basis.  *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 338 (3d Cir. 2011)

("All plaintiffs here claim injury that by reason of defendants' conduct . . . has caused a common

---

[15] *See*, *e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 108 (D.N.J. 2012)
("Given that antitrust class action suits are particularly likely to contain common questions of
fact and law, it is not surprising that these types of class actions are also generally found to meet
the predominance requirement"); *Vitamin C*, 279 F.R.D. at 109 (stating that in horizontal price-
fixing cases, "courts have frequently held that the predominance requirement is satisfied because
the existence and effect of the conspiracy are the prime issues in the case and are common across
the class"); *Brown v. Pro Football, Inc.*, 146 F.R.D. 1, 4 (D.D.C. 1992) ("the framers of Rule 23
seemed to target cases such as this [antitrust action] as appropriate for class determination").

and measurable form of economic damage. . . .  All claims arise out of the same course of

defendants' conduct; all share a common nucleus of operative fact, supplying the necessary

cohesion.").  The predominance element is satisfied in this case.

Finally, as numerous courts have held, a class action is a superior method of adjudicating

claims in cases like this one.[16]  Consequently, courts have consistently certified class actions in

such cases.  Accordingly, the requirements of Rule 23(b)(3), like those of Rule 23(a), are

satisfied, and certification of the Settlement Class for purposes of settlement is appropriate.

### C.    Appointment of Claims Administrator, Escrow Agent, and Related Relief

Plaintiffs are committed to the Settlement Fund being distributed in a reasonable and

equitable fashion to members of the Settlement Class.  However, Plaintiffs have not yet received

data from Settling Defendant that will aid in formulating the plan of distribution.  As such,

Plaintiffs respectfully propose to file a separate Notice Motion at a later date.  At that time interim

Co-Lead Counsel will recommend to the Court a proposed plan of distribution and notice plan

(including the claim form).  Interim Co-Lead Counsel anticipate filing this motion no sooner than

after receiving data from the Settling Defendant, and may decide to further postpone filing to allow

for a more efficient administration of claims alongside possible recoveries from other Defendants.

Interim Co-Lead Counsel are also still considering the selection of a claims administrator and will

seek appointment of a claims administrator as part of the Notice Motion.

As part of the Preliminary Approval Order, Plaintiffs seek the Court's preliminary approval

of The Huntington National Bank as the Escrow Agent.  *See* Preliminary Approval Order ¶ 14.

The Huntington National Bank is part of Huntington Bancshares, Inc., which is one of the large

---

[16] *See, e.g., In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 566
(S.D.N.Y. 2004); *In re Nat. Gas Commodities Litig.*, 231 F.R.D. 171, 185 (S.D.N.Y. 2005); *In re
Sumitomo Copper Litig.*, 189 F.R.D. 274, 279, 284 (S.D.N.Y. 1999).

bank holding companies that is a component of the S&P 500.  The Huntington National Bank's National Settlement Team is one of the leading settlement account programs in the country and has handled escrow accounts in countless class action settlements.[17]  The Court should further approve the Settlement Fund as Qualified Settlement Funds ("QSFs") pursuant to Internal Revenue Code §468B and related Treasury Regulations.  *See* Preliminary Approval Order ¶ 15.

Plaintiffs and Settling Defendant have agreed that the Escrow Agent may make the following disbursements from the Settlement Fund for purposes of paying costs (other than attorney's fees) incurred in preparing and providing the Settlement Class Notice and paying other administrative expenses, including notice and administration expenses of and incurred by the Claims Administrator:  (i) up to $1.5 million prior to the entry of the Final Judgment and Order of Dismissal, unless Court approval is obtained to exceed that amount; and (ii) up to $2.5 million after entry of the Final Judgment and Order of Dismissal but prior to the Effective Date, unless Court approval is obtained to exceed that amount.  *See* SA § 8(a).  Such funds are not recoverable if the Settlement is terminated or does not become final.  *Id.*  As part of the Preliminary Approval Order, Plaintiffs seek the Court's approval to pay these administrative expenses up to the agreed amounts.  *See* Preliminary Approval Order ¶16.

## V.    CONCLUSION

On the basis of the foregoing, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Preliminary Approval of Settlement Agreement with Deutsche Bank AG and enter the Preliminary Approval Order appointing the Escrow Agent and authorizing payment of certain administrative expenses.

---

[17] *See* Huntington Bancshares, Inc. Website, Settlement Funds Services, *available at* https://www.huntington.com/Commercial/industries/settlement-funds-services.

DATED:     December 2, 2016


**BERGER & MONTAGUE, P.C.**

By: *_/s/ Merrill G. Davidoff_____*
Merrill G. Davidoff
Martin I. Twersky
Michael C. Dell'Angelo
Zachary D. Caplan
1622 Locust Street
Philadelphia, Pennsylvania 19103
Telephone:  (215) 875-3000
Fax:  (215) 875-4604
mdavidoff@bm.net
mtwersky@bm.net
mdellangelo@bm.net
zcaplan@bm.net

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: *_/s/ Daniel L. Brockett_____*
Daniel L. Brockett
Daniel P. Cunningham
Steig D. Olson
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:  (212) 849-7000
Fax:  (212) 849-7100
danbrockett@quinnemanuel.com
danielcunningham@quinnemanuel.com
steigolson@quinnemanuel.com

Jeremy D. Andersen
Chris R. Barker
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:  (213) 443-3000
Fax:  (213) 443-3100
jeremyandersen@quinnemanuel.com
chrisbarker@quinnemanuel.com


*Interim Co-Lead Counsel for Plaintiffs and the Proposed Class*