# EXHIBIT A





UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUN − 1 2017

JUDGE AMY ST. EVE
United States District Court

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) No. 17-CR-001 |
| vs. | ) |
| | ) Judge Amy J. St. Eve |
| DAVID LIEW | ) |

## PLEA AGREEMENT

1.   This Plea Agreement between the Fraud Section, Criminal Division, United States Department of Justice (the "government") and defendant DAVID LIEW, and his attorney, NEIL MACBRIDE, of Davis Polk & Wardwell LLP, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.   The Information in this case charges defendant with one count of conspiracy, in violation of Title 18, United States Code, Section 371, to commit: (a) wire fraud affecting a financial institution, in violation of Title 18, United States Code, Section 1343; and (b) spoofing, in violation of Title 7, United States Code, Sections 6c(a)(5)(C) and 13(a)(2).

3.   Defendant has read the charges against him contained in the Information, and those charges have been fully explained to him by his attorney.

4.   Defendant fully understands the nature and elements of the crimes with which he has been charged.

1

## Charge to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to

Count 1 of the Information, which charges defendant with one count of conspiracy, in violation

of Title 18, United States Code, Section 371, to commit: (a) wire fraud affecting a financial

institution, in violation of Title 18, United States Code, Section 1343; and (b) spoofing, in

violation of Title 7, United States Code, Sections 6c(a)(5)(C) and 13(a)(2).

## Factual Basis

6.     Defendant will plead guilty because he is in fact guilty of the charges

contained in Count 1 of the Information. In pleading guilty, defendant admits the facts

alleged in Count 1 of the Information as well as the facts set forth in Paragraph 7 of this Plea

Agreement (collectively, the "Facts"). The defendant further admits that the Facts establish

his guilt beyond a reasonable doubt.

Criminal Offenses

7.     Between in or around December 2009 and in or around February 2012 (the

"Relevant Period"), in the Northern District of Illinois, Eastern Division, and elsewhere,

defendant DAVID LIEW did knowingly and intentionally conspire and agree with other

precious metals (gold, silver, platinum, and palladium) traders to: (a) knowingly execute, and

attempt to execute, a scheme and artifice to defraud, and for obtaining money and property

by means of materially false and fraudulent pretenses, representations, and promises, and

in furtherance of the scheme and artifice to defraud, knowingly transmit, and cause to be

2

transmitted, in interstate and foreign commerce, by means of wire communications, certain signs, signals and sounds, in violation of Title 18, United States Code, Section 1343, which scheme affected a financial institution; and (b) knowingly engage in trading, practice, and conduct, on and subject to the rules of the Chicago Mercantile Exchange ("CME"), that was, was of the character of, and was commonly known to the trade as, spoofing, that is, bidding or offering with the intent to cancel the bid or offer before execution, by causing to be transmitted to the CME precious metals futures contract orders that LIEW and his co-conspirators intended to cancel before execution and not as part of any legitimate, good-faith attempt to execute any part of the orders, in violation of Title 7, United States Code, Sections 6c(a)(5)(C) and 13(a)(2); all in violation of Title 18, United States Code, Section 371.

In furtherance of the conspiracy and to effect its unlawful objects, the following overt act, among others, was committed in the Northern District of Illinois and elsewhere: on or about January 10, 2012, defendant LIEW engaged in spoofing activity on the CME.

Defendant and Relevant Entities

Defendant LIEW joined Bank A in or about July 2009 following the completion of his bachelor's degree as part of its 2009 Global Analyst Program. Following an introductory period that included orientation and training, LIEW was eventually assigned to the metals trading desk (which included base metals and precious metals trading) in approximately December 2009. During the Relevant Period, LIEW was employed by Bank A as a metals trader in the Asia-Pacific region, and his primary duties included precious metals market making and futures trading.

3

Defendant LIEW's employer, Bank A, was one of the largest global banking and financial services companies in the world. Bank A's primary precious metals trading desks were located in the United States, the United Kingdom, and the Asia-Pacific region.

