# EXHIBIT B



RECEIVED CFTC

Office of Proceedings
Proceedings Clerk
**11:23 am, Jun 02, 2017**

UNITED STATES OF AMERICA
Before the
COMMODITY FUTURES TRADING COMMISSION

| | | |
|---|---|---|
| | ) | |
| | ) | |
| In the Matter of: | ) | |
| | ) | 17-14 |
| David Liew, | ) | CFTC Docket No.:_____ |
| | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

ORDER INSTITUTING PROCEEDINGS PURSUANT TO
SECTIONS 6(c) AND 6(d) OF THE COMMODITY EXCHANGE ACT,
MAKING FINDINGS AND IMPOSING REMEDIAL SANCTIONS

## I.

The Commission Futures Trading Commission ("Commission") has reason to believe that David Liew ("Liew" or "Respondent") has violated the Commodity Exchange Act (the "Act" or "CEA") and Commission Regulations ("Regulations"). Therefore, the Commission deems it appropriate and in the public interest that public administrative proceedings be, and hereby are, instituted to determine whether Respondent engaged in the violations set forth herein and to determine whether any order should be issued imposing remedial sanctions.

## II.

In anticipation of the institution of an administrative proceeding, Respondent has submitted an Offer of Settlement ("Offer") that the Commission has determined to accept. Respondent admits the facts set forth below, acknowledges that his conduct violated the Act and Regulations, admits the Commission's jurisdiction over him and the subject matter of these proceedings, and consents to the entry and acknowledges service of this Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act, Making Findings and Imposing Remedial Sanctions ("Order").

## III.

The Commission finds the following:

### A. SUMMARY

From at least December 2009 through February 2012 ("Relevant Period"), Liew, acting individually and in coordination with other traders on the precious metals trading desk at a large

financial institution ("Financial Institution 1"), engaged in a scheme to manipulate the market price of gold and silver futures contracts by utilizing manual spoofing techniques designed to cause price movements in the market that Liew could exploit through his trading.

On numerous occasions, Liew, both individually and in coordination with other traders on the precious metals trading desk of Financial Institution 1, placed orders to buy or sell gold or silver futures contracts that he did not intend to execute at the time the orders were placed ("spoof orders"). On those occasions, Liew intended to induce other market participants into buying and selling gold or silver futures contracts. In engaging in the unlawful spoofing conduct, Liew also intended to manipulate and, on occasion, succeeded in manipulating the price of gold and silver futures contracts. Liew, individually and in coordination with other precious metals traders, sought to and at times did benefit from the artificial prices by executing buy or sell orders at artificial prices.

Separately, on certain occasions, Liew placed orders and executed trades with the intent of manipulating the market price of gold and silver futures contracts for the purpose of triggering customers' stop-loss orders.[1] Liew coordinated this trading with another precious metals trader ("Trader A") at another large financial institution ("Financial Institution 2"). The intent of triggering the customer stop-loss orders was to allow the traders to buy precious metals futures contracts at artificially low prices or sell precious metals futures contracts at artificially high prices.

*　　*　　*　　*　　*

In accepting the Offer of Settlement, the Commission recognizes Liew's cooperation during the Division of Enforcement's ("Division") investigation of this matter, including his entry into a formal Cooperation Agreement ("Cooperation Agreement") with the Division, his provision of substantial assistance to the investigation and his undertaking to continue to cooperate with the Commission, the Division and any other governmental agency in connection with any investigation, litigation or administrative proceeding relating to the subject matter of this Order.

## B. RESPONDENT

**David Liew** was employed as a junior trader on the precious metals desk in a foreign office of Financial Institution 1 during the Relevant Period. Liew has never been registered with the Commission in any capacity.

## C. FACTS

During the Relevant Period, Liew worked on the precious metals trading desk, which, among other things, engaged in market making and proprietary trading in precious metals spot and futures markets. As part of Liew's duties, he placed orders and entered into transactions for gold and silver futures contracts traded on the Commodity Exchange, Inc. ("COMEX"), a futures

---

[1] A stop-loss order, or stop order, is an order that becomes a market order when a particular price level is reached. A sell stop is placed below the market; a buy stop is placed above the market.

exchange and designated contract market which is owned and operated by CME Group, Inc. ("CME").

