**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Eric J. Stock
Direct: +1 212.351.2301
Fax: +1 212.716.0801
EStock@gibsondunn.com

April 4, 2018

**VIA ECF**

The Honorable Valerie E. Caproni
United States District Judge, Southern District of New York
Thurgood Marshall United States Courthouse, 40 Foley Square
New York, New York 10007

Re:  *In re Commodity Exch., Inc., Gold Futures & Options Trading Litig.*, 14-MD-2548

Dear Judge Caproni:

We write on behalf of UBS AG and UBS Securities LLC ("UBS") to respond to Plaintiffs' March 26, 2018 letter ("Ltr.") (Dkt. 308) discussing *Charles Schwab Corp. v. Bank of America Corp.*, 883 F.3d 68 (2d Cir. 2018) ("*Schwab*").  For the reasons set forth in the March 19, 2018 letter in *Silver Fix* (No. 14-MD-2573, Dkt. 350), under *Schwab*, UBS AG's Rule 12(b)(2) motion to dismiss the Third Amended Complaint ("TAC") should be granted because Plaintiffs have failed to make a *prima facie* showing of "suit-related conduct" by UBS AG that "create[s] a substantial connection with" this forum.  883 F.3d at 83–84 (internal quotation marks omitted).

Under *Schwab*, to make a *prima facie* showing of specific personal jurisdiction as to UBS, Plaintiffs must make nonconclusory allegations of "suit-related conduct" in or expressly aimed at New York (or the United States) that was the *cause* of Plaintiffs' alleged injuries. *Schwab*, 883 F.3d at 84.  But the allegations in the TAC are premised on an alleged conspiracy to exploit "control" and "foreknowledge" of the Gold Fix benchmark, which the Fixing Banks determined through auctions that occurred *in London*.  TAC ¶¶ 5–6, 13, 18–19, 125, 174, 208, 236, 276–78.  Although Plaintiffs point to purported U.S. trading activities in their Letter, the alleged *cause* of their injuries is the averred manipulation of the Gold Fix, which was determined through the London-based auctions among the Fixing Banks. Plaintiffs allege no conduct by UBS within or expressly aimed at the United States that could have affected the outcome of those London-based auctions, and certainly no conduct by UBS that impacted the prices paid by any named Plaintiff.  *See* Rule 12 Mem. 38–39 & n.34 (Sept. 11, 2017) (Dkt. 298); Rule 12 Reply 18–19 (Dec. 13, 2017) (Dkt. 302).

For the same reasons, Plaintiffs' allegations fail to satisfy the requirements of the "conspiracy theory" of personal jurisdiction against UBS, as that theory is described in *Schwab*, 883 F.3d at 86–87.  Plaintiffs' case against the Fixing Banks, again, revolves around manipulation of the Gold Fix auctions in London.  Moreover, any attempt by Plaintiffs to assert personal jurisdiction over the Fixing Banks predicated on their regular participation in the Gold Fix auctions cannot possibly establish jurisdiction against UBS, which was never a Fixing Bank.

**GIBSON DUNN**

Hon. Valerie E. Caproni, April 4, 2018, Page 2

Contrary to Plaintiffs' contention, the TAC does not identify any acts "in furtherance of" the benchmark manipulation conspiracy that transpired within the United States based on "short COMEX positions." Ltr. 1 n.1. Indeed, because this Court already has concluded that "Plaintiffs' 'net short' theory *fails* the plausibility test," that "net short" theory is certainly not a basis for "conspiracy theory" jurisdiction over UBS. *In re Commodity Exchange, Inc.*, 213 F. Supp. 3d 631, 662–63 (S.D.N.Y. 2016) (emphasis added). And Plaintiffs continue to fail to explain how the Singapore-centered trading they refer to as "coordinat[ed] trading activities" (Ltr 1 n.1) could have materially affected—and thus been "in furtherance of" the conspiracy regarding—the London-based benchmark.*

Respectfully submitted,

/s/ Eric J. Stock

Eric J. Stock

cc:     All Counsel of record (via ECF)

---

* Plaintiffs err in relying (Ltr. 1–2) on *Nypl v. JPMorgan Chase & Co.*, 15 Civ. 9300, 2018 WL 1472506 (S.D.N.Y. Mar. 22, 2018), again ignoring the differences between the foreign exchange ("FX") benchmarks at issue there and the Gold Fix. *See* Rule 12 Mem. 15 n.12. *Nypl* involved foreign exchange benchmarks determined based on the prices of market transactions, not a self-contained auction process that occurred wholly abroad. The District Court in *Nypl* connected the alleged FX benchmark manipulation to the forum contacts of the Foreign Defendants, based on its perception "that at least part of the alleged conspiratorial conduct . . . took place in, or was directed into, the United States." *Id.* at *6. That analysis has no application here, as explained above, because the Gold Fix was determined at auctions that occurred wholly in London at 3 P.M. London time.