October 2, 2019

**VIA ECF**

Hon. Valerie E. Caproni
United States District Court
  for the Southern District of
  New York
Thurgood Marshall United States
Courthouse
40 Foley Square, New York, NY 10007

Re:   *In re Commodity Exch., Inc. Gold Futures & Options Trading Litig.*, No. 14-MD-2548

Dear Judge Caproni:

      Pursuant to the Amended Discovery Schedule (Dkt. No. 404) ¶ 11, Counsel for Plaintiffs and Defendants jointly submit this letter to summarize the parties' progress in discovery.

    **1. Document Production**

      Société Générale ("SocGen"), HSBC, Barclays, and The Bank of Nova Scotia ("BNS") have each produced documents in September. On September 10, 2019 Deutsche Bank produced additional cooperation materials in accordance with their settlement agreement, and Plaintiffs have produced these documents to Defendants. Plaintiffs have also continued producing replacement versions of previously-redacted documents, along with privilege logs. The Parties continue to meet and confer as to the scope of Your Honor's February 25, 2019 Order regarding Defendants' production of non-communication documents concerning trading in gold investments. Dkt. No. 377 at 7 n.6. Plaintiffs have offered several potential compromises regarding the disputed documents and await a response from Defendants.

    **2. Data Production**

      At Defendants' request, Plaintiffs agreed to extend the September 30, 2019 deadline for the production of some or all of the transaction data to be produced by each of the Defendants. Specifically, for Barclays and HSBC, Plaintiffs have agreed to an extension until October 11, 2019 to produce the substantial majority of their gold trade data.[1] Additionally, Plaintiffs and

---

[1] Barclays maintains that this production of transaction data will comprise gold spot, forwards, over-the-counter options and exchange-traded futures and options covering the agreed-upon period of time for transactions occurring through Barclays' Precious Metals Desk, to the extent that such transactions are available. The category of transaction data that will remain to be produced is gold exotic options. Plaintiffs do not know whether this data production will include *all* trade data from *all* sources worldwide for gold spot, forwards, exchange-traded futures and options, over-the-counter options, and exotic options that incorporate the PM Gold Fixing into the terms of the instrument (including all swaps) for transactions occurring through Barclays' Precious Metals Desk, to the extent that such transactions are available. The parties continue to meet and confer on this issue. For HSBC, this production of transaction data will comprise gold spot, forwards, and futures data from HSBC's Precious Metals

BNS have come to an agreement whereby BNS will produce certain transactional and aggregate data covering the majority of the class period in tabulated form by October 31, 2019. On September 23, 2019, after reviewing data samples, Plaintiffs informed BNS that the conversion process appeared to introduce errors into the tabular data and therefore requested that BNS also produce the non-tabular data that has been collected to convert to tabular form in order to properly interpret the data and BNS asked for an example of such errors. On September 26, following BNS's request, Plaintiffs provided examples of such errors, which BNS is reviewing. Plaintiffs await a response from BNS. SocGen, which made a substantial production of transaction data from the system used by its Commodities division in July 2019, has located additional transaction data stored on a different system and intends to make a supplemental production from that database by the end of October 2019.

Defendants have agreed to confirm whether they are in possession of three types of identifying information,[2] which Plaintiffs maintain is necessary for the third-party domestic exchanges (*e.g.*, COMEX) to unmask the data as to the Defendants' transactions. To enable these third-party domestic exchanges to align specific traders with Defendants' transaction data, Plaintiffs requested that Defendants provide the identifying information in a systematic and organized format.[3] BNS, Barclays, and SocGen have each made a production of two types of this identifying information (including Tag50 IDs for some custodians and the name(s) of clearing FCM(s)) and HSBC has partially produced one type of this identifying information (Tag50 IDs for some of its custodians). Plaintiffs await receipt of the remaining identifying information they have requested, including the FCM account numbers. Defendants refuse, however, to provide the identifying information in the organized format requested. Defendants maintain that this request is improper; no Federal Rule of Civil Procedure imposes on Defendants the obligation to create such work product for Plaintiffs. Defendants are attempting to obtain and provide the information available, which may for some Defendants be included within transaction data that Defendants have produced and/or will shortly produce. Plaintiffs disagree with Defendants' characterization of this request. Far from seeking work product, Plaintiffs ask simply that the identifying information be provided in a manner such that it will be useful for its intended purpose—in identifying Defendants' data on the third-party domestic exchanges. To the extent this minimal level of organization is withheld, Plaintiffs maintain that it is likely to affect the ability of the domestic exchanges to identify and therefore unmask the relevant transactions.

