April 1, 2020

**VIA ECF**

Hon. Valerie E. Caproni
United States District Court for the
  Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, New York, NY 10007

Re:   *In re Commodity Exch., Inc. Gold Futures & Options Trading Litig.*, No. 14-MD-2548

Dear Judge Caproni:

Pursuant to the Amended Discovery Schedule (Dkt. No. 404) ¶ 11, Counsel for Plaintiffs and Defendants jointly submit this letter to summarize the parties' progress in discovery.

### 1. Proposed Amendment to the Joint Deposition Schedule

In light of the coronavirus pandemic and various directives and guidance issued in response by authorities in the U.S. and elsewhere, and considering that the majority of Defendants' deposition witnesses in this litigation are located overseas, the parties jointly propose that the Court extend the discovery schedule by 30 days with respect to paragraphs 6 (commencement of depositions – May 4, 2020) and 7 (completion of fact discovery – December 11, 2020) of the Second Amended Fact Discovery Schedule, with the expectation that the parties will reevaluate such extension next month, and with each successive status report, seeking further 30-day extensions to the extent necessary as a result of the pandemic. In addition, the parties agree that no deposition scheduling communications shall occur prior to the next status report, and that in connection with the next status report, the parties shall confer about whether and when deposition scheduling communications can commence.[1] Finally, when the parties agree that the situation has clarified, the dates in paragraph 6 and 7 will be replaced with the adjourned dates, to be agreed by the parties and approved by the court.

The parties disagree as to whether cross notices of depositions should be limited and count toward deposition limits. The parties continue to meet and confer on other aspects of the deposition program including the number of depositions allowed for Defendants and for Plaintiffs and how much notice should be provided by Defendants for cross notices of depositions.

### 2. Privilege Logs

The parties met and conferred on Defendants' proposed privilege logs on March 4, 2020. Plaintiffs agreed to consider dispensing with privilege logs for Defendants' communications with their current outside counsel and Defendants agreed to provide updated privilege log proposals

---

[1] Defendants believe that depositions should not commence without 60 days' prior notice. Plaintiffs will be reasonable about the commencement of depositions but, given the uncertainty about how the pandemic will proceed, believe it is advisable to re-assess this issue next month.

for the remaining categories of privileged communications.  Plaintiffs await Defendants' specific proposals.  The parties will continue to meet and confer as necessary.

    **3.   Audio Requests**

On March 12, 2020, pursuant to the Second Amended Fact Discovery Schedule (Dkt. No. 428) ("Discovery Schedule"), Plaintiffs made their first requests for audio files from Defendants for (a) six PM Fixing calls and (b) for non-Fixing calls from nine dates, within an hour around the PM Fix, and only for persons involved with, or having knowledge related to, the PM Fix.  On March 25, Defendants responded that Plaintiffs' requests do not include sufficient detail such as identifying specific calls or provide sufficient basis for Defendants to agree to Plaintiffs' requests, as required by Paragraph 5 of the Discovery Schedule.  Plaintiffs disagree and maintain that these requests—limited by time, date, and the person(s) involved—fully comply with the Discovery Schedule.  The parties will meet and confer on this issue.

    **4.   Documents and Data Production**

Since the last status report, Plaintiffs and Barclays have produced documents, and HSBC has produced documents and data.  On March 12 and 13, 2020, Defendants Barclays, The Bank of Nova Scotia ("BNS"), Société Générale, and HSBC certified that they had each substantially completed production of documents responsive to Plaintiffs' initial discovery requests, with each Defendant identifying certain discrete categories of documents still forthcoming.  On March 13, 2020, Plaintiffs also certified that they had substantially completed production of documents responsive to Defendants' initial discovery requests.

Plaintiffs are continuing to review Defendants' documents and data productions to assess their completeness and are communicating with Defendants about the same.  Defendants HSBC, Barclays, and BNS are reviewing Plaintiffs' letters dated February 27, 2020 and March 2, 2020 raising technical questions and will undertake reasonable and proportional steps to respond, although BNS has objected to the number, form, and character of Plaintiffs' data related inquiries.  With respect to Defendants' data productions, Plaintiffs have requested that Defendants provide Plaintiffs with information that will permit Plaintiffs to distinguish between trades where the Defendant Bank took risk on its books and trades where it did not, including any third-party e-trades.  The parties will continue to meet and confer on these issues.

The parties continue to discuss Defendants' production of data-adjacent documents requested pursuant to Plaintiffs' First Set of Requests For Production ("RFPs").  Barclays and HSBC continue to look for documents sufficient to provide an "opening position"—their holdings in gold broken down by instrument at the beginning of the class period—or the same information related to gold holdings at the earliest single subsequent point in the class period available.[2]  The parties will continue to meet and confer on this issue.

