November 2, 2020

**VIA ECF**

Hon. Valerie E. Caproni
United States District Court for the
  Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, New York, NY 10007

Re:   *In re Commodity Exch., Inc. Gold Futures & Options Trading Litig.*, No. 14-MD-2548

Dear Judge Caproni:

Pursuant to the Amended Discovery Schedule (Dkt. No. 404) ¶ 11, Counsel for Plaintiffs and Defendants jointly submit this letter to summarize the parties' progress in discovery.

1. **Depositions**

After extensive discussions concerning the number of cross-notice depositions that Defendants may take, the parties have agreed that that the cross-noticed depositions will be limited to five or six such depositions per Defendant Bank, depending on the Defendant Bank involved.

The parties continue to discuss how much notice should be provided for cross-notice depositions and have exchanged proposals on procedures to be followed in connection with providing notice for the cross-noticing of depositions, in addition to the provisions of the Deposition Protocol.  The parties agree that, for witnesses represented by defense counsel, Defendants shall advise of their intent to cross-notice the deposition in response to Plaintiffs' initial scheduling communication.  The parties also agree that, for witnesses on Plaintiffs' amended preliminary witness list dated June 17, 2020 and who are represented by attorneys other than defense counsel, Defendants should advise of their intent to cross-notice within [5] business days of receiving written correspondence concerning deposition scheduling to facilitate the additional deposition day required by the cross-notice.  Counsel will continue to cooperate and coordinate in good faith to schedule depositions and any cross-noticed depositions, but need not delay in responding to any scheduling responses from counsel for witnesses not represented by defense counsel.

On October 14, Plaintiffs submitted a motion for the issuance of Letters Rogatory as to six individuals currently residing in the United Kingdom.  *See* Dkt. No. 448.  Shortly thereafter, counsel for Plaintiffs and counsel for Barclays conferred and reached agreement on a modified form of the letters of request.  On October 30, 2020, counsel for Plaintiffs and counsel for Barclays advised the Court that the updated, agreed Letters of Request will be submitted this week for the Court's consideration.  See Dkt. No. 455.

On August 26, 2020, Barclays advised that one former employee located in the United Kingdom and represented by defense counsel and U.K. counsel—former managing director and rotating Fix Chairman Martyn Whitehead—will not "voluntarily accept a Rule 45 subpoena issued from the Southern District of New York." On October 9, pursuant to Plaintiffs' request, Barclays produced Mr. Whitehead's May 2015 redundancy letter. Plaintiffs maintain that in his signed agreement with Barclays, Mr. Whitehead expressly agreed to cooperate in the manner requested, subject only to Barclays request. On October 15, Plaintiffs wrote Barclays requesting again that Barclays make Mr. Whitehead and former employee James Strawson available for a deposition without resort to the Hague Convention procedures. Barclays maintains that Plaintiffs' motion for the issuance of Letters Rogatory obviates this request. Plaintiffs disagree and maintain that, just like counsel of other foreign witnesses in this case have agreed to do, Defendant Barclays could and should make their clients available voluntarily, without resort to the Hague.

The parties continue to meet and confer on these deposition-related issues and endeavor to bring any unresolved deposition issues to the Court at the same time.

Deposition discovery commenced on October 1, 2020 and the parties are coordinating and scheduling depositions.

## 2. Privilege Logs

Defendants have produced categorical privilege logs accompanied by metadata logs for commercial transaction documents and traditional privilege logs for other categories of documents withheld, in whole or in part, as privileged. Plaintiffs are in the process of reviewing these logs.

## 3. Documents and Data Production

The parties continue to communicate on certain questions relating to Defendants' transaction data productions. On September 16, Plaintiffs requested that Barclays produce trade confirmations for a subset of data. Barclays responded on September 25 and indicated that it would consider Plaintiffs' request. Barclays is continuing to investigate whether the requested materials can be identified and produced to Plaintiffs without an undue burden. Plaintiffs also await a response from BNS to Plaintiffs' August 24, 2020 correspondence on data issues.

On September 17, 2020, Plaintiffs served their second set of interrogatories and second set of requests for production on Defendants seeking information to distinguish each Bank's risk-bearing trades in the transaction data produced. Plaintiffs received Defendants' responses on October 19, 2020 and are reviewing them. Plaintiffs also still seek information from each Defendant relating to its total holdings in gold at the beginning of the Class Period, or as early as reasonably available ("opening position"), and periodically through March 31, 2016, as requested in Plaintiffs Requests for Production Nos. 24 and 26. As detailed in the September 1 status letter, Defendants have maintained that this information is not available. Plaintiffs disagree, plan to inquire about such information at deposition, and reserve all rights with respect to seeking production of this information.

On October 28, 2020, the parties appeared before the Court telephonically to discuss Defendants' request for additional information with respect to any unproduced data underlying the TAC, and the production of a February 2014 document *Are Gold Prices Being Fixed?* by Rosa M. Abrantes-Metz and Albert D. Metz.  The Court issued an Order on October 29, 2020.  The parties are in the process of responding to the Order and will submit materials to the Court as stated at the conference.

