# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>COMMODITY EXCHANGE, INC., GOLD FUTURES AND OPTIONS TRADING LITIGATION<br><br>*This Document Relates To All Actions* | Case No.   14-MD-2548 (VEC)<br>            14-MC-2548 (VEC)<br><br>Hon. Valerie E. Caproni |

# PLAINTIFFS' MEMORANDUM OF LAW
# IN OPPOSITION TO DEFENDANTS' MOTION TO DEPOSE
# ROSA M. ABRANTES-METZ AND GUSTAVO BAMBERGER

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................................1
ARGUMENT .........................................................................................................................2
I.   RULE 26(B)(4)(D) PROTECTS NON-TESTIFYING CONSULTANTS FROM BEING DEPOSED ...............................................................................................2
   A.   Reliance On Consultants Does Not Render Them "Fact Witnesses" ......................3
   B.   Defendants Do Not Even Try to Show "Exceptional Circumstances" ....................6
II.  DEFENDANTS' ARGUMENTS CONFIRM THIS IS NOT ABOUT FACT DISCOVERY, BUT A BASELESS RULE 11 PURSUIT ..................................................7
III. DEFENDANTS' REQUEST TO PROSPECTIVELY OVERRULE PRIVILEGE OBJECTIONS CONFIRMS THEIR IMPROPER GOALS ...............................................10
CONCLUSION......................................................................................................................10

**Table of Authorities**

                                                              **Page**

**Cases**

*800 Front St. Corp. v. Travelers Prop. Cas. Co. of Am.*,
  2006 WL 3370350 (E.D.N.Y. Nov. 20, 2006) .......................................................................... 6

*Adinolfe v. United Techs. Corp.*,
  2015 WL 11254706 (S.D. Fla. Sept. 17, 2015) ....................................................................... 4

*Appleton Papers, Inc. v. E.P.A.*,
  702 F.3d 1018 (7th Cir. 2012) ................................................................................................ 5

*Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*,
  175 F.R.D. 34 (S.D.N.Y. 1997) .............................................................................................. 2

*In re Commodity Exch., Inc.*,
  213 F. Supp. 3d 631 (S.D.N.Y. 2016) ............................................................................ 1, 3, 9

*Disidore v. Mail Contractors of Am., Inc.*,
  196 F.R.D. 410 (D. Kan. 2000) .............................................................................................. 3

*Dover v. British Airways, PLC*,
  (UK), 2014 WL 4065084 (E.D.N.Y. Aug. 15, 2014) .............................................................. 5

*Fed. Trade Comm'n v. Quincy Bioscience Holding Co., Inc.*,
  2020 WL 5439543 (S.D.N.Y. Sept. 9, 2020) ...................................................................... 4, 6

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*,
  314 F.R.D. 85 (S.D.N.Y. 2016) .............................................................................................. 5

*Genesco, Inc. v. Visa U.S.A, Inc.*,
  302 F.R.D. 168 (M.D. Tenn. 2014) ........................................................................................ 4

*In re Grand Jury Proceedings*,
  219 F.3d 175 (2d Cir. 2000) ................................................................................................... 5

*Higher One, Inc. v. TouchNet Info. Sys., Inc.*,
  298 F.R.D. 82 (W.D.N.Y. 2014) ............................................................................................ 7

*Ice Cube Bldg., LLC v. Scottsdale Ins. Co.*,
  2019 WL 7370373 (D. Conn. Apr. 8, 2019) .......................................................................... 3

*Indus. Tech. Ventures LP v. Pleasant T. Rowland Revocable Tr.*,
  2012 WL 777313 (W.D.N.Y. Mar. 8, 2012) ........................................................................... 7

*Lee v. Grand Sichuan E. (N.Y.) Inc.*,
　2014 WL 199512 (S.D.N.Y. Jan. 17, 2014) .................................................................................. 7

*Loctite Corp. v. Fel-Pro Inc.*,
　94 F.R.D. 1 (N.D. Ill. 1980) ........................................................................................................ 8

*Ludwig v. Pilkington N. Am., Inc*,
　2003 WL 22242224 (N.D. Ill. Sept. 29, 2003) ........................................................................... 4

