USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/17/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
IN RE: :
 :  14-MD-2548 (VEC)
COMMODITY EXCHANGE, INC., GOLD : 14-MC-2548 (VEC)
FUTURES AND OPTIONS TRADING :
LITIGATION :
 :
*This Document Relates to All Actions* :
------------------------------------------------------------ X

VALERIE CAPRONI, United States District Judge:

These consolidated cases concern an alleged conspiracy to manipulate the price of gold and gold-denominated instruments from January 1, 2004 to December 31, 2012. *See* Third Amended Complaint ("TAC"), Dkt. 266 ¶ 406; Order, Dkt. 377 at 1 n.1. Defendants have filed a motion for leave to depose Rosa M. Abrantes-Metz and Gustavo Bamberger. Notice of Mot., Dkt. 506. For the reasons discussed below, Defendants' motion is DENIED.

## BACKGROUND

The Court assumes familiarity with this litigation and will provide only the background information most pertinent to this pending motion. For a more detailed history, see generally Order, Dkt. 377; *In re Commodity Exch., Inc.*, 213 F. Supp. 3d 631 (S.D.N.Y. 2016).

Defendants allegedly conspired to manipulate the London Gold Fixing, which sets the daily benchmark price for one troy ounce of gold. TAC ¶ 83. The benchmark is reset twice each business day: at 10:30 A.M. (the "AM Fixing") and at 3:00 P.M. (the "PM Fixing"), London time. *Id.* ¶ 86. Plaintiffs claim Defendants conspired to manipulate the PM Fixing. *Id.* ¶¶ 10, 80, 153. In order to allege the existence of the conspiracy, Plaintiffs primarily relied on statistical evidence of alleged market distortion that, they allege, could not be explained by innocent causes. *See* TAC Parts II, IV; Order, Dkt. 377 at 2.

Defendants previously sought production of all materials created or considered by Plaintiffs' consultants prior to the filing of the TAC. Letter Motion, Dkt. 361. Plaintiffs objected, arguing that materials not referenced in any complaint were protected by the work-product doctrine. Letter Resp., Dkt. 365 at 1. On February 25, 2019, the Court found that "Plaintiffs have waived work-product protection, pursuant to Fed. R. Evid. 502(a), as to any reports or analyses generated before the filing of the TAC that tend to prove or disprove the existence of an effort by Defendants to distort or manipulate the price of gold surrounding and during the PM Fixing, and that such materials must be disclosed." Order, Dkt. 377 at 3–4. The Court made clear that its ruling applied "to any materials underlying those reports and analyses, including computer programs, data, charts, and other information created by or considered by the consultants as part of and in furtherance of their work." *Id.* at 4 n.2 (internal citation omitted).[1]

Plaintiffs next objected to the disclosure of certain reports and memoranda, arguing that they fell outside the scope of the Court's February 2019 Order. Conf. Tr., Dkt 468 at 16–18. Following a telephonic hearing, the Court concluded that a draft report as well as memoranda written by Plaintiffs' experts or consultants and sent to counsel were covered by the Court's February 2019 Order and must promptly be produced to Defendants. Order, Dkt. 454 at 1. At the hearing, Defendants said they were contemplating noticing Plaintiffs' consultants for depositions as fact witnesses. Conf. Tr. at 34–36. The Court instructed Defendants to inform the Court if they decided they wanted to notice the depositions and if Plaintiffs continued to oppose their doing so. *Id.* at 39. On January 29, 2021, Defendants moved for leave to depose two of

---

[1] Plaintiffs petitioned the Second Circuit for a writ of mandamus directing the undersigned to vacate that Order. Petition for a Writ of Mandamus, *In re Commodity Exch., Inc., Gold Futures & Options Trading Litig.*, 19-0651 (2d Cir. Mar. 15, 2019), ECF No. 1-1. The Second Circuit denied the petition. *See* Mandate, Dkt. 415 at 1 ("Petitioners have not demonstrated that they have a clear and indisputable right to the issuance of the writ or that the writ is appropriate under the circumstances.").

