December 30, 2021                                                                                                                  Via ECF

Hon. Valerie E. Caproni
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

      Re:    *In re Commodity Exchange, Inc., Gold Futures and Options Trading Litig.*,
               Case No. 1:14-md-02548 (S.D.N.Y.)

Dear Judge Caproni:

      We, the undersigned, are appointed interim co-lead and supporting counsel in *In re Bank of Nova Scotia Spoofing Litig.*, Case No. 20-cv-11059 ("*BNS Metals Futures Spoofing*"), currently pending before Judge Shipp in the District of New Jersey and also represent numerous class members[1] in the *In re Commodity Exchange, Inc., Gold Futures and Options Trading Litig.*, Case No. 14-md-2548 (S.D.N.Y.) ("*Gold Fix*") before your honor. *BNS Metals Futures Spoofing* is a class action alleging that Bank of Nova Scotia ("BNS") manipulated the price of precious metals futures by spoofing the market for those specific products from January 1, 2008 through July 31, 2016.

      We write to request that the Court address certain narrow deficiencies with the release language detailed in the recently filed Motion to Approve the Settlement Agreement with certain defendants, including BNS ("Preliminary Approval Motion") and Motion to Approve an Order Providing for Notice to the Settlement Class and Preliminarily Approving Plan of Allocation for the Settlement Agreement ("Plan of Allocation Motion" and together with Preliminary Approval Motion, the "Motions"). (ECF Nos. 605-10.) Specifically, for the reasons detailed below, we believe that the claims regarding precious metals *futures* spoofing as to BNS should be carved out from the settlement agreement because, based on our review of the matter and settlement documents, they have not been alleged or litigated in the *Gold Fix* matter nor compensated in the proposed settlement with BNS. Should the Court desire, we are prepared to present our argument at the January 4, 2022 hearing or to fully brief the issue.[2] We raise these issues now to preserve

---

[1]    Robert Charles Class A, L.P., Don Tran, Port 22, LLC, Casey Sterk, and Jeffery Tomasulo, each of these plaintiffs in the *BNS Metals Futures Spoofing* case, sold gold futures and options between January 1, 2004 through June 30, 2013, the settlement class period proposed in the Motions, giving them standing to raise objections to the proposed settlement. (ECF No. 606 at 2.)

[2]    Being mindful of the pending nature of the Motions and the date of the hearing, we first raised these issues with counsel for BNS in an email on November 29, 2021, and have been meeting and conferring with them and other interested parties since, in the hope to resolve the issue without Court intervention. We have also met and conferred with Lead Counsel for the plaintiffs in *Gold Fix*. Unfortunately, our efforts ultimately proved unsuccessful, thus necessitating this letter. We remain willing to meet and confer to discuss a resolution with all

Hon. Valerie E. Caproni
December 30, 2021
Page 2

court resources, save the class in *Gold Fix* costs regarding notice, and to protect our clients' rights here and in *BNS Metals Futures Spoofing*.

After meeting and conferring, counsel for BNS in both matters have made clear that BNS believes the settlement in *Gold Fix* releases some or all of plaintiffs' claims in *BNS Metals Futures Spoofing*. *See* December 17, 2021 Letter from Stephen Ehrenberg and Jamie Dycus ("BNS Letter"), included here as Attachment A. However, the settlement does not account for the damages incurred due to BNS's spoofing of the gold futures market. This is not surprising because the gravamen of *Gold Fix* was manipulation of a benchmark rate that is set taking a capture only of the spot price of physical gold and takes no account of the price of gold futures. Thus, there are **no allegations** in the operative *Gold Fix* complaint specific to spoofing in the ***futures*** market, only passing generalized spoofing allegations regarding the Fix and spot price. None of the few generalized allegations are asserted directly against BNS, who, on August 19, 2020, entered into a deferred prosecution agreement with the Department of Justice ("DOJ") and settlement with the U.S. Commodity Futures Trading Commission ("CFTC") for spoofing the precious metals futures market and making false statements, long after the commencement of *Gold Fix*, any amendments to the plaintiffs' claims, and the previous settlements. In total, BNS paid over $137 million in settlements and fines to resolve the DOJ and CFTC claims related to metals futures spoofing and related compliance failures.