Defendant LIEW and other precious metals traders, including traders at Bank A, engaged in a conspiracy to commit wire fraud affecting a financial institution and spoofing, in the trading of precious metals futures contracts traded on the CME.

During the Relevant Period, the CME was a financial and commodity derivatives exchange based in Chicago, Illinois. The CME was one of the major futures exchanges in the world. Trading on the CME in futures contracts was regulated by the Commodity Futures Trading Commission (the "CFTC"), the federal agency established by statute, among many other things, to regulate transactions involving the purchase and sale of futures contracts.

The CME was a registered entity with the CFTC. Specifically, the CME was registered with the CFTC as both a "Derivatives Clearing Organization" and a "Board of Trade Designated as a Contract Market."

The CME operated a global electronic trading platform for futures contracts trading called Globex. Defendant LIEW and his co-conspirators accessed Globex to trade from multiple locations throughout the world.

4

Overview of the Conspiracy

        During and in furtherance of the conspiracy, and in order to make money, defendant LIEW, from locations outside the United States, including Bank A's offices in the Asia-Pacific region, placed electronic trading orders with the CME, through Globex, which was located in the Northern District of Illinois. Such wire communications travelled in foreign and interstate commerce because LIEW executed such wires from locations outside the United States, including the Asia-Pacific region, and such wires traveled into the United States, specifically into the Northern District of Illinois.

        Defendant LIEW placed, and conspired to place, hundreds of orders to buy or to sell precious metals futures contracts that he intended to cancel and not to execute at the time he placed the orders (the "Spoof Orders").

        Defendant LIEW's purpose, intent, and motivation in placing the Spoof Orders was to create a materially false and misleading impression of supply (when he was placing Spoof "sell" orders) and demand (when he was placing Spoof "buy" orders) in order to induce other market participants to react to his Spoof Orders and to engage in transactions to sell or to buy precious metals futures contracts at prices, quantities, and/or times that, but for LIEW and his co-conspirators' Spoof Orders, they would not otherwise have traded. In placing the Spoof Orders, LIEW and his co-conspirators intended to transmit false and misleading liquidity and price signals into the CME in order to induce other market participants to react to this false and misleading information and trade against genuine orders placed by LIEW and his co-conspirators on the opposite side of the market (the "Primary

5

Orders") at prices more favorable to LIEW and his co-conspirators. In hundreds of instances, LIEW and his co-conspirators sought to induce other market participants to react, and artificially increase the number of market participants willing to transact in precious metals futures contracts at an existing price, or artificially depress (in the case of Spoof "sell" orders) or artificially inflate (in the case of Spoof "buy" orders) the price of precious metals futures contracts—all so that LIEW and his co-conspirators could profit, mitigate potential losses, or liquidate Primary Orders at a more favorable quantity and/or price than was otherwise available before the Spoof Orders were placed.

Defendant LIEW and his co-conspirators were able to generate trading profits (or mitigate losses) by executing their Primary Orders close in time with the placement of their Spoof Orders.

Defendant LIEW personally benefited from his deception and manipulation of the market in numerous ways, including by way of continued employment and compensation from Bank A, which compensation was based in part on his trading profits.

Spoofing Methods Used by LIEW

Bank A operated a global metals trading team with traders in the United States, the United Kingdom, and the Asia-Pacific region. Throughout his tenure on the metals trading desk at Bank A, defendant LIEW was supervised by and interacted with more experienced traders on the team. LIEW was supervised by other metals traders in the Asia-Pacific region, and, due to the nature of the nearly 24-hour trading cycle, LIEW interacted with members of the trading team in the United States and the United Kingdom. It was after joining the metals

6

trading desk that LIEW was taught to spoof by other metals traders, including other metals traders at Bank A.