Liew's trading practices included placing, or coordinating with other precious metals traders at Financial Institution 1 to place, hundreds of bids or offers with the intent to cancel before execution (*i.e.*, spoofing orders). In a March 29, 2011 chat with Trader A at Financial Institution 2, Liew explained his spoofing strategy: "basically i sold out . . . by just having fake bids . . . [in] the futures ... i just spam bids below ... to clear my offer." Generally, Liew's spoof orders were placed in the futures market after another bid or offer was placed on the opposite side of the same market. Liew placed his spoof orders with the intent to create the false appearance that the market interest in buying or selling was greater than the actual market interest. Liew placed such spoof orders with the intent to induce other market participants to fill Liew's resting orders on the opposite side of the market from his spoof orders. In engaging in the spoofing conduct, Liew also intended to manipulate, and at times succeeded in manipulating the price of the relevant futures contract. Thereafter, Respondent cancelled the spoof orders after the resting orders were filled or the spoof orders were at too great a risk of being executed.

As noted above, in addition to executing the spoofing strategy individually, at times, Liew coordinated with one or more traders on the precious metals trading desk of Financial Institution 1 to implement his spoofing strategy.

### Stop-Loss Manipulation

During the Relevant Period, on occasion, Liew attempted to manipulate, and at times, succeeded in manipulating the gold and silver futures market prices to trigger customer stop-loss orders in order to obtain a profit. Liew coordinated this trading with Trader A at Financial Institution 2.

On certain occasions, Liew would communicate with Trader A at Financial Institution 2 to determine the level in the market that stop-loss orders were resting, and would coordinate trading for the purpose of triggering stop-loss orders. Liew engaged in this conduct intending to manipulate the prices of the gold and silver futures contracts. Liew executed trades with the understanding that he, together with Trader A, had the ability to affect or influence prices. In certain instances, Liew and Trader A succeeded in manipulating the prices of the gold and silver futures contracts.

For example, on January 7, 2011, Liew asked Trader A at Financial Institution 2, via a chat, about the level in the market at which customer stop loss orders were resting. Liew told the other trader, "i can hunt with u." A few minutes later, the other trader asked Liew "yo can u help me push silver down?" Liew agreed to execute trades to push the price of COMEX silver futures market down to trigger the resting stop loss orders, and did so by entering orders to sell with the intent to manipulate prices. When the market reached the stop level that they were seeking, Liew told Trader A "there u go." Liew then bought back the silver contracts, eliminating his exposure to risk from further price movements in the silver futures market and generating a profit.

In another example, on March 29, 2011, Trader A asked Liew for assistance in the gold futures market, asking Liew to "push it up" because Trader A "need[ed] a print." Liew bought gold futures contracts with the intent to push prices up as requested. Immediately after Trader A told Liew that he "got it" [i.e., the print], Liew then sold back the gold futures contracts, eliminating his exposure to risk from further price movements in the gold futures market and generating a profit.

## IV.

## LEGAL DISCUSSION

**A. Liew Manipulated and Attempted to Manipulate the Price of Gold and Silver Futures Contracts in Violation of Sections 6(c), 6(d) and 9(a)(2) of the Act for the Period Prior to August 15, 2011, and Sections 6(c)(1), 6(c)(3), 6(d) and 9(a)(2) of the Act and Regulations 180.1 and 180.2 for the Period On or After August 15, 2011**

Together, Sections 6(c),[2] 6(d) and 9(a)(2) of the Act prohibit acts of manipulation and attempted manipulation. 7 U.S.C. §§ 9, 13b, 13(a)(2) (2006). Section 9(a)(2) of the Act makes it unlawful for "[a]ny person to manipulate or attempt to manipulate the price of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity." 7 U.S.C. § 13(a)(2) (2006). For conduct prior to August 15, 2011, Sections 6(c) and 6(d) of the Act authorize the Commission to serve a complaint and provide for the imposition of, among other things, civil monetary penalties and cease and desist orders if the Commission "has reason to believe that any person . . . has manipulated or attempted to manipulate the market price of any commodity, in interstate commerce, or for future delivery on or subject to the rules of any registered entity, . . . or otherwise is violating or has violated any of the provisions of [the] Act." 7 U.S.C. §§ 9, 13b (2006).