Plaintiffs also have served subpoenas on relevant FCMs in an attempt to timely procure

---

Calypso system and options data from its Murex system.

[2]   Plaintiffs have requested Defendants produce, in a systematic and organized format: (1) trader-specific identifiers (*e.g.*, Tag50 IDs); (2) the identity of the Futures Commission Merchants (FCMs) used by each Defendant Bank during the relevant period, and; (3) the FCM account numbers used to submit trades to the exchanges on each Defendant's behalf.

[3]   This means, for instance, that pursuant to FRCP 34(b)(2)(E)(i), rather than simply providing lists of Tag50 IDs divorced from the data fields in which they reside, Defendants should provide this information as it is kept with datasets and corresponding information in the usual course of business (if that is the case) or in a format such that the third-party exchanges can align a trader's Tag50 ID with the years, exchanges, and instruments to which the ID corresponds. Such a format will allow the third-party exchange to properly identify and then unmask Defendants' data.

the FCM account number information.  Defendants have objected to many of these subpoenas, but have not committed to providing the FCM account number information.

### 3. Production Pursuant to the Court's February 25, 2019 Order

The Court's February 25, 2019 Order requires Plaintiffs to produce "any reports, conclusions, analyses, datasets, charts, computer programs or code, or any other material created or considered by Plaintiffs' consultants [prior to the filing of the TAC] that tend to prove or disprove the existence of any efforts by Defendants to distort or manipulate the price of gold in relation to the PM Fixing."  *See* February 25, 2019 Order (Dkt. No. 377) at 7.  Plaintiffs maintain they are complying with the Court's Order and producing this information.

The parties are in disagreement, however, over the scope of the Order, because Defendants maintain that Plaintiffs must produce communications— *including communications between consultants and Plaintiffs' counsel*.  Defendants promptly wrote to Plaintiffs on March 6 stating Defendants' expectation that the forthcoming production would include "communications between experts, and communications between or among the experts and counsel" (Defendants' March 6, 2019 Letter at 1-2).  Plaintiffs incorporated the fact of Defendants' requests for such communications as a basis for relief in their mandamus petition and their motion to stay the Court's February 25, 2019 order pending their mandamus petition.  *See* Pet. at 8 (stating that Defendants had requested production of "communications between experts, and communications between or among the experts and counsel"); Pls.' Mot. for Stay (Dkt. No. 380) at 3 ("Following the Court's Order, Defendants sent Plaintiffs a letter . . . requesting, pursuant to their interpretation of the Court's Order, 'materials including . . . communications between or among the experts and counsel,' noting that, 'in particular[,] any communications that discuss the results of analyses are responsive and should be produced.'")  Defendants maintain that such communications are integral to evaluating the analyses underlying Plaintiffs' pleadings and are squarely covered by the Court's Order. See February 25, 2019 Order (Dkt. No. 377) at 7 (requiring the production of "any other material created or considered by Plaintiffs' consultants").

Plaintiffs disagree.  Among other reasons, Defendants offer no substantive explanation as to *why* these communications are integral or even relevant to evaluating the allegations in the Complaint.  Nor is the production of such communications required under the terms of the Order, especially in light of Defendants' express representation to the Court in their opening motion to compel that they were "*not at this time seek[ing] production of communications between Plaintiffs' counsel and their consultants*."  Dkt. No. 361 ("Def. Mot."), at 3 n.3.  Plaintiffs therefore have declined to produce such communications although all analyses, charts, and data contained in such communications are being produced.  The parties are continuing to meet and confer on this issue.