---

[2] Plaintiffs seek this information from Barclays as of January 1, 2004, and periodically throughout the discovery period, despite Barclays not having joined the London Gold Fixing until June 2004.  Barclays has provided position, profit and loss, and numerous other trading risk materials extending at least back to June 2004, but is nevertheless looking for information back to January 1, 2004.  HSBC has also stated to Plaintiffs that it does not believe that any reporting on its net "opening position" across all holdings in gold and gold investments as of January 1, 2004 exists, but that it will inquire again into the issue.  Given the relevance of this information, Plaintiffs have indicated that to the extent Defendants' opening positions in gold—meaning its static holdings at a specific point in time which are

### 5. Production and Verification of Identifying Information

As this Court is aware, Plaintiffs have requested that each Defendant Bank produce identifying information that is necessary for third-party domestic exchanges (*e.g.*, CME) to produce Defendants' unmasked trade data.[3] March 2, 2020 Letter (Dkt No. 429) at 2-3. On February 26, 2020, Plaintiffs provided each Defendant with a list of the identifying information that Plaintiffs plan to submit to CME to unmask Defendants' exchange trades and sought verification from each Defendant of the same. On March 20, Société Générale provided confirmation that the consolidated list of identifying information, together with any corrections noted by Société Générale, was complete and accurate to the best of its knowledge based on a thorough and reasonably diligent search. On March 23, BNS confirmed that Plaintiffs had accurately collated the identifying information previously provided by BNS, and referred to its prior correspondence describing its reasonably diligent efforts to locate identifying information. BNS has not verified the accuracy and completeness of the identifying information provided. The parties will meet and confer on this issue. Plaintiffs are also continuing to meet and confer productively with Barclays and HSBC over select pieces of identifying information that Plaintiffs maintain are missing from these Defendants.[4] Plaintiffs hope to obtain this information and corresponding verifications from HSBC and Barclays soon, and to produce all identifying information obtained from Defendants to the CME in April 2020.

Respectfully submitted,

| | |
|---|---|
| /s/ Merrill G. Davidoff | /s/ Daniel L. Brockett |
| Merrill G. Davidoff | Daniel L. Brockett |
| Martin I. Twersky | Sami H. Rashid |
| Michael C. Dell'Angelo | Alexee Deep Conroy |

---

distinct from Defendants' changing positions in gold, as reflected in profit and loss (and other) documents produced to date—are not available at the beginning of the class period, Defendants should produce documents from which Plaintiffs can recreate each Defendants' holdings in gold at a single point in time during the relevant period. Neither HSBC nor Barclays concedes that such information is relevant to this case.

[3] This identifying information consists of: 1) the name(s) of all FCM(s) used by each Defendant during the relevant period; 2) the three-digit clearing firm member number of each FCM identified; 3) all of the FCM account numbers used by each Defendant to communicate between the FCMs identified and any domestic exchange so that Plaintiffs may unmask Defendants' trades; and, 4) Tag50 IDs to the extent that they are known and/or reasonably available to enhance the reliability of the output. The CME has indicated that Tag50 IDs are not necessary to produce Defendants' unmasked trade data but that including them in the search serves to further validate the search results. The parties have agreed to include Tag50 IDs in CME's search to the extent that they are reasonably accessible.

[4] Following a productive meet and confer, HSBC agreed to search for FCM account numbers that reflect HSBC's brokered trades for which HSBC took risk on its books and to seek to identify reasonably accessible Tag50 IDs for HSBC traders who are not custodians. From Barclays, Plaintiffs seek FCM account numbers to unmask trades between 2015 and 2016, a period that post-dates Barclays' May 2014 wind down of its precious metals desk, that are not contained within the search query previously provided by Barclays. Barclays has suggested removing the FCM account number portion of their proposed search query to unmask these trades. Plaintiffs maintain that CME has indicated that this proposal will not be successful as an FCM account number is required. The parties continue to meet and confer on this issue. Plaintiffs also await a targeted set of identifying information from Deutsche Bank.

| | |
|---|---|
| Candice J. Enders<br>Zachary D. Caplan<br>BERGER MONTAGUE PC<br>1818 Market Street<br>Philadelphia, Pennsylvania 19103 | QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010 |

*Interim Co-Lead Counsel for Gold Plaintiffs and the Proposed Gold Class*

/s/ Stephen Ehrenberg
Stephen Ehrenberg
William H. Wagener
Virginia R. Hildreth
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004

*Attorneys for The Bank of Nova Scotia Defendants and Liaison Defense Counsel*

/s/ Marc J. Gottridge
Marc J. Gottridge
Benjamin A. Fleming
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017

*Attorneys for Defendant Société Générale*

/s/ Todd S. Fishman
Todd S. Fishman
Brian Fitzpatrick
ALLEN & OVERY LLP
1221 Avenue of Americas
New York, NY 10020

Michael S. Feldberg
REICHMAN JORGENSEN LLP
750 Third Avenue, 24th Floor
New York, NY 10017

*Attorneys for Defendant Barclays Bank PLC*

/s/ Damien J. Marshall
Damien J. Marshall
Leigh M. Nathanson
Laura E. Harris
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10010

*Attorneys for the HSBC Defendants*

/s/ James V. Masella, III
James V. Masella, III
R. James Madigan III
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
*Attorneys for Defendant The London Gold Market Fixing Limited*

4