### 4. Production and Verification of Identifying Information

As previously reported, on September 24, CME produced Globex Order Entry data for SG, HSBC, Deutsche Bank, and Barclays.  CME has not produced unmasked Globex Order Entry data for BNS because of issues raised to Plaintiffs by CME regarding CME's ability to distinguish between transactions attributable to BNS and transactions attributable to one of BNS's executing brokers.  Plaintiffs have communicated with CME and CME recommended that CME, BNS, and the executing broker speak privately to resolve the confidentiality concerns.  Plaintiffs communicated the same to BNS on October 26.  BNS and the executing broker conferred with the CME on October 29 and CME was able to provide only limited information about the nature of the problem, and given the limited resources available to CME, it is not in a position to provide BNS with a sample of the data in question.  BNS is nevertheless working with the executing broker to try and resolve the issue, if possible.

As previously noted, CME has requested that each Defendant supply its "special account numbers" (*i.e.* accounts used by Defendants to report the positions of Defendants' large traders) as part of Plaintiffs' request to CME to produce unmasked aggregated large trader reports that will show Defendants' gold positions relative to those in the market.  To date, Defendants have provided Plaintiffs with what they understand to be the special account numbers requested.  Plaintiffs have provided the information received from Defendants to CME and are awaiting follow-up from CME as to whether the information provided reflects the special account numbers requested.

### 5. Audio Requests

Pursuant to Section 5 of the Discovery Schedule, Plaintiffs made initial requests for audio files from Defendant Banks on March 12, 2020, and, in response to Defendant Banks' concerns, amended and narrowed these requests on May 8, 2020.  These requests consisted of: (1) six dates of Fixing call audio files (four of which have been produced and one of which Defendant Banks refuse to produce)[1] and (2) seven dates of non-Fixing audio files (i.e., audio from up to two hour long time windows around the Fixing).  SG is searching for (and to the extent available, will produce) those non-Fixing audio files within the Class Period requested of SG by Plaintiffs.[2]  On October 9, Barclays produced non-Fixing audio files for each of the days requested by Plaintiffs, to the extent that such files could be identified and harvested from Barclays' internal systems.

---

[1] Specifically, Defendants have refused to produce the 01/09/13 PM Fixing call on the ground that is outside the Class Period and not relevant to the claims and defenses in the action.  No Defendant has produced the requested 08/31/07 PM Fixing call.

[2] Plaintiffs and SG on October 26, 2020 reached agreement on (i) Plaintiffs' outstanding requests for audio production to SG, and (ii) the terms under which SG would search for and review (and if available, produce) audio files in response to future requests for Fixing or non-Fixing audio files directed to it by Plaintiffs.

BNS' status with respect to these requests has not changed since the parties' status letter dated August 3, 2020 so it is unable to produce any audio files.

6. **Settlement**

**Settlement with HSBC**.  As reported to the Court on October 23, Plaintiffs and HSBC have reached a settlement in principle, subject to the negotiation and execution of a settlement agreement.  *See* Dkt. No. 452.

**Final Approval of Deutsche Bank Settlement.**  In advance of seeking final approval from the Court of the Deutsche Bank settlement, Plaintiffs requested that each Defendant Bank provide Plaintiffs with their customers' names and contact information for notice purposes.  The parties have discussed procedures for provision of both U.S. and non-U.S. counterparty information.  Defendants have confirmed that they are collecting this information to the extent available.

Respectfully submitted,

| | |
|---|---|
| /s/ Merrill G. Davidoff<br>Merrill G. Davidoff<br>Martin I. Twersky<br>Michael C. Dell'Angelo<br>Candice J. Enders<br>Zachary D. Caplan<br>BERGER MONTAGUE PC<br>1818 Market Street<br>Philadelphia, Pennsylvania 19103 | /s/ Daniel L. Brockett<br>Daniel L. Brockett<br>Sami H. Rashid<br>Alexee Deep Conroy<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010 |

*Counsel for Gold Plaintiffs and Interim Co-Lead Counsel for the Proposed Gold Class*

| | |
|---|---|
| /s/ Stephen Ehrenberg<br>Stephen Ehrenberg<br>William H. Wagener<br>Virginia R. Hildreth<br>SULLIVAN & CROMWELL LLP<br>125 Broad Street<br>New York, NY 10004 | /s/ Marc J. Gottridge<br>Marc J. Gottridge<br>Benjamin A. Fleming<br>HOGAN LOVELLS US LLP<br>390 Madison Avenue<br>New York, NY 10017 |
| *Attorneys for The Bank of Nova Scotia Defendants and Liaison Defense Counsel* | *Attorneys for Defendant Société Générale* |

| | |
|---|---|
| /s/ Todd S. Fishman<br>Todd S. Fishman<br>Brian Fitzpatrick<br>ALLEN & OVERY LLP | /s/ Damien J. Marshall<br>Damien J. Marshall<br>Leigh M. Nathanson<br>Laura E. Harris |

4

| | |
|---|---|
| 1221 Avenue of Americas<br>New York, NY 10020 | KING & SPALDING LLP<br>1185 6th Avenue<br>New York, NY 10010 |
| /s/ Michael S. Feldberg<br>Michael S. Feldberg<br>REICHMAN JORGENSEN LLP<br>750 Third Avenue, 24th Floor<br>New York, NY 10017 | |
| *Attorneys for Defendant Barclays Bank PLC* | *Attorneys for the HSBC Defendants* |

/s/ James V. Masella, III
James V. Masella, III
R. James Madigan III
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
*Attorneys for Defendant The London Gold Market Fixing Limited*