*Morse/Diesel, Inc. v. Trinity Indus., Inc.*,
　1993 WL 257229 (S.D.N.Y. July 8, 1993) .................................................................................. 8

*Murray v. S. Route Mar., S.A.*,
　2014 WL 1671581 (W.D. Wash. Apr. 28, 2014) ........................................................................ 5

*In re Platinum & Palladium Antitrust Litig.*,
　2017 WL 1169626 (S.D.N.Y. Mar. 28, 2017) ............................................................................. 3

*Powers v. United States*,
　2019 WL 5801876 (M.D. Ga. Jan. 29, 2019) ............................................................................. 5

*Precision of New Hampton v. Tri Component Prods. Corp.*,
　2013 WL 2444047 (N.D. Iowa June 5, 2013) ............................................................................. 4

*Subramanian v. Lupin Inc.*,
　2020 WL 4707268 (S.D.N.Y. Aug. 13, 2020) .................................................................... 3, 4, 6

*In re Symbol Techs., Inc. Sec. Litig.*,
　2017 WL 1233842 (E.D.N.Y. Mar. 31, 2017) ............................................................................. 8

*The Shinnecock Indian Nation v. Kempthorne*,
　652 F. Supp. 2d 345 (E.D.N.Y. 2009) ......................................................................................... 4

*Worley v. Avanquest North America Inc.*,
　2013 WL 6576732 (N.D. Cal. Dec. 13, 2013) ............................................................................ 5

*Zeiger v. WellPet LLC*,
　2018 WL 10151156 (N.D. Cal. Apr. 10, 2018) .......................................................................... 5

*In re Zyprexa Prod. Liab. Litig.*,
　2008 WL 4850122 (E.D.N.Y. Nov. 6, 2008) .............................................................................. 6

## **Rules**

Fed. R. Civ. P. 11 ..................................................................................................................... 7, 8, 9

Fed. R. Civ. P. 11(b)(3) .................................................................................................................. 8

Fed. R. Civ. P. 26 ........................................................................................................................... 6

Fed. R. Civ. P. 26(b)(4)(D) ................................................................................................... passim

Fed. R. Evid. 502(a) ................................................................................................................... 4

## **Other Authorities**

8A Wright and Miller, Fed. Prac. & Proc. § 2032 (3d ed.)     2

## **INTRODUCTION**

In moving to compel the depositions of Plaintiffs' non-testifying consultants, Defendants continue their two-year campaign to obtain and scrutinize Plaintiffs' work product leading up to the filing of this action. Defendants now seek to depose these consultants about "*any aspect* of their work in connection with the pre-complaint analyses," including communications with Plaintiffs' counsel and without regard to "work-product or attorney-client privilege." Dkt. 507 ("Mot.") at 10 (emphasis added). There is no basis for this highly intrusive discovery demand.

Dr. Abrantes-Metz and Dr. Bamberger were retained to help Plaintiffs' counsel investigate potential manipulation in the gold markets. Neither will be a testifying expert in this case. Their work product and communications with counsel thus fall squarely under the protections of Federal Rule of Civil Procedure 26(b)(4)(D). As the Court is aware, Defendants have already been given extraordinary access to their work. We have produced to Defendants the data on which our consultants relied, the analyses they performed, their written memoranda to counsel and the reports they authored.[1] Defendants can use these materials to replicate the TAC analyses (as they finally confirmed that they can do),[2] or to develop their own statistical defenses—notwithstanding that the statistical debates at summary judgment and trial will flow from the work done by *testifying* experts based on data produced in discovery, not the "necessar[ily] limited" data "publicly available" at the time the complaints were filed. *In re Commodity Exch., Inc.*, 213 F. Supp. 3d 631, 660 (S.D.N.Y. 2016) ("*Gold*"). Given all of this, Defendants cannot show any legitimate need for, let alone "exceptional circumstances" that would justify this intrusive discovery under

---

[1] The history concerning the production of the consultant materials is set out in Plaintiffs' Nov. 18, 2020 letter. *See* Dkt. 507 at 1-2. Plaintiffs, respectfully, disagree with the Court's orders requiring the production of such materials.