Plaintiffs' consultants, Rosa M. Abrantes-Metz and Gustavo Bamberger, as fact witnesses. Notice of Mot., Dkt. 506.  Plaintiffs opposed the motion.  Resp., Dkt. 517.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) permits a party, subject to the limitations of Rule 26(b)(2)(C), to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ."  Fed. R. Civ. P. 26(b)(1).  Plaintiffs contend that Defendants are not entitled to depose Abrantes-Metz and Bamberger because they are non-testifying consultants protected by Federal Rule of Civil Procedure 26(b)(4)(D).  Resp. at 2.  Rule 26(b)(4)(D) states:

> Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial.  But a party may do so only: (i) [in connection with the report of a court-ordered physical or mental examination]; or (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

Fed. R. Civ. P. 26(b)(4)(D).  The party claiming the protection bears the initial burden of demonstrating that the Rule applies.  *See U.S. Inspection Servs., Inc. v. NL Engineered Sols., LLC*, 268 F.R.D. 614, 617–18 (N.D. Cal. 2010).  But the party seeking discovery bears the burden of proving any claimed waiver of the protection.  *Id.*; *see also Johnson v. Gmeinder*, 191 F.R.D. 638, 643 (D. Kan. 2000).

Additionally, Rule 26(b)(2)(C) requires courts to limit "the frequency or extent of discovery" if it determines that it is "unreasonably cumulative or duplicative" or if "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action."  Fed. R. Civ. P. 26(b)(2)(C)(i)–(ii).  Although a "party must be afforded a meaningful opportunity to establish the facts necessary to support his claim," a "district court has wide

3

latitude to determine the scope of discovery." *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008).

## DISCUSSION

### I. Rule 26(b)(4)(D) Does Not Protect Abrantes-Metz and Bamberger from Being Deposed

Although not expressly grouped in this manner, Defendants make three arguments why Abrantes-Metz and Bamberger are not protected by Rule 26(b)(4)(D): (a) they are fact witnesses and not experts; (b) they are witnesses and not consultants; and (c) Plaintiffs have waived the Rule 26(b)(4)(D) protections altogether. Although the Court is not persuaded by Defendants' first two arguments, the Court finds that Plaintiffs have waived any protection afforded by Rule 26(b)(4)(D) with respect to these experts.

#### A. Abrantes-Metz and Bamberger Are Not Fact Witnesses

Rule 26(b)(4)(D) applies to experts who have been retained in anticipation of litigation and who have not been designated as trial witnesses. Fed. R. Civ. P. 26(b)(4)(D). By arguing that Abrantes-Metz and Bamberger are fact witnesses and not experts, Defendants imply that they fall outside the scope of the Rule. *See* Notice of Mot., Dkt 506 (seeking an order to take the depositions of Abrantes-Metz and Bamberger "as fact witnesses"); Mem. of Law, Dkt. 519 at 1 (referring to Abrantes-Metz and Bamberger as "key witnesses with personal knowledge of the alleged facts in the complaint").[2]

Experts may be characterized as ordinary fact witnesses when the "information was not acquired in preparation for trial but rather because [the expert] was an actor or viewer with

---

[2] Defendants more explicitly made this argument at the telephonic hearing. *See* Conf. Tr., Dkt. 468 at 34 ("These experts are substituting for the witness who saw the defendant's car roll through the intersection when the light was red. . . . These are the facts that are alleged in the complaint, and they're not expert analyses, they're just fact witnesses.").

4

respect to transactions or occurrences that are part of the subject matter of the lawsuit." Fed. R. Civ. P. 26(b)(4) advisory committee's note to 1970 amendment. *See also Dayton-Phoenix Grp., Inc. v. Gen. Motors Corp.*, No. 95-CV-480, 1997 WL 1764760, at *2 (S.D. Ohio Feb. 19, 1997) (internal citation omitted) ("Courts have routinely allowed one party to depose experts who were actors or viewers of the occurrences which gave rise to suit."). For example, in a patent case, the inventor of the patent who had also been retained by one of the parties as a non-testifying expert was considered a deposable fact witness with respect to the knowledge he obtained as an actor in the matter at hand, before he was retained as an expert by one of the parties. *See Atari Corp. v. Sega of Am.*, 161 F.R.D. 417, 421–22 (N.D. Cal. 1994); *see also Positive Techs., Inc. v. Sony Elecs., Inc.*, No. 11-CV-2226, 2013 WL 1402337, at *4 (N.D. Cal. Apr. 5, 2013) (providing a similar example).