Despite this notable development, to our knowledge, no allegations have been raised nor discovery taken regarding BNS's criminal spoofing conduct in the metals futures market detailed in the DOJ and CFTC proceedings. This is also not surprising because the CFTC order and DOJ DPA specifically state that BNS's traders "***each acted independently***[,]"[3] and not as a part of any conspiracy, when they "engaged in manipulative and unlawful trading and attempted to manipulate the price of gold and silver futures contracts subject to the rules of COMEX, a registered entity, by entering the Spoof Orders intentionally to send market participants a false signal of greater buying or selling interest to deceive them into transacting against their Genuine Orders." CFTC Order at 6. The DOJ and CFTC positioned the conduct that underlies *BNS Metals Futures Spoofing* as separate and apart from conduct related to manipulating the PM Gold Fixing window as neither the CFTC Order or the DOJ DPA makes any mention of the gold benchmark or its calculation.

---

interested parties, but given the timing of the January 4, 2022 hearing, felt it important to raise these issues now.

[3]   *U.S.A. v. Bank of Nova Scotia*, No. 20-707, Deferred Prosecution Agreement (D.N.J. Aug 19, 2020), https://ww.justice.gove/opa/press-release/file/1306141/download; *In the Matter of: The Bank of Nova Scotia*, CFTC Docket No. 20-27, Order (CFTC Aug. 19, 2020), https://www.cftc.gov/media/4411/enfbankofnovascotiaspoofingorder081920/download.

Yet BNS takes the position that based on the *Gold Fix* settlement's release, they have the right to argue that such conduct has been released. *See* BNS Letter at 3 (reserving the right to argue that "putative *Spoofing* class members who are also part of the *Gold* settlement class (and who do not opt out from the *Gold* settlement class) have released some or all of their claims against BNS").

The controlling Second Circuit case law is contrary to BNS's positions as stated in its letter. Plaintiffs in a class action cannot release claims via settlement that are not based on facts specifically supported in their allegations. *See Nat'l Super Spuds, Inc. v. New York Mercantile Exch.*, 660 F.2d 9, 18 n.8 (2d Cir. 1981) ("*Super Spuds*") (reversing approval of a settlement because "[t]he settlement before us would bar [objector] and others similarly situated from asserting claims, distinct from those represented by the class action plaintiffs, which depend not only upon a different legal theory but upon proof of further facts . . . ."). Further, if the precious metals futures spoofing claims were released without adequate compensation, that further impairs the parties' ability to release the claims. *See In re Auction Houses Antitrust Litig.*, 42 Fed. App'x 511, 519 (2d Cir. 2002) (rejecting a settlement agreement because, in part, a portion of the released claims were "exacted without any compensation."); *Super Spuds*, 660 F.2d at 18 ("An advantage to the class, no matter how great, simply cannot be bought by the uncompensated sacrifice of claims of members, whether few or many, which were not within the description of claims assertable by the class."). Because, as alleged in the separate *BNS Metals Futures Spoofing* complaint (included as Attachment B), precious metals futures spoofing was a separate act outside of any other manipulative conspiracy centered on moving a benchmark fix price, such claims cannot be released by a settlement structured like the one submitted in *Gold Fix* if the claims were not separately accounted for and adequately compensated, for instance, by allocation counsel and/or in the Plan of Allocation. *See, e.g.*, *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 254 (2d Cir. 2011) (overturning certification of an omnibus settlement class, ruling that "the interests of class members who hold only Category C claims fundamentally conflict with those of class members who hold Category A and B claims. Although all class members share an interest in maximizing the collective recovery, their interests diverge as to the distribution of that recovery because each category of claim is of different strength and therefore commands a different settlement value.").

The proposed settlement in *Gold Fix* provides a combined $50 million from Barclays Bank PLC, The Bank of Nova Scotia, Société Générale, and The London Gold Market Fixing Limited. However, the proposed settlement provides no explanation regarding whether consideration was paid to settle the futures spoofing claims at issue in *BNS Metals Futures Spoofing* and that are a part of the 2020 deferred prosecution agreement and CFTC Order.

Further, there is no reference in the proposed Plan of Allocation regarding how settlement class members that traded gold futures would be treated in comparison to spot gold or ETF traders. Yet, as currently constructed, the settlement class definition could be read to release class members' claims against Bank of Nova Scotia for spoofing of the gold futures market. (ECF No.