Defendant LIEW generated Spoof Orders manually. That is, LIEW physically clicked his computer mouse or keyboard keys to enter each Spoof Order, and physically clicked his mouse or keyboard keys to cancel that order.

A common technique employed by defendant LIEW was to place and cancel one or more Spoof Orders on one side of the prevailing market price. The intent of these Spoof Orders was to facilitate the execution of an existing Primary Order on the opposite side of the market. By placing Spoof Orders opposite the Primary Order, LIEW intended to create a false appearance of supply or demand and induce other market participants to react to this false information in order to move the market price and/or increase the available quantity at the desired price of the relevant futures contract. During the time the Spoof Order was live in the market, or shortly after it was cancelled, LIEW's Primary Order on the other side of the market would often execute at a more favorable price than was otherwise available before the Spoof Order had been placed.

During the Relevant Period, defendant LIEW engaged in the conduct described herein both by himself ("solo spoofing") and with other traders at Bank A ("coordinated spoofing"), all in furtherance of the conspiracy. When engaging in solo spoofing, LIEW would place Spoof Orders in order to facilitate the execution of Primary Orders placed by LIEW without the placement of any Spoof Orders by other traders at Bank A.

7

Coordinated spoofing involved one or more additional participants. When engaging in coordinated spoofing, defendant LIEW and/or one or more co-conspirators would place one or more Spoof Orders on one side of the market in order to facilitate the execution of Primary Orders placed on the opposite side of the market by either LIEW or a co-conspirator. For example, LIEW would place a Spoof Order in order to facilitate the execution of a Primary Order placed by a co-conspirator, or a co-conspirator would place a Spoof Order in order to facilitate the execution of a Primary Order placed by LIEW. At other times, LIEW and one or more co-conspirators would each place one or more Spoof Orders in order to facilitate the execution of a Primary Order placed by LIEW or a co-conspirator.

At all times during the Relevant Period, defendant LIEW's purpose, intent, and motivation in conspiring with others in the placement of Spoof Orders was to create a false sense of supply or demand for purposes of inducing other market participants to react, and artificially drive the price of the precious metals futures contracts down or up, or artificially increase the number of market participants willing to transact at the existing price, all so that LIEW and his co-conspirators could profit or mitigate their potential loss by executing their positions at more favorable prices and/or quantities than were otherwise available before LIEW or his co-conspirator placed the Spoof Order.

During and in furtherance of the conspiracy, defendant LIEW engaged in solo spoofing or coordinated spoofing with traders at Bank A hundreds of times.

While it was the intent of the conspiracy to use Spoof Orders in order to facilitate the execution of Primary Orders at a more favorable price than was otherwise

8

available before the Spoof Order had been placed, the spoofing techniques described herein did not always achieve the outcome desired by LIEW and his co-conspirators. In some instances, the placement of Spoof Orders would not induce other market participants to trade at the level desired by LIEW and his co-conspirators, and LIEW would execute the Primary Order at the prevailing market price. In other instances, while it was LIEW's intent to cancel a Spoof Order prior to its execution, all or part of the Spoof Order would execute, and LIEW would then act to reverse the unintended position, which reversal could generate a loss.

Other Wrongful Acts

During the Relevant Period, defendant LIEW and a trader at Bank B, another major global bank, engaged in, and profited from, deceptive and manipulative trading that was intended to artificially move the price of a precious metals futures contract in order to trigger customers' stop loss orders (which were standing orders to buy or sell).

During the Relevant Period, on at least one occasion, LIEW and others at Bank A initiated trades on the basis of information related to a large metals trade to be undertaken for a Bank A customer, prior to the execution of that customer's metals trade and in an effort to profit improperly from the anticipated movement in the price that would result from the execution of the customer's trade.