For conduct occurring on or after August 15, 2011, the Commission is authorized to serve a complaint and impose penalties and orders with regard to manipulation and attempted manipulation in violation of the broader amended provisions of Sections 6(c)(1) and 6(c)(3) of the Act and the Regulations implementing those provisions. *See* Sections 6(c)(4)(A) and 6(d) of the Act, 7 U.S.C. §§ 9(4)(A), 13b (2012). Sections 6(c)(1) of the Act prohibits the use or attempted use of any manipulative device in connection with any swap or contract of sale of any commodity in interstate commerce, or for future delivery, 7 U.S.C. §§ 9(1) (2012), and Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2016), makes it "unlawful . . . , directly or indirectly, in connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to . . . (1) [u]se . . . or attempt to use . . . any manipulative device." Section 6(c)(3) of the Act prohibits the manipulation or attempted manipulation of the price of any commodity in interstate commerce, 7 U.S.C. § 9(3) (2012), and Commission Regulation 180.2, 17 C.F.R. § 180.2 (2016), makes it "unlawful . . . directly or indirectly, to manipulate or attempt to manipulate the price of any swap, or of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity."

---

[2] Section 6(c) was amended effective August 15, 2011.

4

As described above, Liew manipulated and attempted to manipulate the price of gold and silver futures contracts by utilizing manual spoofing techniques, in violation of Sections 6(c), 6(d) and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13b, 13(a)(2) (2006), for conduct occurring prior to August 15, 2011; and Sections 6(c)(1), 6(c)(3), 6(d) and 9(a)(2) of the Act, 7 U.S.C. §§ 9(1), 9(3), 13b, 13(a)(2) (2012), and Regulations 180.1 and 180.2, 17 C.F.R. §§ 180.1, 180.2 (2016), for conduct occurring on or after August 15, 2011.

Furthermore, Liew manipulated and attempted to manipulate the price of gold and silver futures contracts by engaging in a scheme to trigger customer stop-loss orders, in violation of Sections 6(c), 6(d) and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13b, 13(a)(2) (2006), for conduct occurring prior to August 15, 2011; and Sections 6(c)(1), 6(c)(3), 6(d) and 9(a)(2) of the Act, 7 U.S.C. §§ 9(1), 9(3), 13b, 13(a)(2) (2012), and Regulations 180.1 and 180.2, 17 C.F.R. §§ 180.1, 180.2 (2016), for conduct occurring on or after August 15, 2011.

### B.  Liew Engaged in Spoofing in the Gold and Silver Futures Markets, In Violation of Section 4c(a)(5)(C) of the Act

Section 4c(a)(5) of the Act makes it unlawful for "[a]ny person to engage in any trading, practice, or conduct on or subject to the rules of a registered entity that . . . is, is of the character of, or is commonly known to the trade as, 'spoofing' (bidding or offering with the intent to cancel the bid or offer before execution)." 7 U.S.C. § 6c(a)(5)(C) (2012).  As described above, Liew entered, or coordinated with other precious metals traders at Financial Institution 1 to enter, hundreds of bids or offers on a registered entity with the intent to cancel the bids or offers before execution, in violation of Section 4c(a)(5)(C) of the Act.

## V.

## FINDINGS OF VIOLATIONS

Based on the foregoing, the Commission finds that Liew violated the Act and Regulations, as follows:  (i) Liew manipulated and attempted to manipulate prices, in violation of Sections 6(c), 6(d) and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13b, 13(a)(2) (2006), for conduct occurring prior to August 15, 2011; and in violation of Sections 6(c)(1), 6(c)(3), 6(d) and 9(a)(2) of the Act, 7 U.S.C. §§ 9(1), 9(3), 13b, 13(a)(2) (2012), and Regulations 180.1 and 180.2, 17 C.F.R. §§ 180.1, 180.2 (2016), for conduct occurring on or after August 15, 2011; and (ii) Liew engaged in spoofing in the gold and silver futures markets in violation of Section 4c(a)(5) of the Act, 7 U.S.C. § 6c(a)(5)(C) (2012), for conduct occurring on or after July 16, 2011.