### 4. Defendants' Second Set of Document Requests to Plaintiffs

As summarized in the September 5, 2019 discovery status report (Dkt. No. 416), a dispute exists as to whether Defendants' Second Set of Document Requests to Plaintiffs ("Second Requests"), properly seek information that is discoverable in this action and, if so, the

relevance and scope of any such discovery as well as any applicable privileges, immunities, and protections that may apply.  Defendants' Second Requests seek from the Plaintiffs in this action materials relating to Berger Montague PC's ("Berger") provision of consulting services to Plaintiffs' counsel in a proposed class action pending in Ontario, Canada.  The parties held a meet and confer session on September 6, 2019.  During the meet and confer, Defendants stated their three bases for discoverability, and declined to propose any narrowing of the Second Requests absent a commitment from Berger to produce any of the requested material.  In particular, Defendants maintained that the existence of the formal consulting relationship is highly relevant as it may implicate Berger's "ability to fairly and adequate represent the interests of the class" under Federal Rule of Civil Procedure 23(g)(1)(B).  *See In re American Express Anti-Steering Rules Antitrust Litig.*, No. 11-MD-2221 (NGG), 2015 WL 4645240, at *12 (E.D.N.Y. Aug. 4, 2015).

On September 13, 2019, Plaintiffs wrote to Defendants regarding the meet and confer, and, based on Defendants' "summary" relevance positions as stated on the meet and confer, declined to produce any documents responsive to the Second Requests, but stated that they remained open to a continuing meet and confer dialogue in which Defendants explained their relevance arguments with particularity.  Plaintiffs also sought to have Defendants address why they believed Berger's consulting work for a non-party that was rendered in an entirely separate and independent action pending in Canada was discoverable in this action.  Defendants neither responded to Plaintiffs' correspondence nor sought to continue the meet and confer and, without further explanation, communicated to Plaintiffs on September 27, in a draft of this Status Report, that they had declared an impasse.  Pursuant to the Court's Individual Practices, Defendants also communicated to Plaintiffs that they intend to contact Chambers shortly to schedule a joint teleconference with the Court to address this dispute.

Respectfully submitted,

| | |
|---|---|
| /s/ Merrill G. Davidoff | /s/ Daniel L. Brockett |
| Merrill G. Davidoff | Daniel L. Brockett |
| Martin I. Twersky | Sami H. Rashid |
| Michael C. Dell'Angelo | Alexee Deep Conroy |
| Zachary D. Caplan | QUINN EMANUEL URQUHART |
| BERGER MONTAGUE PC | & SULLIVAN, LLP |
| 1818 Market Street | 51 Madison Avenue, 22nd Floor |
| Philadelphia, Pennsylvania 19103 | New York, New York 10010 |

*Interim Co-Lead Counsel for Gold Plaintiffs and the Proposed Gold Class*

| | |
|---|---|
| /s/ Stephen Ehrenberg | /s/ Marc J. Gottridge |
| Stephen Ehrenberg | New York, NY 10004 |
| William H. Wagener | |
| Virginia R. Hildreth | *Attorneys for The Bank of Nova Scotia* |
| SULLIVAN & CROMWELL LLP | *Defendants and Liaison Defense Counsel* |
| 125 Broad Street | |

4

| | |
|---|---|
| Marc J. Gottridge<br>Benjamin A. Fleming<br>HOGAN LOVELLS US LLP | 390 Madison Avenue<br>New York, NY 10017<br><br>*Attorneys for Defendant Société Générale* |
| /s/ Todd S. Fishman<br>Michael S. Feldberg<br>Todd S. Fishman<br>Brian Fitzpatrick<br>ALLEN & OVERY LLP<br>1221 Avenue of Americas<br>New York, NY 10020<br><br>*Attorneys for Defendant Barclays Bank PLC* | /s/ Damien J. Marshall<br>Damien J. Marshall<br>Leigh M. Nathanson<br>Laura E. Harris<br>BOIES SCHILLER FLEXNER LLP<br>55 Hudson Yards<br>New York, NY 10010<br><br>*Attorneys for the HSBC Defendants* |
| /s/ James V. Masella, III<br>James V. Masella, III<br>R. James Madigan III<br>PATTERSON BELKNAP WEBB & TYLER LLP<br>1133 Avenue of the Americas<br>New York, New York 10036<br><br>*Attorneys for Defendant The London Gold Market Fixing Limited* | |