[2] Defendants told the Court that Plaintiffs' productions were so deficient that they could not reproduce 32 of the roughly 36 TAC analyses. Hr'g Tr. (Dkt. 456) at 25, 33. But subsequent correspondence indicated that—apart from a few (unfounded) quibbles they have raised concerning two appendices— their assertion was untrue. *See* Exs. 1 and 2.

Rule 26(b)(4)(D)(ii).

They hardly try.  Instead, Defendants claim that the Court's previous finding of waiver of "work-product protection over the pre-complaint analyses" permits these depositions.  Mot. at 10.  But the Court's prior finding was not so broad.  At most, the waiver was designed to allow Defendants to "mount a statistical defense showing that market conditions were incompatible with the existence of any price-fixing conspiracy," *see* Order (Dkt. 377) at 3-4, which Defendants can already attempt to do with the voluminous materials produced.  Deposing the consultants will not serve that goal; rather, their true motive, and the only reason Defendants offer for the depositions they seek, is to probe into the alleged "misleading presentation of statistical analyses" and Plaintiffs' "deception."  Mot. at 8-9.  But such Rule 11 discovery is improper and we strongly reject the baseless accusation that we have misled the Court in any way.

## ARGUMENT

**I.   RULE 26(B)(4)(D) PROTECTS NON-TESTIFYING CONSULTANTS FROM BEING DEPOSED**

Rule 26(b)(4)(D) protects against the depositions of "an expert who has been retained or specially employed by [a] party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial."  The Rule is designed to address:

> (1) the interest in allowing counsel to obtain the expert advice they need in order properly to evaluate and present their clients' positions without fear that every consultation with an expert may yield grist for the adversary's mill; (2) the view that each side should prepare its own case at its own expense; (3) the concern that it would be unfair to the expert to compel its testimony and also the concern that experts might become unwilling to serve as consultants if they suspected their testimony would be compelled; and (4) the risk of prejudice to the party who retained the expert as a result of the mere fact of retention.

*Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, 175 F.R.D. 34, 45 (S.D.N.Y. 1997); *see also* 8A Wright and Miller, Fed. Prac. & Proc. § 2032 (3d ed.) (discussing concerns about deposing "nontestifying experts, with whom counsel may, absent the threat of discovery, feel

free to discuss strategy and trial preparation").

The Rule "provides extensive protection for such experts, even more protection than for work product," *Subramanian v. Lupin Inc.*, 2020 WL 4707268, at *3 (S.D.N.Y. Aug. 13, 2020), and covers the facts and other information such experts learn for purposes of the litigation. *Ice Cube Bldg., LLC v. Scottsdale Ins. Co.*, 2019 WL 7370373, at *1 (D. Conn. Apr. 8, 2019) (knowledge of such facts "obvious[ly]" does not make the non-testifying experts "fact witness[es]"); *accord Disidore v. Mail Contractors of Am., Inc.*, 196 F.R.D. 410, 415 (D. Kan. 2000) (citing cases). The Rule squarely applies here—Dr. Abrantes-Metz and Dr. Bamberger were retained to investigate gold manipulation and they will not be testifying experts.

### A. Reliance On Consultants Does Not Render Them "Fact Witnesses"

Defendants argue that a consultant's work product is waived in its entirety when "an expert's analyses are used affirmatively." Mot. at 7. But "[t]he Second Circuit and district courts in this circuit routinely rely on expert and statistical analyses contained in pleadings." *In re Platinum & Palladium Antitrust Litig.*, 2017 WL 1169626, at *13 n.9 (S.D.N.Y. Mar. 28, 2017). Such statistical analyses are critical in antitrust cases because "disregarding all such analyses here would effectively foreclose Plaintiffs' ability to state an antitrust claim for manipulation . . . unless they had direct evidence, which is generally not required at the pleading stage." *Gold*, at 659. Thus, if Defendants were correct, then non-testifying consultants would be regularly deposed about these critical and routine analyses. Yet Defendants cannot point to a single instance in which such a deposition has occurred.