Defendants have not alleged that Abrantes-Metz and Bamberger traded gold or gold-based instruments or participated in any way in the Fixing process. Had Abrantez-Metz and Bamberger played such a role before they were retained by Plaintiffs, then Defendants would have the right to depose them about their knowledge as actors involved in the Fixing process. But Abrantes-Metz and Bamberger are not such fact witnesses; instead, they are "clearly . . . 'expert[s]'" pursuant to Rule 26(b)(4)(D) in that they brought their "technical background to bear" in examining the alleged market distortion, and they were "specifically engaged" for that purpose. *Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, 175 F.R.D. 34, 42 (S.D.N.Y. 1997).[3] Moreover, characterizing an expert who "would necessarily be applying his or her specialized knowledge" as a fact witness "would effectively eviscerate and undermine the core

---

[3] *Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, 175 F.R.D. 34, 42–43 (S.D.N.Y. 1997), refers to Rule 26(b)(4)(B), the substantively identical precursor to Rule 26(b)(4)(D), which was adopted in 2010. For clarity and consistency, the Court will continue to refer to the rule as Rule 26(b)(4)(D), including when discussing cases from before 2010.

purpose of Fed. R. Civ. P. 26(b)(4)(D)." *Genesco, Inc. v. Visa U.S.A., Inc.*, 302 F.R.D. 168, 190 (M.D. Tenn. 2014). By Defendants' logic, most experts who analyze facts are fact witnesses who fall outside the ambit of Rule 26(b)(4)(D), swallowing any protections afforded by the Rule. The Court declines to adopt that theory.

   **B. Abrantes-Metz and Bamberger Are Not Testifying Witnesses**

Defendants further suggest that Abrantes-Metz and Bamberger fall outside the scope of Rule 26(b)(4)(D) because, by "voluntarily injecting their experts' work product into the complaint as factual material, Plaintiffs made them witnesses instead of consultants." Mem. of Law at 1. Defendants imply that, as witnesses, they fall outside the protections afforded to consultants by Rule 26(b)(4)(D). To make this point, Defendants primarily rely on *Worley v. Avanquest N. Am. Inc.*, No. 12-CV-4391, 2013 WL 6576732 (N.D. Cal. Dec. 13, 2013).[4] In *Worley*, Magistrate Judge Beeler found that because "Plaintiffs have put their experts' investigation into play . . . in their First Amended Complaint (and by relying on those allegations to defeat its motion to dismiss) . . . [Defendant] has the right to discover information related to those factual allegations." *Id.* at *4. In arriving at this conclusion, Judge Beeler analogized to decisions that authorized depositions of experts whose statements were relied upon in connection with a motion for summary judgment. *Id.* Judge Beeler found that "the reasoning behind those

---

[4] Defendants also rely on a 2009 case out of the Eastern District of Pennsylvania. *See* Mem. of Law at 6 (citing *In re Asbestos Prod. Liab. Litig.*, 256 F.R.D. 151 (E.D. Pa. 2009)). In that matter, plaintiffs produced and relied on physicians' opinions as to whether the plaintiffs they examined had asbestos-related conditions. *In re Asbestos Prod. Liab. Litig.*, 256 F.R.D. at 156. The Court found that by producing and relying on those opinions, "Plaintiffs ha[d], de facto, designated the Doctors as expert witnesses in this case" and Plaintiffs could not then claim that they "are non-testifying experts entitled to the consulting expert privilege." *Id.* The Court declines to follow that decision. Rule 26(b)(4)(D) includes an exception in connection with court-ordered physical or mental examinations. Fed. R. Civ. P. 26(b)(4)(D)(i). Although the decision itself does not discuss whether the court ordered such medical examinations, it does rely on precedent wherein physicians were deemed outside the scope of Rule because they were following a court order. *See In re Asbestos Prod. Liab. Litig.*, 256 F.R.D. at 156 (citing *In re Silica Proc. Liab. Litig.*, 398 F. Supp. 2d 563, 584 (S.D. Tex. 2005)). Because the medical examination exception of Rule 26(b)(4)(D) does not apply here, the Court does not find the case to be persuasive precedent to support Defendants' argument.