607-1, "All persons or entities who during the period from January 1, 2004 through June 30, 2013, either (A) sold any physical gold or financial or derivative instrument in which gold is the underlying reference asset, including, but not limited to, those who sold . . . gold futures contracts in transactions conducted in whole or in part on COMEX or any other exchange operated in the United States . . . .").

Notably absent from the BNS Letter, carefully crafted and signed by counsel at both Sullivan & Cromwell and Wilmer Hale, is any citation or quote from the complaint in *Gold Fix* that even suggests that the plaintiffs in that matter allege spoofing of the precious metals ***futures*** market. *See* Attachment A. All of the citations in the BNS Letter regard spoofing of the spot price as a means of moving the fix, a benchmark determined solely by the spot price. *See Gold Fix* Complaint, ¶¶86-89. Also absent from the BNS Letter is any affirmative statement that settlement of precious metals ***futures*** claims were accounted for by the settlement.

We reached out to BNS's counsel in both matters in the hopes of resolving the matter, believing that the simplest path forward was for BNS to amend the *Gold Fix* settlement agreement with a simple carve out for the *BNS Metals Futures Spoofing* claims.[4] BNS's response, contained in the BNS Letter, compels us to raise the issue with the Court. The time to address these concerns is now, before preliminary approval is granted and before notice is disseminated. *See In re New Motor Vehicles Canadian Export Antitrust Litig.*, 236 F.R.D. 53, 55-56 (D. Me. 2006) ("Before incurring the expense of widescale notice, it makes sense for a judge to say that a particular settlement has no chance of approval."); *Custom LED, LLC v. eBay, Inc*, No. 12-CV-00350, 2013 WL 6114379, at *2 (N.D. Cal. Nov. 20, 2013) (granting preliminary approval to a settlement that was revised after the court identified "problems with the scope of the release").

We appreciate the Court's attention to this matter.

Respectfully submitted,

| SCOTT+SCOTT ATTORNEYS AT LAW LLP | ROBBINS GELLER RUDMAN & DOWD LLP |
|---|---|
| *s/* Christopher M. Burke | *s/* Alexandra S. Bernay |
| Christopher M. Burke | Alexandra S. Bernay |
| 600 W. Broadway, Suite 3300 | 655 West Broadway, Suite 1900 |
| San Diego, CA 92101 | San Diego, CA 92101 |
| Telephone: 619-233-4565 | Telephone: 619-231-1058 |
| cburke@scott-scott.com | xanb@rgrdlaw.com |

---

[4] We believe a simple sentence could be added to the release which would satisfy our concerns, specifically the insertion of the following: "The release does not bar certain claims asserted in the class action captioned in *In re Bank of Nova Scotia Spoofing Litig.*, Case No. 20-cv-11059 (D.N.J.)."

Hon. Valerie E. Caproni
December 30, 2021
Page 5

| | |
|---|---|
| SCOTT+SCOTT ATTORNEYS AT LAW LLP | KOREIN TILLERY |
| *s/* Thomas K. Boardman | *s/* George Zelcs |
| Thomas K. Boardman | George Zelcs |
| The Helmsley Building | 205 North Michigan Ave., Suite 1950 |
| 230 Park Ave., 17th Floor | Chicago, IL 60601 |
| New York, NY 10169 | Telephone: 312-641-9750 |
| Telephone: 212-223-6444 | gzelcs@koreintillery.com |
| tboardman@scott-scott.com | |
| | NUSSBAUM LAW GROUP, P.C. |
| CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP | *s/* Linda P. Nussbaum |
| | Linda P. Nussbaum |
| *s/* Anthony F. Fata | 1211 Avenue of the Americas, 40th Floor |
| Anthony F. Fata | New York, NY 10036 |
| 150 S. Wacker Drive, Suite 3000 | Telephone: 917-438-9102 |
| Chicago, IL 60606 | lnussbaum@nussbaumpc.com |
| Telephone: 312-782-4880 | |
| afata@caffertyclobes.com | |

*Attorneys for Interested Parties Robert Charles Class A, L.P., Don Tran, Port 22, LLC, Casey Sterk, and Jeffery Tomasulo*