8.     The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crime and related conduct.

9

## Maximum Statutory Penalties

9.    Defendant understands that the charge to which he is pleading guilty carries the following statutory penalty:

a.    A maximum sentence of five years' imprisonment. The statutory maximum period of imprisonment for Count 1 (conspiracy) is five years. Defendant further understands that the judge also may impose a term of supervised release of not more than three years for this offense.

b.    A criminal fine of $250,000, or twice the gross gain or gross loss resulting from the offense, whichever is greater.

c.    Defendant further understands that, pursuant to Title 18, United States Code, Section 3663A, the Court must order restitution for persons directly and proximately harmed as a result of the defendant's violation of Count 1 (conspiracy), in an amount determined by the Court.

d.    Defendant understands that the forfeiture of property, real or personal, which constitutes or is derived from proceeds traceable to the offense, is part of the sentence that must be imposed in this case, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

e.    In accord with Title 18, United States Code, Section 3013, defendant must pay a mandatory special assessment of $100 ($100 on each count to which he has pled guilty), in addition to any other penalty, forfeiture, or restitution imposed.

10

## Sentencing Guidelines Calculations

10. Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under Title 18, United States Code, Section 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

11. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 1, 2016 Guidelines Manual.

11

    b.    **Offense Level Calculations**.

        i.    For Count 1, the base offense level is 6, pursuant to Guideline § 2B1.1(a)(2).

        ii.    Pursuant to Guideline § 2B1.1(b)(1)(F), defendant's offense level is increased by 10 levels because the government's current estimate of intended loss exceeds $150,000 but is less than $250,000.

        iii.    Pursuant to Guideline § 2B1.1(b)(2)(A)(i), defendant's offense level is increased by 2 levels because the offense involved 10 or more victims.

        iv.    Pursuant to Guideline § 2B1.1(b)(10), defendant's offense level is increased by 2 levels.

        v.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the Fraud Section and the Probation Office with all requested financial information relevant to his ability to satisfy any fine, forfeiture, or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

        vi.    In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the

offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

      c.    **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

      d.    **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated adjusted offense level is 17, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 24-30 months' imprisonment, in addition to any supervised release, fine, forfeiture, and restitution the Court may impose.

      e.    Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and

defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

        f.    Both parties expressly acknowledge that this Agreement is not governed by Federal Rule of Criminal Procedure 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Cooperation

12.    Defendant agrees he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the Fraud Section. This cooperation shall include making himself physically available in the Northern District of Illinois for, and providing complete and truthful information during, any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation. Defendant further agrees to make himself available by telephone within seven (7) calendar days of any request by the Fraud Section.

14

## Agreements Relating to Sentencing

13.    At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has provided full and truthful cooperation as required by this Agreement, and has rendered substantial assistance, then the government shall move the Court, pursuant to Guideline § 5K1.1, to depart downward from the low end of the applicable guideline range. Defendant shall be free to recommend any sentence. Defendant understands that the decision to depart from the applicable guideline range rests solely with the Court.

14.    If the government does not move the Court, pursuant to Guideline § 5K1.1, to depart from the applicable Guideline range, as set forth above, the preceding paragraph of this Agreement will be inoperative, both parties shall be free to recommend any sentence within the applicable Guideline range set forth above in paragraph 11 (without prejudice to either party's ability to recommend an upward or downward variance from that agreed-upon Guideline range), and the Court shall impose a sentence taking into consideration the factors set forth in Title 18, United States Code, Section 3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to Guideline § 5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Guideline § 5K1.1.

15.    It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the

15

sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

16.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

17.     If the Court should order restitution, defendant agrees to the entry of a Restitution Order for the full amount of the victims' losses as determined by the Court. Pursuant to Title 18, United States Code, Section 3663A(c)(2), the defendant agrees that an offense listed in Title 18, United States Code, Section 3663A(c)(1) gave rise to this Plea Agreement and as such, victims of the conduct described in the Information, Factual Basis, or any related or similar conduct shall be entitled to restitution. The parties further acknowledge, however, that pursuant to Title 18, United States Code, Section 3663A(c)(3), and based on information currently available to the government: (i) determining complex issues of fact relating to the amount of the victims' losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim may be outweighed by the burden on the sentencing process; and (ii) the number of identifiable victims may be so large as to make restitution impracticable. To that end, defendant agrees, pursuant to Title 18, United States Code, Section 3664(d)(5), that the Court may defer the imposition of restitution, if any, until after the sentencing; however, defendant specifically waives the 90-day provision found at Title 18, United States Code, Section 3664(d)(5). Defendant further acknowledges that, pursuant to Title 18, United States Code, Section