## VI.

## OFFER OF SETTLEMENT

Liew has submitted an Offer in which he:

A.  Acknowledges receipt of service of this Order;

B.  Admits the jurisdiction of the Commission to all the matters set forth in this Order and for any action or proceeding brought or authorized by the Commission based on a violation of or enforcement of this Order;

C.  Admits to all of the findings made in this Order;

D.  Waives:

   (1)  the filing and service of a complaint and notice of hearing;

   (2)  a hearing;

   (3)  all post-hearing procedures;

   (4)  judicial review by any court;

   (5)  any and all objections to the participation by any member of the Commission's staff in the Commission's consideration of the Offer;

   (6)  any and all claims that he may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2012) and 28 U.S.C. § 2412 (2012), and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. §§ 148.1-30 (2016), relating to, or arising from, this proceeding;

   (7)  any and all claims that he may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, §§ 201-253, 110 Stat. 847, 857-68 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112, 204-205 (2007), relating to, or arising from, this proceeding; and

   (8)  any claims of Double Jeopardy based upon the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief;

E.  Stipulates that the record basis on which this Order is entered shall consist solely of the findings contained in this Order to which Liew has consented in the Offer; and

F.  Consents, solely on the basis of the Offer, to the Commission's entry of this Order that:

   (1)  makes findings by the Commission that: (i) Liew manipulated and attempted to manipulate prices in violation of Sections 6(c), 6(d) and 9(a)(2) of the Act, 7

6

U.S.C. § 9, 13b, 13(a)(2), for conduct occurring prior to August 15, 2011; and in violation of Sections 6(c)(1), 6(c)(3), 6(d) and 9(a)(2) of the Act, 7 U.S.C. §§ 9(1), 9(3), 13b, 13(a)(2) (2012), and Regulations 180.1 and 180.2, 17 C.F.R. §§ 180.1, 180.2 (2016), for conduct occurring on or after August 15, 2011; and that (ii) Liew spoofed the gold and silver futures markets in violation of Section 4c(a)(5) of the Act, 7 U.S.C. § 6c(a)(5)(C) (2012), for conduct occurring on or after July 16, 2011;

(2)  orders Liew to cease and desist from further violations of the Act and Regulations, as set forth below;

(3)  orders that Liew be permanently prohibited from, directly or indirectly, engaging in trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012), and all registered entities shall refuse him trading privileges during that period; and

(4)  orders Liew to comply with the conditions, undertakings, and representations consented to in the Offer and set forth in Part VII of this Order.

Upon consideration, the Commission has determined to accept the Offer.

## VII.

## ORDER

**Accordingly, IT IS HEREBY ORDERED THAT:**

A.  Respondent shall cease and desist from, directly or indirectly:

(1)  manipulating or attempting to manipulate the price of any futures contract or commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, including any contract market, in violation of Sections 6(c)(1), 6(c)(3), 6(d) and 9(a)(2) of the Act, 7 U.S.C. §§ 9(1), 9(3), 13b, 13(a)(2) (2012), and Regulations 180.1 and 180.2, 17 C.F.R. §§ 180.1, 180.2 (2016); and

(2)  engaging in any trading practice, or conduct on or subject to the rules of a registered entity that is, is of the character of, or is commonly known to the trade as "spoofing" (bidding or offering with the intent to cancel the bid or offer before execution), in violation of Section 4c(a)(5)(C) of the Act, 7 U.S.C. § 6c(a)(5)(C) (2012).