Instead, Defendants maintain that the Court's "broad" "work-product waiver ruling" makes further analysis unnecessary. Mot. at 10. But the Court found only a limited waiver under Rule 502(a) "as to any reports or analyses generated before the filing of the TAC that tend to prove or disprove the existence of an effort by Defendants to distort or manipulate the price of gold

3

surrounding and during the PM Fixing." Order (Dkt. 377) at 3-4;[3] *see also*, Fed. R. Evid. 502(a). Accordingly, the Court ordered that such materials be disclosed to enable Defendants to "mount a statistical defense." Order (Dkt. 377) at 6. Notably, the consultant "communications" that Defendants now seek (in the form of testimony) were not before the Court; Defendants *expressly represented to the Court* that they were not seeking "communications between Plaintiffs' counsel and their consultants." Dkt. No. 361, at 3 n.3. Nor did the Court's ruling cover "any aspect" of the consultants' work at any point in time as Defendants now suggest. Mot. at 10.

More basically, under applicable law, any such waiver of work product protections must be applied narrowly. For instance, a disclosure of *non-opinion* work product should not be deemed to waive protection over *opinion* work product. *See The Shinnecock Indian Nation v. Kempthorne*, 652 F. Supp. 2d 345, 367-68 (E.D.N.Y. 2009) (surveying case law). And Rule 26(b)(4)(D)'s "extensive protection" for non-testifying experts, *Subramanian*, 2020 WL 4707268, at *3, must also be accounted for. Indeed, the protections are so robust that some courts hold Rule 26(b)(4)(D) is not even subject to traditional waiver principles. *See, e.g.*, *Fed. Trade Comm'n v. Quincy Bioscience Holding Co., Inc.*, 2020 WL 5439543, at *2 (S.D.N.Y. Sept. 9, 2020) ("familiar broad principles" of waiver are "less useful" in cases "particularly addressed by Rule 26(b)(4)(D), and requiring a showing of "exceptional circumstances""); *Adinolfe v. United Techs. Corp.*, 2015 WL 11254706, at *4 (S.D. Fla. Sept. 17, 2015) (given the "enhanced protections under Rule 26(b)(4)(D), the standard applied to the waiver of regular attorney work product is simply not applicable").[4] Other courts have

---

[3] The Court also noted that "[b]y its express terms, Rule 26(b)(4)(D) only precludes discovery of the expert's facts and opinions 'by interrogatories or deposition,' neither of which is currently at issue." Order (Dkt. 377) at 4 n.3.

[4] *See also Genesco, Inc. v. Visa U.S.A, Inc.*, 302 F.R.D. 168, 195 (M.D. Tenn. 2014) ("Rule 26(b)(4)(D) … serves different purposes and does not permit … waiver."); *Precision of New Hampton v. Tri Component Prods. Corp.*, 2013 WL 2444047, at *16 (N.D. Iowa June 5, 2013) ("It appears dubious that the waiver doctrine applies to the protections afforded to facts known or opinions held by non-testifying consulting experts"); *Ludwig v. Pilkington N. Am., Inc*, 2003 WL 2242224, at *3 (N.D. Ill. Sept. 29, 2003) (similar).

4

recognized that any waiver must be construed narrowly. *See, e.g.*, *Powers v. United States*, 2019 WL 5801876, at *4 (M.D. Ga. Jan. 29, 2019) ("courts that have found that Rule 26(b)(4)(D)'s protections can be waived have limited the waiver's scope.")

Far from showing that "many courts," Mot. at 1, have found that the use consultant's work eliminates all protections, the cases Defendants cite all recognize that any waiver must be applied narrowly. *See, e.g.*, *Dover v. British Airways, PLC (UK)*, 2014 WL 4065084, at *4 (E.D.N.Y. Aug. 15, 2014) ("waiver should be tailored to remedy the prejudice") (citing *In re Grand Jury Proceedings*, 219 F.3d 175, 188 (2d Cir. 2000)). Tellingly, in virtually all of the cases Defendants cite, the courts allowed only the limited disclosure of analyses cited in the complaints or in other disclosures—the same documents Defendants here already have in their possession.[5]

Only in a single case, *Worley v. Avanquest North America Inc.*, 2013 WL 6576732 (N.D. Cal. Dec. 13, 2013), did the court contemplate a limited deposition. While Plaintiffs maintain that this isolated out-of-circuit opinion was wrongly decided, even there the magistrate judge allowed only a limited deposition solely for the purpose of discerning "the factual basis for the . . . Complaint's allegations," 2014 WL 2730776, at *3 (N.D. Cal. June 16, 2014), while declining to allow any questioning about the "contents of any privileged communication" or any other "information or material not put in issue" by the complaint. 2013 WL 6576732, at *3-6 (N.D. Cal. Dec. 13, 2013).[6] But Defendants here already have the "the factual basis for" Plaintiffs' pleadings through voluminous materials that have already been produced.