opinions [discussing summary judgment] . . . applies equally in this context, where Plaintiffs very clearly rely upon their expert's investigation to support the claims in their First Amended Complaint." *Id.*

The Court disagrees that caselaw discussing summary judgment is analogous. As discussed in each of the cases cited in *Worley*, *see id.*, when an expert submits sworn testimony in support of or in opposition to summary judgment, "such affidavits and depositions are a substitute for live testimony at trial." *Positive Techs.*, 2013 WL 1402337, at *2; *see also Morningware, Inc. v. Hearthware Home Prod., Inc.*, No. 09-CV-4348, 2012 WL 3721350, at *6–7 (N.D. Ill. Aug. 27, 2012) (holding that experts who submit sworn affidavits in connection with summary judgment are testifying experts and the protections of Rule 26(b)(4)(D) do not apply); *Sims v. Metro. Life Ins. Co.*, No. 05-CV-2980, 2006 WL 3826716, at *2 (N.D. Cal. Dec. 27, 2006) (citing cases that make the same point).

In this matter, Abrantes-Metz and Bamberger have not submitted sworn testimony, and Plaintiffs have stated clearly that they are not going to call them as witnesses at trial. *See, e.g.*, Resp. at 1; Conf. Tr. 40–41. Relying on analyses produced by consultants in a complaint does not convert those analyses to sworn testimony, and the complaint is not a substitute for live testimony at trial. In short, Abrantes-Metz and Bamberger are properly classified as non-testifying consultants protected by Rule 26(b)(4)(D).

### C. Plaintiffs Have Waived the Rule 26(b)(4)(D) Protections as to Abrantes-Metz and Bamberger

Although Abrantes-Metz and Bamberger are non-testifying expert consultants who would normally be entitled to the protections of Rule 26(b)(4)(D), Plaintiffs have waived those protections.

Courts are split as to whether Rule 26(b)(4)(D) protections can be waived. *Bank Brussels Lambert*, 175 F.R.D. at 45. This Court will follow the majority approach, which concludes that, like work-product protection generally, parties may waive Rule 26(b)(4)(D) protections.[5] *See, e.g.*, *In re Morning Song Bird Food Litig.*, No. 12-CV-1592, 2015 WL 12791470, at *7 (S.D. Cal. Jan. 23, 2015) (finding Rule 26(b)(4)(D) protections may be waived); *Murray v. S. Route Mar., S.A.*, No. 12-CV-1854, 2014 WL 1671581, at *1 (W.D. Wash. Apr. 28, 2014) (finding that Rule 26(b)(4)(D) protections are subject to waiver because the protections are "based on the same concerns that motivate the work product doctrine"); *Hartford Fire Ins. Co. v. Pure Air on the Lake Ltd. P'ship*, 154 F.R.D. 202, 211 (N.D. Ind. 1993) (same). The majority approach has been adopted by other district courts in this circuit. *See, e.g.*, *Dover v. British Airways, PLC (UK)*, No. 12-CV-5567, 2014 WL 5090021, at *1 (E.D.N.Y. Oct. 9, 2014) (finding that although the parties had not waived the 26(b)(4)(D) protections at issue, the work-product waiver doctrine was the proper standard to apply to make that assessment); *United States v. Hooker Chemicals & Plastics Corp.*, 112 F.R.D. 333, 338 (W.D.N.Y. 1986) (same).

The Court finds it appropriate to apply the work-product waiver doctrine to Rule 26(b)(4)(D) protections because the two doctrines are premised on the same fairness concerns.[6] The work-product doctrine "preserve[s] a zone of privacy in which a lawyer can prepare and

---

[5] The Court previewed its view that Rule 26(b)(4)(D) acts as an extension of the work-product doctrine in its Order on Defendants' motion to compel. *See* Order, Dkt. 377 at 4 n.3 ("Rule 26(b)(4)(D) expressly extends work-product protection to experts employed in anticipation of litigation."). *See also Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1024 (7th Cir. 2012) (Rule 26(b)(4)(D) "is simply an application of the work product rule."); *Dayton-Phoenix Grp., Inc. v. Gen. Motors Corp.*, No. 95-CV-480, 1997 WL 1764760, at *1 n.2 (S.D. Ohio Feb. 19, 1997) (Rule 26(b)(4)(D) "is a specialized application of the work-product doctrine.").