16

3664(k), he is required to notify the Court and the Fraud Section of any material change in economic circumstances that might affect his ability to pay restitution.

18.     Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), the defendant agrees to forfeit to the United States voluntarily and immediately any and all right, title, and interests in any property, real or personal, which constitutes or is derived from proceeds directly and indirectly traceable to the offense alleged in Count 1 (with respect to the conspiracy to commit wire fraud affecting a financial institution), in violation of Title 18, United States Code, Section 371. Defendant agrees to waive the right to notice of any forfeiture proceeding involving the above described property, and agrees not to file a claim or assist others in filing a claim in that forfeiture proceeding. Defendant knowingly and voluntarily waives the right to a jury trial on the forfeiture of assets. Defendant knowingly and voluntarily waives all constitutional, legal and equitable defenses to the forfeiture of these assets in any proceeding.  Defendant agrees to waive any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine, to the forfeiture of assets by the United States or its subdivisions. Defendant waives the requirements of Rules 32.2 and 43(a) of the Federal Rules of Criminal Procedure regarding notice of forfeiture in the charging instrument, announcement of forfeiture at sentencing, and incorporation of forfeiture in the judgment. Defendant and defendant's attorney also understand that the United States may file motions for preliminary and final orders of forfeiture regarding the property described herein, and they agree that the United States may file such motions unopposed and may state in the certificates

17

of conference for the motions that the defendant has no objection to the relief sought without having to further contact the defendant or defendant's attorney.

19.     If the Court should order restitution and in the event that defendant submits a financial affidavit to the Fraud Section and the Fraud Section determines in its sole discretion that the defendant meets the criteria for restoration under the restoration policy of the Money Laundering and Asset Recovery Section ("MLARS") of the U.S. Department of Justice, including an inability to pay both restitution and forfeiture, the Fraud Section will submit a restoration request to MLARS that any amount obtained through forfeiture be applied towards any restitution ordered. If, however, the Fraud Section determines, in its sole discretion, that the defendant does not meet those criteria, the Fraud Section shall be under no obligation to make any such request. Defendant further understands that MLARS, which is not bound by this agreement, retains ultimate discretion regarding whether to grant or deny any restoration request. Moreover, Defendant acknowledges that a defendant has no right to an offset against restitution for any property forfeited, *United States v. Emerson*, 128 F.3d 557, 567 (7th Cir. 1997), and agrees not to challenge any decision made by the Fraud Section or MLARS with respect to any decision with respect to any restoration recommendation. Defendant also agrees not to request that the Court reduce or otherwise offset any forfeiture order entered by the amount of restitution ordered or any restitution order entered by the amount of any forfeiture ordered.

18

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

20.     This Agreement is entirely voluntary and represents the entire agreement between the Fraud Section and defendant regarding defendant's criminal liability in case 17-CR-001.

21.     Except as set forth in this Plea Agreement, the Fraud Section agrees that it will not initiate further criminal charges against the defendant based on conduct set forth in the Information and this Agreement.