B.  Respondent acknowledges that the Commission is not imposing a civil monetary penalty at this time based upon his cooperation in a Commission investigation and related proceedings, pursuant to the terms of the Cooperation Agreement, and his undertaking to continue to cooperate, as set forth below in Part VII.D.3.  If at any time following the entry of this Order, the Division obtains information indicating that Liew: (i) knowingly provided materially false or misleading information or materials to the Commission in the investigation, this proceeding or in a related proceeding; or (ii) violated the terms of his

7

Cooperation Agreement with the Division—including his commitment to continue to cooperate—the Division may, at its sole discretion and without prior notice to Respondent, petition the Commission to re-open this matter and seek an order directing that Liew pay a civil monetary penalty.  Liew may contest by way of defense in any resulting administrative proceeding whether he knowingly provided materially false and misleading information or violated the terms of his Cooperation Agreement with the Division, but may not: (1) contest the findings in this Order; or (2) assert any defense to liability or remedy, including but not limited to, any statute of limitations defense.

C. Respondent is permanently prohibited from, directly or indirectly, engaging in trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012)), and all registered entities shall refuse him trading privileges.

D. Respondent shall comply with the following conditions and undertakings set forth in the Offer:

1. Public Statements:  Respondent agrees that neither he nor any of his successors, assigns, agents or employees under their authority or control shall take any action or make any public statement denying, directly or indirectly, any findings or conclusions in this Order, or creating, or tending to create, the impression that this Order is without a factual basis; provided, however, that nothing in this provision shall affect Respondent's (i) testimonial obligations; or (ii) right to take legal positions in other proceedings to which the Commission is not a party.

2. Respondent agrees that he shall never, directly or indirectly:

   a. enter into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3(yy), 17 C.F.R. § 1.3(yy) (2016)) for Respondent's own personal accounts or for any accounts in which Respondent has a direct or indirect interest;

   b. have any commodity interests traded on Respondent's behalf;

   c. control or direct the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

   d. solicit, receive, or accept any funds from any person for the purpose of purchasing or selling any commodity interests;

   e. apply for registration or claim exemption from registration with the Commission in any capacity, and engage in any activity requiring such registration or exemption from registration with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2016); and/or

   f. act as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2016)), agent or any other officer or employee of any person (as that

8

term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38) (2012) registered, required to be registered, or exempted from registration with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2016).

3.  <u>Cooperation with the Commission</u>:  Respondent shall continue to cooperate fully and expeditiously with the Commission, including the Division pursuant to the Cooperation Agreement, and any other governmental agency in this action, and in any investigation, civil litigation, or administrative matter related to the subject matter of this action or any current or future Commission investigation related thereto.  As part of such cooperation, Respondent agrees to:

    a.  preserve and produce to the Commission in a responsive and prompt manner, as requested by the Division's staff, all non-privileged documents, information, and other materials wherever located, in the possession, custody, or control of Respondent;

    b.  utilize his knowledge and skill to explain transactions, interpret information and terminology or identify new and productive lines of inquiry;

    c.  prepare and appear for interviews and testimony at such times and places as requested by the Division's staff;

    d.  respond completely and truthfully to all inquiries and interviews, when requested to do so by the Division's staff;

    e.  identify and authenticate relevant documents, execute affidavits or declarations, and testify completely and truthfully at depositions, trial, and other judicial proceedings, when requested to do so by the Division's staff;

    f.  accept service by mail, electronic mail, or facsimile transmission of notices or subpoenas for documents and/or testimony at depositions, hearings, or trials;

    g.  appoint Respondent's attorney as agent to receive service of such notices and subpoenas;

    h.  waive the territorial limits on service contained in Rule 45 of the Federal Rules of Civil Procedure and any applicable local rules in connection with requests or subpoenas of the Division's staff; and

    i.  serve by hand delivery or by next-day mail all written notices and correspondence required by or related to this Agreement to the Director of the Division of Enforcement, United States Commodity Futures Trading Commission, 1155 21st Street, NW, Three Lafayette Centre, Washington, DC 20581, unless otherwise directed in writing by the Division's staff.

4.  Change of Address/Phone:  Until such time as Respondent satisfies in full his
    cooperation obligations as set forth in the Consent Order and the Cooperation
    Agreement, Respondent shall provide written notice to the Commission by certified
    mail of any change to his telephone number and mailing address within ten (10)
    calendar days of the change.

**The provisions of this Order shall be effective on this date.**

By the Commission

Christopher J. Kirkpatrick
Secretary of the Commission
Commodity Futures Trading Commission

Dated:  June 2, 2017