---

[5] *See Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 314 F.R.D. 85, 91 (S.D.N.Y. 2016) (waiver limited to the analysis document in complaint); *Dover*, 2014 WL 5090021, at *2 (no waiver); *Zeiger v. WellPet LLC*, 2018 WL 10151156, at *3 (N.D. Cal. Apr. 10, 2018) (waiver limited to results in complaint); *Murray v. S. Route Mar., S.A.*, 2014 WL 1671581, at *3 (W.D. Wash. Apr. 28, 2014) (waiver limited to document disclosed in complaint, not for "underlying examination records and any unreported facts or opinions"); *Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1023-25 (7th Cir. 2012) (limited waiver did not extend to consultant communications, drafts, or data).

[6] Limiting the scope of the deposition, the court in *Worley* insisted that it could not be "broad ranging" and would need to "target[] . . . what [plaintiffs] say in the complaint." Ex. 3 at 37:1-17 (excerpted).

### B. Defendants Do Not Even Try To Show "Exceptional Circumstances"

To buttress its protections ensconced in the rule, Rule 26(b)(4)(D) prohibits depositions of non-testifying experts absent "exceptional circumstances under which it is impracticable for the party [seeking discovery] to obtain facts or opinions on the same subject by other means." Fed. R. Civ. P. 26(b)(4)(D)(ii). Such exceptional circumstances exist where the "object or condition observed by the non-testifying expert is no longer observable" or where the costs of such observation "would be prohibitive." *800 Front St. Corp. v. Travelers Prop. Cas. Co. of Am.*, 2006 WL 3370350, at *2 (E.D.N.Y. Nov. 20, 2006).

Defendants do not even try to meet their "heavy" burden. *In re Zyprexa Prod. Liab. Litig.*, 2008 WL 4850122, at *3 (E.D.N.Y. Nov. 6, 2008). Nor could they. They have already obtained unprecedented access not just to the data and code used to plead Plaintiffs' case, but also have the narrative explanations authored by the consultants themselves. It is well-settled that exceptional circumstances do not exist where, as here, the party seeking discovery can have *its own consultants analyze the same evidence* analyzed by its adversary's consultants, and can thus rely on its own consultants for facts, opinions, and advice about it. *See, e.g.*, *Quincy*, 2020 WL 5439543, at *2 ("the FTC has all the data underlying the study, … [and] has had, and still has, ample time to gather experts' advice on the subject"); *Subramanian*, 2020 WL 4707268, at *3 (where a party has already produced to an adversary "the information they need to evaluate" an issue, the adversary's request for discovery of the party's consultants on the same issue "is not proportional to the needs of this case given the extent of discovery already provided"); *Dover*, 2014 WL 4065084, at *2 (no exceptional circumstances for "analysis . . . based on publically available facts"). In light of the voluminous evidence already available to Defendants, nothing more—and particularly no intrusive depositions into "*any aspect* of" the consultants' work, Mot. at 10—is necessary, relevant, or proportionate to the needs of the case or appropriate under Rule 26.

6

## II.     DEFENDANTS' ARGUMENTS CONFIRM THIS IS NOT ABOUT LEGITIMATE FACT DISCOVERY, BUT A BASELESS RULE 11 PURSUIT

Defendants initially requested these depositions on the "novel" theory that the consultants were "just fact witnesses." Hr'g Tr. at 34-35, Dkt. 456. Defendants have now abandoned the theory that their testimony is necessary to understand the facts of this case, likely recognizing that the very Advisory Committee note that Defendants invoked at the hearing limits discovery of a non-testifying expert to experiences that are independent from their work on the litigation. *See, e.g.*, *Higher One, Inc. v. TouchNet Info. Sys., Inc.*, 298 F.R.D. 82, 87 (W.D.N.Y. 2014). This abandonment means Defendants now offer *no substantive rationale* for why they need these depositions—depositions of non-testifying consultants with no first-hand knowledge whose data will not be used at trial—to litigate the *merits* of this case.