[6] The work-production doctrine, as incorporated into Federal Rule of Civil Procedure 26(b)(3), is also textually similar to Rule 26(b)(4)(D). Both rules limit discovery with respect to materials prepared in anticipation of litigation and require a showing of substantial need or exceptional circumstances to overcome the protection. *Compare* Fed. R. Civ. P. 26(b)(3) *with* Fed. R. Civ. P. 26(b)(4)(D); *see also Precision of New Hampton, Inc. v. Tri Component Prod. Corp.*, No. 12-CV-2020, 2013 WL 2444047, at *4 (N.D. Iowa June 5, 2013) (noting the textual similarities between the two provisions of Rule 26).

develop legal theories and strategy with an eye toward litigation, free from unnecessary intrusion by his adversaries." *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (internal quotation omitted). Similarly, Rule 26(b)(4)(D) protects the "interest in allowing counsel to obtain the expert advice they need in order properly to evaluate and present their clients' positions without fear that every consultation with an expert may yield grist for the adversary's mill [and supports the notion that] each side should prepare its own case at its own expense." *Bank Brussels Lambert*, 175 F.R.D. at 45. This Court is not the first to recognize that the same concerns underlie both doctrines. *See Murray*, 2014 WL 1671581, at *1 ("The right to keep the opinions of non-testifying experts secret is based on the same concerns that motivate the work product doctrine: counsel must have a safe space in which to investigate, analyze, and prepare his client's case without fear that the opposing party will be able to exploit his efforts."); *In re PolyMedica Corp. Sec. Litig.*, 235 F.R.D. 28, 32–33 (D. Mass. 2006) (making the same comparison).

The Court declines to follow the cases relied upon by Plaintiffs to argue that the work-product waiver doctrine does not apply to Rule 26(b)(4)(D). Plaintiffs cite a recent decision by Judge Stanton of this district, who noted that traditional waiver principles "are less useful" in cases "particularly addressed by Rule 26(b)(4)(D)." Resp. at 4 (citing *Fed. Trade Comm'n v. Quincy Bioscience Holding Co., Inc.*, 485 F. Supp. 3d 419, 421 (S.D.N.Y. 2020)). But despite that observation, Judge Stanton acknowledged that "Rule 26(b)(4)(D) was enacted to support the values of attorney work-product," and he conducted a waiver analysis. *Fed. Trade Comm'n*, 485 F. Supp. 3d at 421–22.[7]

---

[7] Judge Stanton concluded that the party at issue did not waive the protections of Rule 26(b)(4)(D). *Fed. Trade Comm'n v. Quincy Bioscience Holding Co., Inc.*, 485 F. Supp. 3d 419, 421 (S.D.N.Y. 2020). But his no waiver finding is of no moment; the mere fact that Judge Stanton conducted a waiver analysis demonstrates that he recognized Rule 26(b)(4)(D) protections are waivable.

Plaintiffs also cite *Adinolfe v. United Techs. Corp.*, a Southern District of Florida case which found that, given the "enhanced protections under Rule 26(b)(4)(D), the standard applied to the waiver of regular attorney work product is simply not applicable." Resp. at 4 (citing *Adinolfe v. United Techs. Corp.*, No. 10-CV-80840, 2015 WL 11254706, at *4 (S.D. Fla. Sept. 17, 2015)). But *Adinolfe* did not disavow the waiver doctrine as applied to non-testifying experts. The court contrasted "the work product of non-testifying experts" with "regular attorney work product" and conducted a full waiver analysis. *Adinolfe*, 2015 WL 11254706, at *3–4.[8] Accordingly, although the Court found that non-testifying experts are entitled to "enhanced protections," it still found that such protections could be waived.