22.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the Fraud Section and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

23.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.     **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

19

i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be

able to confront those government witnesses and his attorney would be able to cross-examine them.

        vi.      At a trial, defendant could present witnesses and other evidence on his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

        vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

        b.     **Waiver of appellate and collateral rights**. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction, pre-trial rulings by the Court, and his right to challenge his sentence, and the manner in which the sentence was determined, including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution and forfeiture, and (in any case in which the term of imprisonment and fine are within the maximums provided by statute) his attorney's alleged failure or refusal to file a notice of appeal, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255, in exchange for the

21

concessions made by the government in this Agreement. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this agreement or to its negotiation, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

24. Defendant hereby waives any and all objections, motions, and defenses based upon the Statute of Limitations.

25. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

## Presentence Investigation Report/Post-Sentence Supervision

26. Defendant understands that the Fraud Section, in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing, shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

27. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the Fraud Section, regarding all details of his financial

22

circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

28. For the purpose of monitoring defendant's compliance with his obligations to pay a fine, restitution, and forfeiture during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure of his tax returns (together with extensions, correspondence, and other tax information) and related tax filings and materials to the Probation Office and the Fraud Section filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced.

## Other Terms

29. Defendant agrees to cooperate with the Fraud Section in collecting any unpaid fine, forfeiture, and restitution for which defendant is liable, including, upon request, providing financial statements under oath or affirmation and supporting records and submitting to interviews by the United States and the U.S. Probation Office regarding the defendant's capacity to satisfy any fines, restitution, or forfeiture.

30. Defendant understands that any person convicted of a felony under Title 7, United States Code, Section 13 shall be suspended from registration under that chapter and

23

shall be denied registration or re-registration for five years or such longer period as the CFTC may determine, and barred from using, or participating in any manner in, any market regulated by the CFTC for five years or such longer period as the CFTC shall determine, on such terms and conditions as the CFTC may prescribe, unless the CFTC determines otherwise.  Defendant understands that nothing in this agreement alters the CFTC's statutory authority or discretion to effect any such suspension, denial, or bar against him, or otherwise binds the CFTC in any way. Defendant nevertheless affirms that defendant wants to plead guilty regardless of any collateral consequences that defendant's plea may entail under Title 7, United States Code, Section 13, or other applicable laws relating to the CFTC's authority over the defendant.

31.   Defendant understands that, when convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Under federal law, a broad range of crimes are removable offenses, including the offense to which defendant is pleading guilty. Because removal and other immigration consequences are the subjects of a separate proceeding, the defendant understands that no one, including defendant's attorney or the District Court, can predict to a certainty the effect of the defendant's conviction on defendant's immigration status.  Defendant nevertheless affirms that defendant wants to plead guilty regardless of any immigration consequences that defendant's plea may entail, even if the consequence is the defendant's automatic removal from the United States.

24

## Conclusion

32.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

33.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

34.     Defendant further understands that, should defendant violate any of the conditions of this Agreement, or move to withdraw his plea of guilty: (a) the "Factual Basis" set forth in this Plea Agreement shall be admissible as substantive evidence in any criminal or civil proceeding brought against the defendant; (b) all (i) statements made by the defendant to the Fraud Section or other designated law enforcement agents and (ii)

25

testimony given by the defendant before a grand jury or other tribunal, whether prior to or subsequent to the signing of this Agreement, and any leads from such statements or testimony, shall be admissible in evidence in any criminal or civil proceeding brought against the defendant; and (c) the defendant shall assert no claim under the United States Constitution, the United States Sentencing Guidelines, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule that the Factual Basis or any statements made by the defendant or any leads derived from such statements should be suppressed or are otherwise inadmissible. It is the intent of this Agreement to waive all rights in the foregoing respects.

35.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

36.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

37.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

26

AGREED THIS DATE: __5/31/2017__

ANDREW WEISSMANN
Chief, Fraud Section
U.S. Department of Justice

DAVID LIEW
Defendant

By: _____

CAROL SIPPERLY
Assistant Chief

MICHAEL T. O'NEILL
Trial Attorney

NEIL MACBRIDE
Attorney for Defendant

Approved by:

BENJAMIN D. SINGER
Chief
Securities & Financial Fraud Unit

27