Instead, they justify their motion based on accusations that the "presentation of statistical analysis in the TAC was misleading," "contradicted core allegations in the TAC," and because Plaintiffs engaged in "deception." Mot. at 5, 9. That is, unable to point to any fact in the case about which these consultants could testify, Defendants admit that what they seek is to invade counsel's communications in order to fish for Rule 11 violations. But if Defendants actually believed such a violation took place, they would have made such a motion long ago. That they instead have dragged out an unending series of discovery requests confirms they know no such violation ever occurred. As such, it is fundamentally unfair for Defendants to keep dangling this motion before the Court and asking for ever-more invasive and improper discovery.[7]

---

[7]  *See, e.g.*, *Lee v. Grand Sichuan E. (N.Y.) Inc.*, 2014 WL 199512, at *1 (S.D.N.Y. Jan. 17, 2014) (it is improper to use Rule 11 "for the purpose of emphasizing the merits of the party's position"); *Indus. Tech. Ventures LP v. Pleasant T. Rowland Revocable Tr.*, 2012 WL 777313, at *6-7 (W.D.N.Y. Mar. 8, 2012) (awarding costs and attorneys' fees incurred to defend Rule 11 motion where evidence supported complaint's allegations).

7

Courts have denied such discovery because "the issue whether [plaintiff's] counsel and its [consultants] may have run afoul of ethical duties . . . is wholly divorced from the subject matter and claims in the underlying action itself." *In re Symbol Techs., Inc. Sec. Litig.*, 2017 WL 1233842, at *13 (E.D.N.Y. Mar. 31, 2017) ("It is not the Court's job to pave the way for Defendants to bring a Rule 11 motion."). Going on a fishing expedition to supposedly "prevent further abuse from [an adversary's] pleading-, attorney-, and now expert-switching" simply does not satisfy Rule 26(b)(4)(D)'s "exceptional circumstances" requirement. *Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 1993 WL 257229, at *1-3 (S.D.N.Y. July 8, 1993); *see also* Fed. R. Civ. P. 11, Advisory Committee notes to 1983 amendment (Rule 11 discovery should only be allowed in "extraordinary circumstances").[8]

More fundamentally, Defendants' unorthodox request to depose Plaintiffs' non-testifying consultants is irrelevant because there is no factual basis for the Rule 11 discovery that Defendants seek. As previously indicated, Plaintiffs' counsel relied on three sets of respected, highly-credentialed consultants, who conducted years of rigorous analysis that supported the allegations in this case. Dkt. 476 at 2-7. As has also been demonstrated, Plaintiffs' pre-complaint investigations were incredibly robust, and backed by highly credentialed consultants and academics who, based on their analyses, attested to the strength of this case. *See* Dkt. 476. The pleading plainly had "evidentiary support" as required by Rule 11(b)(3).

Defendants persist in arguing that Plaintiffs had no basis to allege there was a "break" in pricing patterns in 2013 without acknowledging that certain prior patterns later returned. But these accusations fall flat because they cannot dispute that the TAC studies—including challenged charts

---

[8] Defendants cite dicta from *Loctite Corp. v. Fel-Pro Inc.*, 94 F.R.D. 1 (N.D. Ill. 1980), to suggest that suspicion of a Rule 11 violation could qualify as an "exceptional circumstance" under Rule 26. Mot. at 7 n.5. But as the *Morse* court recognized, *Loctite* did not permit depositions of "experts under Rule 26(b)(4)([D])," but rather permitted the depositions because they were "plaintiff's employees." *Morse/Diesel*, 1993 WL 257229, at *2.

8

TAC ¶ 142, 145-48—are true and accurate as to the patterns alleged. Defendants claim to take issue because of two November 2014 consultant memoranda showing that the prior patterns return in later years. But Plaintiffs never claimed that *each and every analysis* in the complaint showed a "break" in a pattern that persisted into 2014; rather Plaintiffs alleged based on the statistical evidence "that many of the anomalies – which previously appeared consistently, year after year – abated during 2013." TAC ¶ 14. ████████████████████████████

████████████████████████████ see also, Ex. 4 ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ (previously attached as Ex. 23 to Dkt. 476).