The remaining cases cited by Plaintiffs conclude that Rule 26(b)(4)(D) does not permit waiver, but they provide no rationale for that conclusion. See Resp. at 4 n.4 (citing *Genesco*, 302 F.R.D. at 195; *Precision of New Hampton v. Tri Component Prods. Corp.*, No. 12-CV-2020, 2013 WL 2444047, at *6 (N.D. Iowa June 5, 2013); *Ludwig v. Pilkington N. Am., Inc.*, No. 03-CV-1086, 2003 WL 22242224, at *3 (N.D. Ill. Sept. 29, 2003)). Without any rationale for their pronouncements, the Court declines to follow such cases.

Armed with the conclusion that the work-product waiver doctrine applies to Rule 26(b)(4)(D), the Court must now consider whether Plaintiffs have waived those protections with respect to Abrantes-Metz and Bamberger. The Court has previously found that Plaintiffs have waived worked product protections "as to any reports, conclusions, analyses, datasets, charts,

---

[8] Plaintiffs also note that Magistrate Judge Parker, from this district, found that Rule 26(b)(4)(D) "provides extensive protection for such experts, even more protection than for work product." Resp. at 3 (citing *Subramanian v. Lupin Inc.*, No. 17-CV-5040, 2020 WL 4707268, at *3 (S.D.N.Y. Aug. 13, 2020)). Judge Parker reasoned that because work-product may be discovered in cases of substantial need but the non-testifying consultant privilege is only overcome in "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means," the non-testifying consultant privilege affords greater protections than the work-product doctrine. *Id.* Even if the Court were to agree with Judge Parker that Rule 26(b)(4)(D) affords greater protections than the work-product doctrine, that conclusion has nothing to do with whether the protections of Rule 26(b)(4)(D) can be waived.

computer programs or code, or any other material created or considered by Plaintiffs' consultants that tend to prove or disprove the existence of any efforts by Defendants to distort or manipulate the price of gold in relation to the PM Fixing." Order, Dkt. 377 at 7. As Abrantes-Metz and Bamberger are two of the expert consultants relied upon by Plaintiffs to produce such materials, any waiver with respect to materials produced by those experts must necessarily apply to depositions of those same experts.

Furthermore, the same reasoning that warranted a finding that, pursuant to Federal Rule of Evidence 502(a), there had been a subject matter waiver of work-product with respect to the statistical analyses and documents generated by Plaintiffs' consultants, *id.* at 5–7, applies to the two depositions. The first prong of Rule 502(a), which requires that the waiver be intentional, continues to be met as Plaintiffs "made the strategic decision to include in their complaints statistical results that provide support for their allegations." *Id.* at 5. As to the second prong, that the disclosed and undisclosed materials concern the same subject matter, the Court previously found that the relevant subject matter is "the existence (or not) of artificial distortion of gold prices in relation to the PM Fixing," *id.*, the same subject on which Defendants seek to depose Abrantes-Metz and Bamberger. And with respect to the final prong, that the disclosed and undisclosed materials ought in fairness be considered together, the same concerns continue to apply. It would be unfair to allow Plaintiffs to withhold information that "would tend to undermine key statistical conclusions alleged in a complaint." *Id.* at 6. In short, for the same reasons that the Court found that Plaintiffs had waived work-product protections over certain written materials, the Court finds that Plaintiffs have waived Rule 26(b)(4)(D) protections as to the requested depositions of Abrantes-Metz and Bamberger.

Plaintiffs contend that the existing work-product waiver does not extend to the "consultant communications that Defendants now seek (in the form of testimony)" because

11

"Defendants expressly represented to the Court that they were not seeking communications between Plaintiffs' counsel and their consultants in their motion to compel." Resp. at 4 (citing Letter Motion, Dkt. 361 at 3 n.3) (cleaned up); *see also* Resp. at 10. But in the February 2019 Order, the Court concluded that Plaintiffs had waived work-product protection as to a certain set of materials on a particular subject area; the Court did not carve out communications. *See* Order, Dkt. 377 at 3–4, 4 n.2; Reply, Dkt. 522 at 2.[9] Accordingly, what Defendants did or did not request in 2019 is of no moment; the Court is simply applying its conclusion from 2019 about a waiver of work-product protections to find that the Rule 26(b)(4)(D) protections that would otherwise apply to Abrantes-Metz and Bamberger have been waived.