That some suspicious patterns may have resurfaced after the class period is of no surprise to Defendants or this Court. Nor does it call into question counsel's good-faith basis in filing the Complaint. ████████████████████████

████████████████████████████████████ In fact, Plaintiffs' pleadings included a chart showing that certain pricing patterns that dissipated in 2013 returned in 2014 (TAC ¶ 177), and Defendants flagged the return of patterns in 2014 at the dismissal stage. *See* Dkt. 74 at 11. Nevertheless, while noting that Plaintiffs had "fail[ed] . . . to offer an explanation for why the pattern of downward swings around the PM Fixing returned in 2014," the Court sustained the Complaint. *Gold*, 213 F. Supp. 3d at 646 & n.13.

All of this underscores the baselessness of Defendants' accusation that the TAC somehow violates Rule 11, or justifies "Rule 11 discovery" of our consultants. These accusations are also

9

all the more questionable in light of the ample documentary evidence that corroborates Plaintiffs' claim, ██████████████████████████████████████ *See* Ex. 5 (summary of evidence previously submitted as Ex. 23 to Dkt. 476). Defendants' repeated attempts to push for additional, unnecessary discovery concerning Plaintiffs' non-testifying experts should now be put to rest, and further debate about what the data gathered in discovery may or may not show should be reserved for summary judgment or trial.

### III. DEFENDANTS' REQUEST TO PROSPECTIVELY OVERRULE PRIVILEGE OBJECTIONS CONFIRMS THEIR IMPROPER GOALS

Defendants cap off their extraordinary request by asking the Court *prospectively* to overrule *any* privilege objections based on attorney work-product and attorney-client privilege for any consultant depositions the Court may order. Defendants' claim that this flows directly from the Court's "waiver" ruling. *See* Order (Dkt. 377). But Defendants *expressly excluded* communications between Plaintiffs' counsel and their consultants in their January 2019 motion to compel, Dkt. 361, at 3 n.3, and nothing in their cursory request justifies their demand to probe without restraint the consultants' "communications with Plaintiffs' counsel." Mot. at 10. If nothing else, this brazen ask reflects that Defendants are not genuinely viewing the consultants as "key witnesses with personal knowledge of the alleged facts in the complaint," *see* Mot. at 1, but as a means to seek improper and unnecessary discovery into *counsel's* strategies and mental impressions.

### CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request this Court deny Defendants' motion.

Respectfully submitted,

DATED: February 12, 2021

Respectfully submitted,

/s/ Merrill G. Davidoff
Merrill G. Davidoff
Martin I. Twersky
Michael C. Dell'Angelo
Candice J. Enders
Zachary D. Caplan
Mark R. Suter
BERGER MONTAGUE PC
1818 Market Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 875-3000
Fax: (215) 875-4604
mdavidoff@bm.net
mtwersky@bm.net
mdellangelo@bm.net
cenders@bm.net
zcaplan@bm.net
msuter@bm.net

/s/ Daniel L. Brockett
Daniel L. Brockett
Sami H. Rashid
Alexee Deep Conroy
Christopher M. Seck
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Fax: (212) 849-7100
danbrockett@quinnemanuel.com
samirashid@quinnemanuel.com
alexeeconroy@quinnemanuel.com
christopherseck@quinnemanuel.com

Jeremy D. Andersen
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Fax: (213) 443-3100
jeremyandersen@quinnemanuel.com

*Counsel for Gold Plaintiffs and Interim Co-Lead Counsel for the Proposed Gold Class*

**CERTIFICATE OF SERVICE**

    I hereby certify that on February 12, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

                          /s/ Daniel L. Brockett
                          Daniel L. Brockett
                          QUINN EMANUEL URQUHART
                          & SULLIVAN, LLP
                          51 Madison Avenue, 22nd Floor
                          New York, NY 10010-1601
                          Telephone: 212-849-7000
                          Facsimile:  212-849-7100
                          danbrockett@quinnemanuel.com