In short, although Abrantes-Metz and Bamberger are non-testifying expert consultants who would ordinarily be entitled to the protections of Rule 26(b)(4)(D), for the same reasons that the Court previously found that Plaintiffs had waived work-product protections over, *inter alia*, their written analyses, the Court finds that Plaintiffs also waived any Rule 26(b)(4)(D) protections.

## II. Depositions of Abrantes-Metz and Bamberger Would Be Unreasonably Cumulative or Duplicative and Defendants Have Had Ample Opportunity to Obtain the Information They Could Provide

Although Rule 26(b)(4)(D) does not protect Abrantes-Metz and Bamberger from being deposed by Defendants, the Court finds that the taking of such depositions would contravene Rule 26(b)(2)(C) of the Federal Rules of Civil Procedure. Rule 26(b)(2)(C) states:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less

---

[9] Moreover, Defendants are not bound in this motion by a request they made over two years ago, especially because, in that same footnote, Defendants "reserve[d] their rights" with respect to communications "pending the outcome of Defendants' review of the materials to be produced in the event the Court grants the [motion to compel]." Letter Motion, Dkt. 361 at 3 n.3.

>   burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). In this matter, deposing Abrantes-Metz and Bamberger would be unreasonably cumulative or duplicative, and Defendants have had ample opportunity to obtain the information they seek through other forms of fact discovery.

"The deposition-discovery regime set out by the Federal Rules of Civil Procedure is an extremely permissive one to which courts have long accorded a broad and liberal treatment to effectuate their purpose that civil trials in the federal courts need not be carried on in the dark." *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69 (2d Cir. 2003) (internal citation omitted). But despite this permissive regime, "judges may prevent the proposed deposition when the facts and circumstances are such that it creates an inappropriate burden or hardship." *Id.* at 70. Moreover, district courts have considerable leeway to set the parameters of discovery. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery."); *In re Agent Orange*, 517 F.3d at 103 ("A district court has wide latitude to determine the scope of discovery . . . .").[10] A district court only abuses this discretion "when the discovery is so limited as to affect a party's substantial rights," such that the party is not "afforded a meaningful opportunity to establish the facts necessary to support his claim." *Id.* (citing *Long Island Lighting Co. v. Barbash*, 779 F.2d 793, 795 (2d Cir. 1985)).

Defendants seek to depose Abrantes-Metz and Bamberger about the statistical analyses relied on by Plaintiffs in the TAC. Mem. of Law at 2, 4; Reply at 4. In filing this motion,

---

[10] *Cf. Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) ("The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery.").

Defendants create the impression that if not permitted to depose them, they will be deprived of critical information. Their argument ignores, however, the very significant discovery they have already received, some of it over Plaintiffs' vociferous objections. As the Court made clear in its February 2019 Order, Defendants are entitled to "any reports or analyses" as well as "any materials underlying those reports and analyses, including computer programs, data, charts, and other information created by or considered by the consultants" that "tend to prove or disprove the existence of an effort by Defendants to distort or manipulate the price of gold surrounding and during the PM Fixing." Order, Dkt. 377 at 3–4, 4 n.2. The Court then clarified that Plaintiffs must produce all materials necessary for Defendants to replicate the charts and data analyses Plaintiffs included in the TAC. Order, Dkt. 454 at 1.[11] Given the expansive fact discovery already produced, the Court finds that any additional information obtained from deposing Abrantes-Metz and Bamberger would be unreasonably cumulative or duplicative of the information Defendants should have already received via fact discovery.

The parties continue to disagree over whether Plaintiffs have, in fact, produced all material covered by the Court's Orders. *Compare* Resp. at 1 ("Defendants can use these materials to replicate the TAC analyses (as they finally confirmed that they can do) . . . .") *with* Reply at 3 n.1 ("Defendants continue to dispute that Plaintiffs have now produced all materials required by this Court's orders."). But the Court is not persuaded that Plaintiffs' alleged failure to produce the materials that they have been ordered to produce justifies allowing Defendants to take these two depositions. Rule 3(B)(i) of the undersigned's Individual Practices in Civil Cases states: "[d]iscovery disputes that cannot be resolved by the parties must be brought to the Court's

---

[11] Defendants are also entitled to — and presumably have — hired their own experts to analyze the data produced by Plaintiffs in fact discovery. That being the case, Defendants are entirely capable of analyzing the data Plaintiffs relied on in the TAC without the need to depose Abrantes-Metz and Bamberger. Moreover, as part of expert discovery, Defendants will have the opportunity to depose the experts that Plaintiffs actually plan to rely on to support their claims moving forward.

attention in a timely fashion." *See* Rule 3(B)(i), Individual Practices in Civil Cases. The Court first ordered Plaintiffs to produce such materials to Defendants in February 2019, and the Court clarified the scope of that Order in October 2020. *See* Orders, Dkts. 377, 454. In fact, the Court's October 2020 Order was the result of a discovery dispute brought to the attention of the Court by the parties. If Defendants continued to believe that Plaintiffs had not produced all materials within the scope of the Court's Orders, they were welcome to raise that issue with the Court. Because Defendants "had ample opportunity to obtain the information by discovery in the action," *see* Fed. R. Civ. P. 26(b)(2)(C)(ii), the Court declines to grant Defendants leave to depose these two experts to fill any gaps in productions already authorized by the Court.

As Defendants should have received more than ample discovery to enable them to assess the veracity of the statistical analyses Plaintiffs included in the TAC, the Court concurs with Plaintiffs that these depositions appear to be geared towards a potential Rule 11 sanctions motion, not to a defense of Plaintiffs' claims on the merits. *See* Resp. at 2, 7. Without taking a position on the merits of a Rule 11 motion, Defendants have not demonstrated the "extraordinary circumstances" required to take Rule 11 discovery, perhaps because they are still cogitating on the merits or wisdom of starting down that path. *See* Fed. R. Civ. P. 11 note of advisory committee to 1983 amendment; *see also Burbidge Mitchell & Gross v. Peters*, 622 F. App'x 749, 758 (10th Cir. 2015). Accordingly, to the extent Defendants seek to take these depositions in aid of a future Rule 11 motion, that request is denied, without prejudice to re-raise the issue expressly in the Rule 11 context.[12]

---

[12] The Court also concurs with Plaintiffs that Defendants "keep dangling" a possible Rule 11 motion before the Court. *See* Resp. at 7. Defendants, in turn, suggest that they only plan to seek Rule 11 relief if the Court decides in their favor on any motion for substantive relief. Reply at 4 n.3. But the safe harbor provision in Rule 11 "functions as a practical time limit, and motions have been disallowed as untimely when filed after a point in the litigation when the lawyer sought to be sanctioned lacked an opportunity to correct or withdraw the challenged submission." *In re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2d Cir. 2003). Accordingly, waiting until after the Court rules on a motion for substantive relief would likely be too late. Although the Court has concluded in the past

"All discovery rulings require line drawing, based on an understanding of the parties' core positions, including the plaintiffs' claims and the defendants' defenses, and a need to balance the defendants' right to defend themselves with the plaintiffs' right to proceed with this litigation, all without undue burden or prejudice to any party." *See Guzman v. Hecht*, No. 18-CV-3947, 2019 WL 3561869, at *6 (S.D.N.Y. Aug. 6, 2019).  Although a close call, the Court finds it prudent to draw the line and deny Defendants' request to notice these depositions.

## CONCLUSION

For the reasons discussed above, Defendants' motion for leave to take the depositions of Rosa M. Abrantes-Metz and Gustavo Bamberger is DENIED.  Defendants' request to limit Plaintiffs' objections on privilege issues at such depositions, *see* Mem. of Law at 10, is DENIED as moot.

The Clerk of Court is respectfully directed to close the open motion at docket entry 506.

**SO ORDERED.**

**Date:  June 17, 2021**
    **New York, NY**                                          _____
                                                              **VALERIE CAPRONI**
                                                              **United States District Judge**

---

that "any suggestion of bad faith or sanctionable conduct is premature," Order, Dkt. 377 at 7 n.5, the Court now finds that were Defendants to conclude that filing such a motion remains in their interest, the motion is more than ripe for filing and adjudication.  What the Court will not tolerate is Defendants continuing to dangle the possibility of making such a motion in connection with a complaint filed long ago.  Defendants need to fish or cut bait.